David B. Rosenbaum, Atty. No. 009819
Dawn L. Dauphine, Atty. No. 010833
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, AZ  85012-2793
(602) 640-9000
drosenbaum@omlaw.com
ddauphine@omlaw.com
Attorneys for Defendants
(Additional counsel for Defendants appear on signature page)

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas G. Frazier, a married man, | ) |
| | ) |
| Plaintiff, | ) No.  CV-10-01618-PHX-SRB |
| | ) |
| vs. | ) |
| | ) |
| Honeywell Pension and Savings Plan; | ) **DEFENDANTS' OPPOSITION TO** |
| Honeywell, Inc., a Delaware corporation; | ) **PLAINTIFF'S MOTION** |
| Honeywell Retirement Earnings Plan; | ) **FOR CLASS CERTIFICATION** |
| Honeywell Secured Benefit Plan; Bendix | ) |
| Salaried Plan; King Radio Plan; Plan | ) (Oral Argument Requested) |
| Administrator for the Honeywell Pension | ) |
| and Savings Plan; Plan Administrator for | ) |
| the Honeywell Retirement Earnings Plan; | ) |
| Plan Administrator for the Honeywell | ) |
| Secured Benefit Plan; Plan Administrator | ) |
| for the Bendix Salaried Plan; Plan | ) |
| Administrator for the King Radio Plan | ) |
| | ) |
| Defendants. | ) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT ........................................................................1

FACTS.................................................................................................................. 2

    A.    Frazier's Employment History ........................................................2

    B.    The Bendix Plan ............................................................................. 2

    C.    The King Radio Plan ...................................................................... 3

    D.    Consolidation of Plans in 2000 ...................................................... 4

    E.    Frazier's Individual Claims ........................................................... 4

    F.    Frazier's Class Claims ....................................................................5

LEGAL STANDARDS GOVERNING CLASS CERTIFICATION ......................... 6

I.     INDIVIDUALIZED ISSUES PRECLUDE A FINDING THAT THE RULE 23(a) CRITERIA ARE SATISFIED......................................................8

    A.    Individualized Issues of Harm Preclude Certification ............................8

    B.    Individualized Statute of Limitations Issues Preclude Certification ......................................................................................... 9

    C.    Individualized Issues of Knowledge, Reliance and/or Harm Preclude Certification of the Fiduciary Breach and SPD Claims (Class 5)......................................................................... 11

    D.    Individualized Issues of Plan Interpretation Preclude Certification of Frazier's Benefit Claims (Classes 1-4) ............................................... 13

II.    THE INDIVIDUALIZED ISSUES AND PREDOMINANT CLAIM FOR MONETARY RELIEF PRECLUDE CERTIFICATION UNDER RULE 23(b) ...................................................................................... 15

    A.    Unavailability of Mandatory Classes Under Rule 23(b)(1) or (b)(2)................................................................................................... 16

    B.    Frazier Cannot Satisfy The Predominance Requirement of Rule 23(b)(3)................................................................................. 17

CONCLUSION .................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alaska v. Suburban Propane Gas Co.*,
    123 F.3d 1317 (9th Cir. 1997) ................................................. 6

*Allen v. Honeywell*,
    No. CV-04-0424-PHX-ROS, slip op. (D. Az. 2009) ................................. 15

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................. 17

*Bacon v. Stiefel Labs., Inc.*, 275 F.R.D. 681, 698 (S.D. Fla. 2011) ................................ 17

*Bates v. UPS, Inc.*,
    511 F.3d 974 (9th Cir. 2007) ........................................................ 16

*Bell v. Pfizer, Inc.*,
    626 F.3d 66 (2d Cir. 2010) .......................................................... 12

*Bopp v. Idaho Nat'l Lab. Emp. Ret. Plan*,
    709 F. Supp. 2d 1024 (D. Idaho 2010) ............................................ 15

*Carr v. Int'l Game Tech.*,
    2012 WL 909437 (D. Nev. Mar. 16, 2012) ................................. 6, 11, 16

*CIGNA Corp. v. Amara*,
    131 S. Ct. 1866 (2011) ........................................................ 12, 13

*Del Rio v. Toledo Edison Co.*,
    130 Fed. App'x 746 (6th Cir. 2005) ................................................. 12

*Dunnigan v. Metro. Life. Ins. Co.*, 214 F.R.D. 125, 139 (S.D.N.Y. 2003) ...................... 17

*Gartin v. S&M NuTec LLC*,
    245 F.R.D. 429 (C.D. Cal. 2007) ..................................................... 7

*George v. Duke Energy Ret. Cash Balance Plan*,
    259 F.R.D 225 (D.S.C. 2009) ........................................................ 12

*Groussman v. Motorola*,
    2011 WL 5554030 (N.D. Ill. Nov. 15, 2011) ........................................ 11

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ......................................................... 6

*In re Computer Scis. Corp. ERISA Litig.*,
    635 F. Supp. 2d 1128 (C.D. Cal. 2009) ................................... 12

*Mazur v. eBay, Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ........................................... 9

*Miller v. Fortis Benefits Ins. Co.*,
    475 F.3d 516 (3d Cir. 2007) ................................................. 11

*Novella v. Westchester County*,
    661 F.3d 128 (2d Cir. 2011) ........................................... 9, 11

*O'Connor v. Boeing N. Am., Inc.*,
    197 F.R.D. 404 (C.D. Cal. 2000) ...................................... 7, 9

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ............................................................ 16

*O'Shea v. Epson Am., Inc.*,
    2011 WL 43524 ................................................................. 17

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
    654 F.3d 618 (6th Cir. 2011) .............................................. 16

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
    646 F.3d 347 (6th Cir. 2011) ............................................... 9

*Skinner v. Northrop Grumman Ret. Plan B*,
    673 F.3d 1162 (9th Cir. 2012) ............................................ 13

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ................................................ 8

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ............................................ 17

*United States v. City of New York*,
    276 F.R.D. 22 (E.D.N.Y. 2011) ............................................ 7

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ............................................... *passim*

*Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*,
    404 F.3d 167 (2d Cir. 2005) ............................................... 13

*Ziegler v. Conn. Gen. Life Ins. Co.*,
    916 F.2d 548 (9th Cir. 1990) ............................................. 10

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180, *amended by*, 273 F.3d 1266 (9th Cir. 2001) ...................................... 16

**STATUTES**

29 U.S.C. §§ 1054(g) .................................................................................................... 5

29 U.S.C. § 1054(h) ................................................................................................. 5, 15

29 U.S.C. § 1113 ......................................................................................................... 10

ERISA § 502(a)(1)(B) .................................................................................................. 4

ERISA § 502(a)(3) ....................................................................................................... 4

**PRELIMINARY STATEMENT**

Thomas Frazier ("Frazier" or "Plaintiff") has moved to certify multiple classes, most of which were first identified in his pending motion to file a Second Amended Class Action Complaint.  Defendants opposed that motion because the amendment was futile and unfairly prejudiced them, among other reasons, by substantially changing and expanding the claims previously asserted.  (Docket Nos. 93, 106, 109).  Whether or not Plaintiff's motion to amend is denied, the proposed claims and classes raise myriad individualized issues that render class certification inappropriate.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), established that the class certification requirements — and, in particular, commonality — are not satisfied if core common questions do not have common answers.  Here, the adjudication of the core common question — whether a participant is entitled to benefits under the Salaried Employees Pension Plan of AlliedSignal Inc. (the "Bendix Plan")[1] for time spent working at AlliedSignal facilities that participated in different plans — depends on numerous factors that differ among *each* individual putative class member, including:  the facility to/from which each participant transferred; the time of the transfer; the pension plan(s) sponsored by the respective facilities; the communications each participant received with respect to his/her pension rights upon transfer; each participant's understanding of these communications; and the extent to which each participant was harmed by any misunderstanding.  As discussed below, many of these factors present unique hurdles for Frazier that, in addition to precluding a finding of commonality and typicality, will render him an unsuitable class representative.

Frazier also is unable to satisfy the Rule 23(b) criteria.  Lack of class cohesiveness, coupled with the demand for monetary relief, precludes certification

---

[1]  In 1985, Bendix Corp. merged into Allied Corp.  In 1987, Allied and The Signal Companies, Inc. merged to form AlliedSignal Inc. Effective December 2, 1999, Honeywell Inc. became a wholly-owned subsidiary of AlliedSignal Inc. and AlliedSignal changed its name to Honeywell International Inc. ("Honeywell") (Declaration of Lisa Dooley ("9/19/12 Dooley Decl."), Ex. A at Preamble.)

under Rules 23(b)(1) and (b)(2).  Rule 23(b)(3) is likewise not an option because common issues do not predominate in a case with so many complex individual issues.

In short, even without reaching the merits of Frazier's claims, the Court should conclude that Frazier has no basis for asserting his claims on behalf of a class.

## FACTS

### A.    Frazier's Employment History

Frazier worked for a part of Sundstrand Data Control ("Sundstrand") called Global Wulfsberg in Prescott, AZ from 1988 until November 1993, when AlliedSignal acquired Sundstrand.  (Doc. 87, ¶¶ 7-8; Frazier Tr. at 58:7-8, 62:8-64:18.)[2]  He continued working at that facility until 1996, when AlliedSignal closed the site.  (Frazier Tr. at 61:19-62:4.)  Frazier then transferred to another AlliedSignal business called King Radio in Olathe, KS.  (Doc. 87, ¶ 13.)  In March 2000, Frazier transferred again to a former Honeywell Inc. facility in Deer Valley, AZ.  (Doc. 87, ¶ 22.)  He retired in 2008.  (*Id*.)

### B.    The Bendix Plan

The Bendix Plan is a traditional defined benefit pension plan.  It provides benefits based on years of "Service" and final average pay.  The Bendix Plan was first established in 1965 and, as relevant here, was amended and restated effective January 1, 1987, January 1, 1993, and January 1, 1995.  (Doc. 93-1, Exs. A, B, D.)

As described in the accompanying expert report of Lawrence Sher, different versions of the Bendix Plan had varying provisions governing transfers of employees among facilities within the AlliedSignal (later Honeywell) umbrella of businesses. Furthermore, each version of the Bendix Plan had different, specific provisions that governed these transfer rules, depending on the type of facility to/from which an employee transferred and/or the type of plan offered by that transferee facility.  For example, for participants who (i) transferred to an "Affiliated Company," or to a job

---

[2]   The pages cited from the deposition of Plaintiff Thomas Frazier ("Frazier Tr.") are annexed to the Declaration of Russell Hirschhorn ("Hirschhorn Decl.") as Exhibit A.

classification with the Company that was not covered by the Bendix Plan (*i.e.*, an hourly position), and (ii) became covered by a different retirement plan after transferring, the Bendix Plan had different sets of rules, the application of which depended on whether the transferee plan calculated benefits using Bendix Plan "Service." There were also different rules for transfers to "controlled group entities" (entities that were 80% or more owned by AlliedSignal). Similarly, the 1993 Bendix Plan had different rules governing transfers to disparate types of entities and plans. The 1995 Bendix Plan distinguished its transfer rules based on whether the transferee entity sponsored a cash balance or traditional defined benefit plan. (Sher Report, Sec. VIII; Doc. 93-1, Ex. A at Art. XIII, § 4; Ex. B at § 5.5(b), Ex. C at § 5.5(b).)

For participants transferring back to an entity meeting the definition of "Company," the benefit calculation under the 1987 Bendix Plan included service at the non-participating entity. However, the Bendix Plan benefits were coordinated with the other facility's plan benefits. The coordination rules differed depending on the type of facility and/or the design of its plan. (Sher Report, Sec. VIII; Doc. 93-1, Ex. A at Art. XIII, § 4.)

## C.    The King Radio Plan

King Radio employees were covered under a cash balance plan (the "King Radio Plan"). (Doc. 93-1, Ex. C.) In a cash balance plan, each participant has a hypothetical account in which pay credits and interest credits are earned. (Sher Report, ¶ 16 n.11.) Contrary to the assertions of Plaintiff's expert (Doc. 111-2, ¶ 16), the benefits under the King Radio Plan were different from, but not inferior to, Bendix Plan benefits. In fact, many employees who transferred from AlliedSignal's Prescott location to King Radio received a larger combined benefit than they would have received by remaining in the Bendix Plan. (Sher Report, Sec. V.) Furthermore, all King Radio Plan participants could take their benefits as a lump sum distribution, rather than as a monthly annuity (generally, the Bendix Plan does not provide for lump sum distributions). The value of this option is evident, as most individuals take

the lump sum option.  (*Id.*, n.20)  Indeed, in just the past ten years, nearly 93% (280/302) of participants who commenced their benefits elected to take their pension benefit in a lump sum.  (Declaration of Kurt Denlinger, ¶ 5.)  The perceived value of such benefit depends upon each participant's personal circumstances.  (Sher Report, ¶¶ 41-42; Frazier Tr. at 75:19-23.)

**D.**   **Consolidation of Plans in 2000**

In 2000, following AlliedSignal's acquisition of Honeywell Inc., most active defined benefit plans in the Honeywell International Inc. umbrella of businesses were merged into the Honeywell Retirement Earnings Plan (the "HREP").  (9/19/12 Dooley Decl., Ex. A at Preamble.)  Nearly all active plan participants were then offered a choice: they could remain with their existing plan formula or become covered by a new pension equity plan formula (the "2000 Choice Election").  (*Id.*, §§ 1.07, 3.07.) Before making his choice, Frazier received multiple documents showing that he was participating in the King Radio Plan (Hirschhorn Dec., Ex. B; *see*, *e.g.*, Frazier Tr. at 266:18-267:11), and was told by a benefits call center representative that he could not choose the Bendix Plan.  (Frazier Tr. at 179:6-182:22.)

**E.**   **Frazier's Individual Claims**

In a complaint filed in July 2010, Frazier claimed to have been led to believe, in summary plan descriptions ("SPDs") and other communications, that he would continue to accrue benefits under the Bendix Plan after his transfer to King Radio in 1996.  (Doc. 1, 10-11.)  He also claimed to have had the opportunity to transfer to another facility in 1996, and that it was "highly unlikely" he would have chosen to transfer to King Radio if he was unable to "ensure retention of the Bendix Plan benefit."  (Doc. 1, ¶¶ 11-13, 15, 23-24.)  Based on these contentions, he asserted claims for benefits and breach of fiduciary duty under ERISA §§ 502(a)(1)(B) and 502(a)(3).  At his deposition, he admitted that he did not receive a copy of an SPD until *after* his employment ended (Frazier Tr. at 212:9-17, 220:18-222:3, 224:3-10), and that his understanding of his pension rights upon his transfer to King Radio was

1    based *solely* on conversations with his supervisor in 1993, 1996 and 2008.  (Frazier

2    Tr. at 78:24-81:12, 84:13-88:6, 152:18-156:19.)

3    **F.**    **Frazier's Class Claims**

4              In March 2011, Frazier amended his complaint to assert claims on behalf of

5    (i) a class of participants who participated in the Bendix Plan and, after transferring

6    employment, participated in a Honeywell-sponsored cash balance plan; and (ii) a

7    subclass of participants who later returned to a location that participated in the Bendix

8    Plan.  (Doc. 28.)

9              In April 2012, Frazier moved to amend his complaint again, this time seeking

10   to represent three classes of participants with claims under the 1987 Bendix Plan;[3] and

11   a fourth class with claims under the 1993 and 1995 Bendix Plans (erroneously

12   referred to as the 1994 and 1996 Bendix Plans).  Unlike the fourth class, which is

13   limited to participants transferring from a location participating in the Bendix Plan to

14   King Radio or other facilities with a cash balance plan, the first three classes include

15   participants transferring to *any* location of Honeywell and its predecessors.  (Doc. 87,

16   ¶ 89.)    Frazier also seeks to represent a fifth class with claims for fiduciary

17   breach/misrepresentation and failure to distribute SPDs (notwithstanding his original

18   claim that he relied on the SPDs).  This class extends to participants who transferred

19   to any facility after the Bendix Plan SPD was issued "on or about 1985."  (*Id.*)  For

20   the first four classes, Frazier also asserts that the 1993 and 1995 Bendix Plan

21   amendments violated ERISA's anti-cutback and notice requirements, 29 U.S.C.

22   §§ 1054(g) and (h).[4]

23

24   [3] All three classes encompass participants who worked for the "Company," as defined
     under the 1987 Bendix Plan.  The first class covers those who transferred to another
25   "Company" location.  The second covers those who transferred to an "employment
     classification that was not covered by the Plan or to an affiliated company that had a
26   different pension plan that recognized Bendix Plan service for benefit computation
     purposes."  The third covers participants who transferred to an "affiliated Company
27   and then transferred back to the Company" and were not credited with Bendix Plan
     benefits for all years of employment.  (Doc. 87, ¶ 89.)
28   [4] In his Proposed Complaint, Frazier also added an individual claim alleging that
     Defendants violated ERISA's claims procedures.  (Doc. 87, ¶¶ 67-70.)

1    Although Frazier asserts that he was never advised that he would stop accruing
2    benefits in the Bendix Plan upon transferring to King Radio (*see, e.g.*, Doc. 87, ¶ 17),
3    hundreds of other employees who participated in the Bendix Plan attended a
4    presentation in Ft. Lauderdale, FL where they were informed that they would not be
5    permitted to accrue credited service under the Bendix Plan after transferring to King
6    Radio and instead would commence participation in the King Radio Plan.
7    (Declaration of Catherine McDonald ("McDonald Decl.") ¶ 3; Ex. A at 25-28.)

8    ## LEGAL STANDARDS GOVERNING CLASS CERTIFICATION

9    Class actions are "exception[s] to the usual rule that litigation is conducted by
10   and on behalf of the individual named parties only." *Wal-Mart*, 131 S. Ct. at 2550.
11   To justify this exception, a plaintiff must prove, after a rigorous analysis, that he has
12   satisfied all four requirements of Rule 23(a), and one of the categories of Rule 23(b).
13   *See id.* at 2550-51. The evaluation of whether this burden is met may overlap with the
14   evaluation of legal or factual issues going to the merits. *See id.* at 2551-52; *Hanon v.*
15   *Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

16   Rule 23(a) consists of four independent criteria, three of which are not satisfied
17   here: commonality, typicality and adequacy of representation. The commonality
18   requirement "focuses on the relationship of common facts and legal issues among
19   class members." *Carr v. Int'l Game Tech.*, 2012 WL 909437, at *2 (D. Nev. Mar. 16,
20   2012) (citation omitted). A plaintiff must prove that there is a common question of
21   law or fact that is "of such a nature that it is capable of classwide resolution — which
22   means that determination of its truth or falsity will resolve an issue that is central to
23   the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.

24   "The purpose of the typicality requirement is to assure that the interest of the
25   named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.
26   The requirement is not met when the named plaintiff and/or the putative class
27   members are subject to arguments or defenses that depend on facts unique to them.
28   *See Alaska v. Suburban Propane Gas Co.*, 123 F.3d 1317, 1321 (9th Cir. 1997).

The adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 412 (C.D. Cal. 2000) (citation omitted). It "may be defeated when litigation of the matter could be overwhelmed by disposition of unique defenses." *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 434 (C.D. Cal. 2007).

*Wal-Mart* clarified that commonality is defeated when there may be different answers to core common questions. 131 S. Ct. at 2551-52. Here, there is a core common question: whether participants transferring to or from Bendix Plan locations accrue benefits under the Bendix Plan while working at facilities participating in different plans. The answer to that question differs by participant, depending, for example, on (i) which pension plan applies; (ii) which facility the participant transferred to/from; (iii) what communications a participant received; and (iv) each participant's understanding of those communications. These are precisely the circumstances under which commonality is defeated.

*Wal-Mart* also confirmed that substantive law is relevant to determining whether to certify a class. *See id.* at 2561. As summarized in *United States v. City of New York*, 276 F.R.D. 22, 37 (E.D.N.Y. 2011):

> [A] litigant may not convert an individual question into a common question by concocting a method of classwide proof that subverts rights created by the underlying substantive law. When determining whether a question is common to the class, the court must look to the underlying substantive law to determine whether the proposed method of classwide proof prevents the party opposing class certification from asserting its substantive rights.

As discussed below, substantive law gives rise to individualized issues precluding certification, including each participant's (i) burden to prove reliance on an alleged material fiduciary misrepresentation; (ii) burden to prove harm caused by an alleged SPD violation; and (iii) knowledge, insofar as it triggers the statute of limitations.

There are also independent factual and substantive law issues impacting Frazier's ability to prevail on these claims, including (i) whether he ever participated

in the 1987 Bendix Plan; and (ii) whether he has viable claims under the 1987 and 1993 Bendix Plans even though he did not transfer to King Radio until 1996, after the 1995 Bendix Plan was in effect.  These issues likewise preclude certification.

The individualized nature of Frazier's claims also prevents him from satisfying the Rule 23(b) criteria.  As the Supreme Court stated in *Wal-Mart*, individual issues disrupt the class cohesiveness required for certification under Rules 23(b)(1) or (2); and prevent a finding that common issues predominate under Rule 23(b)(3).

## I.   INDIVIDUALIZED ISSUES PRECLUDE A FINDING THAT THE RULE 23(a) CRITERIA ARE SATISFIED

### A.   Individualized Issues of Harm Preclude Certification

After *Wal-Mart*, lack of common harm defeats class certification.  Courts will deny certification of ERISA claims where there are conflicts among plan participants with respect to the impact of the challenged conduct, and thus the need for the relief demanded.  *See*, *e.g.*, *Spano v. The Boeing Co.*, 633 F.3d 574, 587-88 (7th Cir. 2011) (denying certification when many class members benefitted from conduct at issue).

Here, such conflicts exist with respect to the impact of transfers from the Bendix Plan to other plans.  Whether such transfers benefitted or harmed participants depends on numerous factors, including age and service, and the benefit formula of the transferee plan.  As demonstrated by Defendants' expert, two of the largest (by participant count) final average pay plans maintained by Honeywell were more generous than the Bendix Plan, such that participants who transferred to facilities covered by such plans likely benefitted from the change in coverage.  (Sher Report, at Sec. VI.)   Similarly, many participants received greater retirement benefits by transferring from the Bendix Plan to the King Radio Plan.  (*Id.* at Sec. V.)

Frazier cannot avoid this obstacle to certification by trying to exclude from the classes participants who benefitted from a change in plan coverage.  (Doc. 111, n.4.) First, there is no ready means to ascertain who would be included in such a class, as (i) for many participants it is impossible to determine before they retire under which

plan they would be better off (Sher Report, ¶¶ 48-54); and (ii) it is impossible to quantify the value participants ascribe to their right to receive cash balance plan benefits in a lump sum.  (*Id.*, ¶¶ 41-42.)  *See Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) ("the party seeking class certification must demonstrate that an identifiable and ascertainable class exists") (citation omitted).   Second, defining classes in terms of a legal conclusion — *i.e.*, those participants whose benefits at retirement were less than they would have been if their benefits had been calculated exclusively under the Bendix Plan — constitutes a classic and inappropriate "fail-safe" class that cannot be maintained.  *See*, *e.g.*, *Randleman v. Fidelity Nat'l Title Insur. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (because class included, by definition, only people whom Fidelity harmed — *i.e.*,  those "entitled to relief" — it was "an improper 'fail-safe' class that shield[ed] the putative class members from receiving an adverse judgment").    Moreover, as Frazier concedes, there must be a uniform interpretation of the applicable plan provisions, and thus a uniform result for all participants, whether or not they are class members.  (Doc. No. 111, at 9-11.)[5]

**B.  <u>Individualized Statute of Limitations Issues Preclude Certification</u>**

Statute of limitations defenses also give rise to individual issues that preclude a finding of commonality, as well as typicality and adequacy.  *See O'Connor*, 197 F.R.D. at 413-14 (decertifying class for lack of typicality and adequate representation because of statute of limitations defense); *see also Novella v. Westchester County*, 661 F.3d 128, 148-49 (2d Cir. 2011) ("fact-dependent inquiry into each pensioner's accrual date may . . .  lessen the value, and indeed the availability, of class actions").

All of Frazier's claims raise unique statute of limitations issues.  For the benefit and statutory claims, the limitations period is borrowed from state law, pursuant to which it is one year or, at most four years.  (Doc. 40, 11-13.)  As this

---

[5] This is not to say that the result would be the same for all Bendix Plan participants. As discussed below, there may be different outcomes under different versions of the Bendix Plan.  But for participants governed by a particular Bendix Plan provision, the outcome must be the same.

Court previously concluded, a benefit claim accrues when benefits are denied or when a participant had reason to know that benefits have been denied.  (Doc. 71, 10.)  Statutory claims likewise accrue when a participant knew or had reason to know of the injury that is the basis of the action.  (*Id.*, 12.)  Fiduciary breach claims expire three years from when a participant had actual knowledge of the breach or six years from the challenged act.  29 U.S.C. § 1113.  For fiduciary misrepresentation claims, the six-year period runs from the time of the alleged misrepresentation (rather than the time the participant realizes he/she was harmed by that misrepresentation).  *See, e.g.,* *Ziegler v. Conn. Gen. Life Ins. Co*., 916 F.2d 548, 550-51 (9th Cir. 1990).

       The Court's previous ruling denying Defendants' motion to dismiss Frazier's claims on statute of limitations grounds confirms the need for individualized statute of limitations inquiries that defeat class certification.  The Court declined to dismiss because it found that there were factual issues as to when Frazier was last allegedly misinformed about his benefits, and whether he remained misinformed notwithstanding his receipt of communications that might have placed him on notice that he was accruing benefits under the King Radio Plan.  (Doc. 71, 8-9; 11-13.)  Since the Court's ruling, Frazier has admitted that the last alleged communication that could possibly have misled him was in 1996 (the communication following his termination in 2008 being much too late to affect his benefit rights) (Frazier Tr. at 152:18-156:19); and that he was specifically made aware of his participation in the King Radio Plan (and not the Bendix Plan) no later than 2000, when he reviewed materials describing his pension benefits, and was specifically told he could not select the Bendix Plan, in connection with his 2000 Choice Election.  (Frazier Tr. at 179:6-182:22; Hirschhorn Decl. Ex. B; *see also* Frazier Tr. at 110:13-21.)  Whether or not Frazier's individual claims would now survive a motion for summary judgment, his individual circumstances demonstrate the need for the Court to independently evaluate the merits of the statute of limitations defense for each putative class member, each of whom likewise received relevant information on his/her pension

1    benefits in connection with his/her 2000 Choice Election.

2        Even if the class certification motion is not defeated in its entirety based on the

3    statute of limitations defense, the Court should at least preclude certification for

4    participants who commenced their pension benefit outside the limitations period, as

5    these participants may have inquired or received additional information concerning

6    their benefit at that time.  *See*, *e.g.*, *Novella*, 661 F.3d 128; *Miller v. Fortis Benefits*

7    *Insur. Co.*, 475 F.3d 516, 517, 521-22 (3d Cir. 2007) (concluding that plaintiff's claim

8    accrued at the time he first received his benefit payment).

9        In short, individualized statute of limitations issues defeat class certification.

10

11   **C. Individualized Issues of Knowledge, Reliance and/or Harm Preclude**
     **Certification of the Fiduciary Breach and SPD Claims (Class 5)**

12       Consistent with *Wal-Mart*, courts have declined to certify ERISA

13   communication suits when individualized issues regarding the class members'

14   knowledge and understanding of the communications impact the outcome of the

15   claim.  *See*, *e.g.*, *Carr*, 2012 WL 909437, at *5-6 (no typicality due to individualized

16   issues of reliance on alleged misrepresentations); *Groussman v. Motorola*, 2011 WL

17   5554030, at *4 (N.D. Ill. Nov. 15, 2011) (same).  This is precisely the case here.

18   Frazier's fiduciary breach and SPD claims start with the common core question: "Did

19   I understand what my rights would be when I transferred from a facility covered by

20   the Bendix Plan to another division of AlliedSignal?"  The answer impacts issues of

21   knowledge, reliance, and/or harm, each of which is a material element of these claims.

22       Frazier's circumstances illustrate the point.  His alleged understanding of his

23   benefit rights upon transfer to King Radio was based solely on unique, person-to-

24   person communications he had with his supervisor.  (*See supra* at 4.)  The harm that

25   allegedly resulted from this understanding was similarly unique:  he allegedly would

26   have transferred to another facility that participated in the Bendix Plan.  There is no

27   evidence that other participants were party to the same one-on-one communications,

28   or experienced the same — or any — harm.  In fact, the evidence demonstrates that

- 11 -

1    hundreds of other participants were expressly informed that they would not be able to

2    accrue credited service under the Bendix Plan after transferring to King Radio and

3    instead would commence participation in the King Radio Plan.  (McDonald Decl. ¶ 3;

4    Ex. A at 25-28.)

5         The absence of a common answer to the questions of knowledge and harm

6    means there can be no common answer to the substantive claims.  If a participant

7    understood he would not continue to accrue Bendix Plan benefits upon transfer to

8    another facility, he cannot prove a material misrepresentation on which he

9    detrimentally relied, which is an essential element of a claim for fiduciary breach.

10   *See*, *e.g.*, *Bell v. Pfizer, Inc.*, 626 F.3d 66, 75-76 (2d Cir. 2010) (holding there is "no

11   sustainable claim" in ERISA disclosure case if participant was not misled); *Del Rio v.

12   Toledo Edison Co.*, 130 Fed. App'x 746, 751 (6th Cir. 2005) (dismissing fiduciary

13   breach claim because plaintiff did not rely on employer's statement); *In re Computer

14   Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1143 (C.D. Cal. 2009) (dismissing

15   fiduciary breach claim because plaintiffs failed to allege that they read documents at

16   issue and that documents affected their investment decisions).[6]

17        A participant with knowledge of the cessation of his Bendix Plan benefit

18   accruals likewise cannot sustain a claim for monetary relief resulting from an SPD

19   violation.  As the Supreme Court recently recognized in *Cigna Corp. v. Amara*, to

20   recover monetary relief for an SPD violation, a participant must satisfy the elements

21   of one of the available equitable claims for relief: estoppel, plan reformation, or

22   surcharge.  Each remedy is conditioned on proof of harm, with the type of harm

23   required dependent on the equitable theory pursued.  131 S. Ct. 1866, 1881-82 (2011).

24   Although, as Frazier points out (Doc. 111, 12), a showing of detrimental reliance is

25   not in all cases required, the Supreme Court did require it for an equitable estoppel

26

27   [6] The cases cited by Plaintiff (Doc. 111 at 10) are distinguishable because they
     preceded *Wal-Mart* and/or did not even discuss the issue of reliance.  One case denied
28   certification of claims requiring a showing of detrimental reliance.  *See George v.
     Duke Energy Ret. Cash Balance Plan*, 259 F.R.D 225, 239-40 (D.S.C. 2009).

theory, *id.* at 1881; and the Ninth Circuit has, since *Amara,* required a showing of detrimental reliance for reformation and surcharge theories.  *See Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166-67 (9th Cir. 2012) (rejecting claims for reformation and surcharge because plaintiffs conceded that they did not rely on an inaccurate SPD).  A participant who understood the consequences of his transfer could not demonstrate harm, and certainly not detrimental reliance.  He thus would have no claim for monetary relief.  *See id.*; *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172-73 (2d Cir. 2005) (no recovery for SPD's failure to disclose information that participant knew). And even a participant who did not understand the consequences of the transfer would have to independently demonstrate detrimental reliance or some other form of harm.  *See Amara*, 131 S. Ct. at 1881-82.

In short, because there are individualized issues of knowledge, and knowledge is a material element of Frazier's substantive fiduciary breach and SPD claims, there is no commonality with respect to these claims.

### D.  Individualized Issues of Plan Interpretation Preclude Certification of Frazier's Benefit Claims (Classes 1-4)

Frazier purports to seek certification of his benefit claims on the grounds that they depend on common Plan provisions requiring uniform interpretation.  Although he acknowledges that multiple provisions govern his various theories of recovery, he tries to address these issues by proposing numerous classes and subclasses, each of which would pursue claims under different Plan provisions for different groups of participants. (Doc. 111 at 1.)  As discussed above, however, which provision applies to a particular individual depends on numerous other factors, including:  the time of the transfer; the facility to/from which a participant transferred; the terms of the transferee facility's pension plan; and the nature of the pension benefits provided by the transferee facility's plan.  These unique issues preclude a finding of commonality and typicality, no matter how many classes and subclasses are proposed.

Furthermore, Frazier's ability to proceed with multiple classes to pursue

multiple claims under multiple Plan provisions depends on his ability to represent each proposed class.  For the first three proposed classes asserting claims under provisions of the 1987 Bendix Plan, and for those members of the fourth proposed class asserting claims under the 1993 Bendix Plan, Frazier faces unique obstacles to recovery that separate him from most other members of these proposed classes.

To assert claims under the 1987 Bendix Plan, Frazier must first establish that he was a participant in that Plan.  Because the Prescott facility had been a Sundstrand facility that AlliedSignal inherited when it acquired Sundstrand *in 1993* (Doc. 40-4, FR000001-123, § 1.1(f); *see also* Frazier Tr. at 61:14-64:18), it could not have been one of the businesses identified as a "Company" in the *1987 Bendix Plan*.  Therefore, no one in Prescott participated in the 1987 Bendix Plan.  (Doc. 93-1, Ex. A at Art. II, § (5) & Sch. A.)  Even if, as Frazier contends, the 1993 Bendix Plan was not adopted until June 1994, this would not mean that he accrued benefits under the 1987 Bendix Plan, because (i) there is no evidence that the 1987 Bendix Plan was amended to include the Prescott facility as a participating employer prior to the adoption of the 1993 Bendix Plan (*see id.*); and (ii) the 1993 Bendix Plan contained a specific provision bestowing credited service retroactively to the later of January 1, 1993 or date on which an individual became a participant, *i.e.*, the date AlliedSignal acquired Sundstrand in 1993.  (Doc. 93-1, Ex. B at § 3.2(b)(1).)  Frazier's basis for claiming participant status under the 1987 Bendix Plan is thus tenuous, at best.

Frazier also faces an additional hurdle in order to assert claims under the 1987 Bendix Plan, as well as under the 1993 Bendix Plan.  The 1987 Bendix Plan specifically provides that a transferring employee's benefits "shall be based on Service, on Average Salary, *and on the terms of the Plan in effect on the date of the transfer*."  (Doc. 93-1, Ex. A at Art. XIII, Sec. 4; *see also* Doc. 93-1, Ex. B at Sec. 5.5(b)) (emphasis added).  Frazier did not transfer to King Radio until 1996, *after* the

Bendix Plan was amended and restated in 1995.[7]

Frazier thus cannot claim to have "accrued" any transfer rights under the 1987 or 1993 Plans.  For this same reason, Frazier cannot create a claim under these Plans by resort to his two statutory claims: Having accrued no transfer rights under the 1987 and 1993 Bendix Plans, he neither has a viable basis for asserting that the 1993 and 1995 amendments illegally cut back his benefits, nor can he claim that the amendments were invalid because he failed to receive notice of a purported reduction in his future benefit accruals.  *See Bopp v. Idaho Nat'l Lab. Emp. Ret. Plan*, 709 F. Supp. 2d 1024, 1030-32 (D. Idaho 2010) (Section 204(h) notice is required only to participants accruing benefits at time of amendment); 29 U.S.C. § 1054(h).

For purposes of the class certification motion, the Court need not resolve these issues.  It need only recognize that in order for Frazier to pursue claims under the 1987 and 1993 Bendix Plans, he must prevail on an assortment of unique, and tenuous arguments, on which most other members of the putative classes need not depend.  As a result, Frazier cannot suitably represent these classes.

In short, the individualized issues of Plan interpretation applicable to all putative class members, coupled with the additional issues pertaining specifically to Frazier's claims under the 1987 and 1993 Bendix Plans, individually or collectively preclude certification of the first four classes.

## II.  THE INDIVIDUALIZED ISSUES AND PREDOMINANT CLAIM FOR MONETARY RELIEF PRECLUDE CERTIFICATION UNDER RULE 23(b)

Frazier seeks class certification under the mandatory, non-opt-out classes of Rule 23(b)(1)(A) (for relief that could establish incompatible standards of conduct), Rule 23(b)(1)(B) (limited fund cases), and Rule 23(b)(2) (for injunctive or declaratory relief).  Frazier seeks, alternatively, certification under Rule 23(b)(3).  None of these avenues to class certification is available because of the individualized issues

---

[7] *See Allen v. Honeywell*, No. CV-04-0424-PHX-ROS, slip op. at 1 (D. Az. 2009) ("Similar to Justice Frankfurter's three rules of statutory interpretation, the three rules of ERISA litigation should be (1) read the plan; (2) read the plan; (3) read the plan.").

presented, and because Frazier's claim is primarily one for monetary relief.

**A.  Unavailability of Mandatory Classes Under Rule 23(b)(1) or (b)(2)**

As *Wal-Mart* recognized, there are sharp distinctions between the unitary claims suitable for mandatory classes under Rule 23(b)(1) and (b)(2) and the types of claims that must meet the procedural requirements, and be afforded the procedural protections, of Rule 23(b)(3).   131 S. Ct. at 2557-59.   Rule 23(b)(1) and (b)(2) certification is not appropriate when there are individualized issues as to the claimant's entitlement to relief.  *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011) (vacating Rule 23(b)(1)(A) class when defendant could be liable to some participants for alleged nondisclosure, but not others).[8]   Certification also is not appropriate when the relief sought is primarily monetary.  *Wal-Mart*, 131 S. Ct. at 2558; *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193, *amended by*, 273 F.3d 1266 (9th Cir. 2001).[9]

Here, there is no common harm and there are numerous individual issues regarding:  applicable plan provisions; participant understandings of these provisions; participant communications received concerning benefit rights upon transfer; and the statute of limitations defense.  Furthermore, the predominant (if not sole) relief is monetary.  In fact, having retired, Frazier has no standing to seek anything other than monetary relief.  *See Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (observing plaintiff must demonstrate standing for each form of relief sought).

The cases cited by Frazier, (Doc. 111, 14-16), do not alter these conclusions.

---

[8] Certification under Rule 23(b)(1)(B) is independently inappropriate where, as here, Plaintiff cannot show that there is a limited fund available to satisfy Plaintiff's claims if proven.   *See*, *e.g.*, *Zinser*, 253 F.3d at 1196-97.   The Supreme Court has "counsel[ed] against adventurous application of Rule 23(b)(1)(B)."   *Carr*, 2012 WL 909437, at *7 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999)).

[9] Although the Supreme Court left open the possibility for Rule 23(b)(2) to apply if the monetary relief is "incidental" to an injunction — *i.e.*, it can be paid based solely on mechanical calculations — *Wal-Mart*, 131 S. Ct. at 2560, those circumstances are not present here, since monetary relief will require calculations of each individual's benefits.   Moreover, as discussed below, most participants are not entitled to injunctive relief.   The two cases cited by Plaintiff in support of Rule 23(b)(2) certification (Doc. 111, 16) are distinguishable in that plaintiffs, in both cases, sought a declaration that certain plan provisions were unlawful under ERISA.

In all of these cases, the courts found that certification under Rule 23(b)(1) or (2) was appropriate because: there was common harm; plaintiffs were primarily seeking injunctive/declaratory relief; and/or defendants did not oppose certification.

In short, because the claims here are predominately (if not solely) for monetary relief for prior conduct, and because there are numerous individualized issues and defenses, certification is not appropriate under Rule 23(b)(1) or (b)(2).

### B. <u>Frazier Cannot Satisfy The Predominance Requirement of Rule 23(b)(3)</u>

Rule 23(b)(3)'s predominance requirement is "more stringent" and "far more demanding than" Rule 23(a)'s commonality requirement. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 609, 623-24 (1997). It "requires that questions of law or fact common to class members predominate over any questions affecting only individual members," and "asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotations and citations omitted). Individualized issues on knowledge, reliance, and harm preclude predominance. *O'Shea v. Epson Am., Inc.*, 2011 WL 4352458, at *12 (C.D. Cal. Sept. 19, 2011). They thus have been found to preclude certification of ERISA disclosure and communication claims. *See*, *e.g.*, *Bacon v. Stiefel Labs., Inc.*, 275 F.R.D. 681, 698 (S.D. Fla. 2011); *Dunnigan v. Metro. Life. Ins. Co.*, 214 F.R.D. 125, 139 (S.D.N.Y. 2003).

The numerous individualized issues identified in this brief and supporting declaration of Lawrence Sher, preclude a finding of predominance, even if they do not preclude commonality. Therefore, regardless of the outcome of the Rule 23(a) inquiry, Rule 23(b)(3) is not available.

### <u>CONCLUSION</u>

For the reasons stated herein, the Court should deny Frazier's Motion for Class Certification.

DATED this 24th day of September, 2012.

David B. Rosenbaum
Dawn L. Dauphine
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, AZ  85012-2793

Myron D. Rumeld
Amy Covert
Russell L. Hirschhorn
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY  10036-8299

Howard Shapiro
PROSKAUER ROSE LLP
Poydras Center
650 Poydras Street, Suite 1800
New Orleans, LA  70130-6146

**Attorneys for Defendants**


By: s/Russell L. Hirschhorn

# CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

By:  s/Russell L. Hirschhorn