1
2
3          **NOT FOR PUBLICATION**
4
5
6          IN THE UNITED STATES DISTRICT COURT
7          FOR THE DISTRICT OF ARIZONA
8

9   Thomas G. Frazier,                )   No. CV 10-1618-PHX-SRB
                                       )
10          Plaintiff,                 )   **ORDER**
                                       )
11  vs.                                )
                                       )
12                                     )
    Honeywell Pension and Savings Plan, et)
13  al.,                               )
                                       )
14          Defendants.                )
                                       )
15  _____)

16

17         The Court now considers Plaintiff's Motion for Leave to File Second Amended

18  Complaint ("Pl.'s Mot.") (Doc. 86), Defendants' Opposition to Plaintiff's Motion ("Defs.'

19  Resp.") (Doc. 93), and Plaintiff's Reply in Further Support of Motion for Leave to File

20  Second Amended Complaint ("Pl.'s Reply")(Doc. 95).

21  **I.      BACKGROUND**

22         Plaintiff Thomas G. Frazier initiated the instant litigation on July 30, 2010, asserting

23  claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §

24  1001, *et seq.* (Doc. 1, Compl. at 1.)[1]  In 1988, Plaintiff began working for Sundstrand

25
26
27  _____

28         [1] Plaintiff filed an Amended Class Action Complaint on March 11, 2011. (Doc. 28,
    "Am. Compl.")

Corporation. (Doc. 87, Plaintiff's Proposed Second Amended Complaint "SAC" at ¶ 7.)[2]
According to Plaintiff, AlliedSignal purchased Sundstrand Data Control ("Sundstrand") from
Sundstrand Corporation "on or about" November 12, 1993 at which time Plaintiff became
an employee of AlliedSignal and a fully vested participant under the "Bendix Plan." (*Id.* ¶¶
8-10.) Plaintiff relocated from AlliedSignal's Prescott, Arizona facility to the King Radio
Corporation's facility in Olathe, Kansas in 1996. (*Id.* ¶¶ 13, 20.)[3] In 2000, Plaintiff
transferred to the Company's Deer Valley location, where he remained until his retirement
in 2008. (*Id.* ¶ 22.)

Plaintiff claims that under the Bendix Plan Summary Plan Description ("Bendix
SPD") that was in effect in November 1993, he was entitled to retirement benefits based on
all of his years of service with the Company from 1993-2008. (*Id.* ¶ 23.) However, the
Company denied Plaintiff's claim for benefits under the Bendix Plan on July 31, 2009. (*Id.*
¶ 83.) Plaintiff alleges the Company calculated his benefits by counting only his service time
following AlliedSignal's acquisition of Sundstrand in 1993 until Plaintiff transferred to the
Olathe, Kansas facility in 1996. (*Id.* ¶ 83.) Plaintiff appealed the denial on September 28,
2009. (SAC ¶ 84.) Plaintiff filed the instant action nearly one year later when Defendants still
had not responded to Plaintiff's appeal. (Compl. ¶ 31.)

Plaintiff alleges that from the time before he transferred to Kansas in 1996 until he
retired in 2008, he was not notified that his transfer would alter his participation in the
Bendix Plan. (SAC ¶ 16.) Plaintiff asserts that under the terms of the Bendix SPD, all of his
service from 1993 to 2008 should have counted in the calculation of his retirement benefits.
(*Id.* ¶ 24.) Instead, Plaintiff alleges that he was placed in the less remunerative King Radio

---

[2] The Court summarizes the facts given in the Proposed SAC because Defendants
challenge Plaintiff's standing under that complaint. (*See* Defs.' Resp. at 11-13.) Therefore,
the facts in the Proposed SAC are relevant to the disposition of Plaintiff's Motion.

[3] According to the Proposed SAC, King Radio Corporation is a wholly owned
subsidiary of AlliedSignal. (SAC ¶ 13.) Hereinafter the Court will refer to AlliedSignal and
all of its subsidiaries and affiliates as "the Company."

1  Plan upon his transfer to the Olathe facility. (*Id.* ¶ 19.) Plaintiff states that he was notified in
2  June 2000 that he was in the Bendix Plan. (*Id.* ¶ 27.)

3         The Proposed SAC asserts the following five causes of action: violation of the terms
4  of the Bendix Plan pursuant to ERISA section 502(a)(1)(B) (Count One); violation of
5  ERISA's accrual of benefits provisions pursuant to section 502(a)(1)(B) and (a)(3) (Count
6  Two); breach of ERISA's fiduciary duty requirements (Count Three); violations of ERISA's
7  claim procedure requirements (Count Four); and violations of ERISA's disclosure and
8  summary plan description requirements (Count Five). (SAC ¶¶ 98-130.) Plaintiff seeks to
9  pursue Counts One, Two, Three, and Five on behalf of a putative class (SAC ¶ 89.) Count
10  Five is entirely new in the Proposed SAC and Count Four is mostly unchanged. (*Compare*
11  SAC ¶¶ 120-130 *with* Am. Compl. ¶¶ 67-70.) Counts One, Two, and Three contain additional
12  explanation of the same Counts in the Amended Complaint. (*Compare* SAC ¶¶ 98-130 *with*
13  Am. Compl. ¶¶ 49-66.)

14         Plaintiff states that he is seeking to amend his Amended Complaint "to clarify the
15  scope of the class allegations and to revise the class definitions." (Pl.'s Mot. at 5.) Defendants,
16  however, argue that leave to amend should be denied because the Proposed SAC is futile and
17  prejudicial. (Defs.' Resp. at 1.) Plaintiff's Proposed SAC contains substantial additional
18  information compared to his Amended Complaint regarding employees' rights under the
19  "Salaried Employees Pension Plan of Allied Corporation Amended January 1, 1987" (the
20  "1987 Bendix Plan"), which Plaintiff alleges was the controlling document regarding his
21  rights to retirement benefits. (*Id.* ¶¶ 31-45.) Plaintiff claims he learned of the 1987 Bendix
22  Plan when Defendants produced information regarding the Plan during discovery on January
23  23, 2012. (*See* Pl.'s Reply at 1.) According to Plaintiff, the 1987 Bendix Plan "closely mirrors
24  the promises contained in the only SPD in effect until 1997 and other pre-1994 Plan
25  documents that were already included in Plaintiff's claims." (*Id.*) Plaintiff's Proposed SAC
26  also includes new arguments regarding amendments Defendants made to the Bendix Plan in
27  1994 and 1996. (*See* SAC ¶¶ 46-75.)

28

1    Plaintiff notes that discovery in this case did not begin in earnest until after the Court

2    denied Defendants' Motion to Dismiss on December 6, 2011. (*See* Pl.'s Mot. at 3-4; *see also*

3    Doc. 71, Dec. 6, 2011, Order at 16.) Plaintiff claims that Defendants then produced large

4    numbers of documents on January 24, 2012, February 10, March 8, April 19, and April 24.

5    (Pl.'s Mot. at 4.)[4] Plaintiff states that he "has only received what [he] believes to be a small

6    portion of the documents and information requested." (*Id.* at 4.) Discovery is scheduled to

7    close January 29, 2013. (Doc. 81, Order Granting Stipulation and Joint Request Re Deadlines

8    in Scheduling Order.)

9    **II.    LEGAL STANDARDS AND ANALYSIS**

10    Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend

11   should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The power to

12   grant leave to amend . . . is entrusted to the discretion of the district court, which 'determines

13   the propriety of a motion to amend by ascertaining the presence of any of four factors: bad

14   faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d

15   1191, 1200 (9th Cir. 2010) (quoting *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d

16   659, 669 n.8 (9th Cir. 2009)). "Generally, this determination should be performed with all

17   inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880

18   (9th Cir. 1999). District courts properly deny leave to amend where the proposed amendment

19   would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*,

20   928 F.2d 829, 843 (9th Cir. 1991). However, "[u]ndue delay by itself . . . is insufficient to

21   justify denying a motion to amend." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

22   712-13 (9th Cir. 2001) (quoting *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). "The

23   party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v.*

24   *Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

25    Plaintiff moves to file his Proposed SAC, in part, to allow a larger scope of discovery

26

27       [4] The Court notes that some of Plaintiff's filings say that he received information
regarding the Bendix Plan on January 23, while others say January 24. (*See, e.g.*, Pl.'s Reply

28   at 1, Pl.'s Mot. at 4.) The difference is irrelevant for purposes of this Order.

1   than what Defendants have claimed is necessary under the Amended Complaint. (Pl.'s Mot.

2   at 6.) Defendants claim that Plaintiff's proposed amendments would "substantially alter and

3   expand the claims originally brought and the classes he seeks to represent." (Defs.' Resp. at

4   1.) Defendants argue that leave to amend should be denied because the amendments would

5   be futile and prejudicial to Defendants. (*Id.* at 1.)

6       **A.    Plaintiff's Additional Claims Are Not Futile**

7           **1.    Plaintiff Properly Exhausted His Administrative Remedies Under the 1987 Bendix Plan.**

8

9       Defendants argue that all of Plaintiff's new claims based on the 1987 Bendix Plan are

10  futile because Plaintiff "never administratively exhausted his claim for benefits based on the

11  1987 Bendix Plan." (*Id.* at 9.) Although "the text of ERISA nowhere mentions the exhaustion

12  doctrine," "federal courts have the authority to enforce the exhaustion requirement in suits

13  under ERISA, and . . . as a matter of sound policy they should usually do so." *Amato v.*

14  *Bernard*, 618 F.2d 559, 566, 568 (9th Cir. 1980). Thus, a Plaintiff claiming denial of benefits

15  under ERISA "must avail himself or herself of a plan's own internal review procedures before

16  bringing suit in federal court." *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50

17  F.3d 1478, 1483 (9th Cir. 1995). The Ninth Circuit has held that the exhaustion requirement

18  in ERISA cases is a "remedy-exhaustion" requirement, not an "issue-exhaustion" requirement.

19  *See Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 630 (9th Cir. 2008)

20  ("No ERISA statute precludes courts from hearing objections not previously raised to the

21  Plan, nor does any ERISA statute or regulation require claimants to identify all issues they

22  wish to have considered on appeal").[5]

23      Defendants state that Plaintiff did not exhaust his administrative remedies because he

24  argued only that he was entitled to benefits under the 1994 and 1996 Bendix Plans during the

25

26      [5] "The requirement that a claimant 'obtain a final decision on his claim' is a remedy-
    exhaustion requirement, while the requirement that a claimant must also 'specify that issue
27  in his request for review' by the agency is an issue-exhaustion requirement." *Vaught*, 546
    F.3d at 630 (quoting *Sims v. Apfel*, 530 U.S. 103, 107 (2000)).
28

administrative process, therefore, Defendants did not consider any arguments under the 1987 Plan. (Defs.' Resp. at 10-11.) Defendants' argument is based on a theory of issue-exhaustion and is, therefore, misplaced. *See Vaught*, 546 F.3d at 630. Plaintiff alleges (and Defendants do not deny) that he properly filed an original claim for benefits with the Plan Administrator as well as an appeal following his initial rejection. (SAC ¶¶ 83-84.) Therefore, Plaintiff exhausted his administrative remedies before initiating this action regardless of whether he asserts new arguments as a basis for why he should receive the benefits that have already been administratively denied to him. *See Vaught*, 546 F.3d at 630-33.

### 2. Plaintiff Has Standing to Assert Claims on Behalf of Participants Who Transferred to Plans Other Than Cash Balance Plans

Defendants next argue that Plaintiff's Proposed SAC would be futile because he lacks standing to assert claims on behalf of the putative class members in proposed Classes One, Two, and Three and the new complaint would, therefore, be subject to dismissal. (Defs.' Resp. at 11.)[6] A plaintiff does not have standing unless he can show (1) an "injury in fact" that is

---

[6] According to the Proposed SAC, Class One, Two, and Three are defined as follows:

Class 1: All current or former Bendix Plan participants (and their beneficiaries) who worked for the Company on or after January 1, 1987 and who transferred to another location(s) within the Company and who were not credited with accrued benefits and years of Service for benefit calculation purposes under the Bendix Plan for all of their years of employment with the Company.

Class 2: All current or former Bendix Plan participants (and their beneficiaries) who worked for the Company on or after January 1, 1987 and who (1) transferred to another location within the Company and/or to an Affiliated Company covered by a different retirement plan which recognized Service as service for benefit computation purposes, and (2) whose benefits at retirement were less or are scheduled to be less under such different retirement plan than the benefits calculated under the Bendix Plan utilizing each participant's total years of employment with the Company and any Affiliated Company for purposes of calculating their benefits under the Bendix Plan and (3) who were not provided or are not scheduled to be provided by the Bendix Plan, the difference between any lesser benefits earned under a different retirement plan and such Bendix Plan benefits.

1 concrete and particularized and actual or imminent (not conjectural or hypothetical); (2) that

2 the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely,

3 as opposed to merely speculative, that the injury will be redressed by a favorable decision.

4 *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Named plaintiffs who represent

5 a class 'must allege and show that they personally have been injured, not that injury has been

6 suffered by other, unidentified members of the class to which they belong and which they

7 purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 344 (1996) (quoting *Simon v. E. Ky.*

8 *Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). "At the pleading stage, general factual

9 allegations of injury resulting from the defendant's conduct may suffice" to establish standing.

10 *Lujan*, 504 U.S. at 561.

11          The parties disagree as to the factual contents of the 1987 Bendix Plan, how it

12 functioned, and how it affected employees that transferred to different jobs within the family

13 of associated companies. (*See*, *e.g.*, SAC ¶¶ 31-45; Defs. Resp. at 7-8.) Defendants

14 specifically attack Plaintiff's standing to represent putative class members who transferred

15 from employers using "service-based" benefit plans to employers that offered benefit plans

16 other than "cash-balance" plans. (Defs. Resp. at 13; *see* SAC ¶¶ 106-112.) Defendants claim

17 that years of service are irrelevant to the computation of benefits under a cash-balance plan.

18 (Defs.' Resp. at 3 n.1.) Plaintiff, however, disputes that the King Radio Plan to which he

19 transferred was a "cash-balance" plan and states that years of service were relevant to the

20 determination of benefits under the King Radio Plan. (Pl.'s Reply at 8.) Plaintiff further

21 argues that any employee that began working for the Company under the 1987 Bendix Plan

22 _____

23

24          Class 3: All current or former Bendix Plan participants (and their beneficiaries)
           who worked for the company on or after January 1, 1987 and who worked at

25          any Affiliated Company and transferred back to the Company and who were
           not credited with accrued benefits and years of Service for benefit calculation

26          purposes under the Bendix Plan for all of their years of employment with the
           Company and any Affiliated Company.

27

28 (SAC ¶ 89.)

should have continued to accrue benefits under that Plan even after transferring to a subsidiary or affiliated company, so long as that company included years of service in its calculation of benefits. (Pl.'s Reply at 8.)[7] At this stage in the pleadings, however, Plaintiff need only make general allegations of injury to establish standing and it is irrelevant that Defendants dispute the merits of Plaintiff's claims. *See Lujan*, 504 U.S. at 561. Assuming Plaintiff's allegations and understandings are true, Plaintiff has alleged an injury in fact to himself and other members of Classes One, Two, and Three, namely, that they were or will be paid less than the full amount of retirement benefits to which they are entitled. (*See* SAC ¶¶ 98-119.) Assuming that injury did occur, it was caused by Defendant's conduct, i.e., Defendants' calculations of benefits. (*See id.*) Lastly, if Plaintiff were to succeed on his claims as stated in the Proposed SAC, the Court could award relief that would redress that injury. Therefore, Plaintiff's Proposed SAC sufficiently establishes Plaintiff's standing. *See Lujan*, 504 U.S. at 560-61. Because Plaintiff exhausted his administrative remedies and has standing to pursue all of the

---

[7] Defendants seek leave to file a surreply to clarify the contents of the King Radio Plan and clarify the dispute regarding the meaning of "cash-balance" plan. (Doc. 105, Motion for Leave to File Sur-Reply in Opp'n to Pl.'s Motion ("Defs.' Mot.").) The local rules of practice for this District do not provide for the filing of a surreply, and surreplies are not authorized by any other rules of procedure absent express prior leave of the Court. *See* LRCiv 7.2 (providing for one response and one reply only). "By filing its Surreply and Motion to File Surreply as one document, [Defendant] has essentially filed a Surreply without first obtaining leave of this Court to do so. [Defendant's] Surreply was, therefore, improper." *Spina v. Maricopa Cnty. Dept. of Transp.*, No. CV 05-0712-PHX-SMM, 2009 WL 890997, at *1 (D. Ariz. Apr. 1, 2009); *Millenium 3 Tech. v. ARINC, Inc.*, No. CV 08-1257-PHX-JAT, 2008 WL 4737887, at *2 (D. Ariz. Oct. 29, 2008).

Furthermore, Defendant's Motion for Leave to File Surreply does not offer a justifiable reason for this Court to grant the leave requested. Defendants argue that Plaintiff raised the issue of the King Radio Plan being a service-based plan for the first time in his Reply. (Defs.' Mot. at 2.) However, Plaintiff made that contention in direct response to statements in Defendants' Response (*See* Defs.' Mot. at 1 ("[Plaintiff's] statements were made in response to Defendants' argument that Plaintiff lacked standing to assert claims on behalf of Bendix Plan participants who transferred to plans other than cash balance plans").) Thus, Plaintiff did not raise any new issue in his Reply, but rather responded to Defendants' statements. Therefore, there is no reason to grant leave to file a surreply and Defendants' Motion is denied.

1   claims found in the Proposed SAC, the Proposed SAC is not likely to be dismissed and is not

2   futile. *See Saul*, 928 F.2d at 843.

3   **B.      Plaintiff's Proposed SAC Will Not Unduly Prejudice Defendants**

4         Defendants also argue that allowing Plaintiff to file his Proposed SAC would prejudice

5   defendants by expanding the scope of discovery at a late stage. (Defs. Resp. at 14.) Courts

6   have discretion to deny motions for leave to amend a complaint where granting the motion

7   would open up the possibility of additional discovery. *See*, *e.g.*, *Lockheed Martin Corp. v.*

8   *Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and

9   therefore delay the proceedings supports a district court's finding of prejudice from a delayed

10  motion to amend the complaint"); *Ascon Props., Inc, v. Mobil Oil Co.*, 866 F.2d 1149, 1161

11  (9th Cir. 1989) (quoting *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir.

12  1973)) ("To put [defendant] 'through the time and expense of continued litigation on a new

13  theory, with the possibility of additional discovery,' 'would cause undue prejudice'").

14  However, Courts have also granted leave to file an amended complaint when doing so opened

15  the door for further discovery. *See*, *e.g.*, *U.S. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889

16  F.2d 1248, 1255 (2nd Cir. 1989) ("[T]he adverse party's burden of undertaking discovery,

17  standing alone, does not suffice to warrant denial of a motion to amend a pleading"); *DCD*

18  *Programs, Ltd.*, 833 F.2d at 187-88 (9th Cir. 1987) (finding that a defendant would not be

19  prejudiced by granting leave to amend a complaint that would extend the time frame for

20  discovery). Thus, it is ultimately within the Court's discretion to determine whether any

21  additional discovery under the Proposed SAC would unduly prejudice Defendants. *See*, *Serra*,

22  600 F.3d at 1200.

23        Defendants argue that granting leave to file the SAC would lead to additional discovery

24  requests that "would require Defendants to locate and review thousands of boxes of

25  documents at an estimated minimum cost of several million dollars." (Defs. Resp. at 14-15.)

26  Plaintiff argues that the discovery relevant to issues raised in the SAC is much the same as the

27  discovery relevant to issues in the Amended Complaint because "the proposed claims have

28  the same factual underpinnings, namely the failure to pay Bendix Plan benefits to employees

1  who transferred out of Bendix Plan locations and/or employees who transferred back to the

2  Company." (Pl.'s Reply at 9.) A review of the Proposed SAC shows that Plaintiff has only

3  added additional explanation to his claims under Counts One, Two, and Three based on newly

4  discovered information, and his changes to Count Four are immaterial. (*Compare* SAC ¶¶ 98-

5  123 *with* Am. Compl. ¶¶ 49-70.) Thus, any information requested under those Counts was

6  already discoverable under the Amended Complaint and Defendants will not be prejudiced

7  by having to fulfill any further discovery requests in relation to these counts.[8]

8      Count Five of the Proposed SAC is entirely new. It alleges that Defendants breached

9  ERISA sections 101 and 102 (29 U.S.C. §§ 1021, 1022), which require employers to furnish

10  employees with summary plan descriptions ("SPDs"). (SAC ¶ 125.) Defendants themselves

11  note that "[t]he original and existing complaints premised [Plaintiff's] benefit and fiduciary

12  breach claims on the terms of the SPDs and other alleged communications." (Defs. Resp. at

13  6.) Thus, Defendants have been on notice since the time Plaintiff filed his original complaint

14  that he would seek discovery regarding the SPDs and other documents explaining Plaintiff's

15  rights to benefits, presumably including when and to whom those documents were distributed.

16  Moreover, proving Counts One, Two, and Three in the Amended Complaint would require

17  proof of how  benefits were calculated under the various packages and how any changes to

18  the plans affected those calculations, which would likely be proved with evidence of what the

19  SPDs employees were given said.[9] Additionally, as Counts One, Two, and Three in the

20  Amended Complaint were asserted on behalf of a putative class, Defendants cannot argue that

21  the scope of discovery would be any larger under Count Five here because it is asserted on

22  behalf of a putative class. Therefore, the Court finds that any discovery relevant to Count Five

23  is already largely, if not entirely, available to Plaintiff under the Amended Complaint and that

---

25  [8] Indeed, Plaintiff claims to have already requested much of the information regarding
26  these counts under the Amended Complaint. (Pl.'s Reply at 9.)

27  [9] Plaintiff states that he has also requested, and Defendants have refused to disclose,
28  any information regarding Bendix Plan participants "other than those individuals who
transferred to locations that maintained one of two cash balance plans." (Pl.'s Mot. at 5.)

1    Defendants will not be unduly prejudiced by allowing Plaintiff to file his Proposed SAC.

2         Finally, the Court notes that Plaintiff's new arguments and claims are based on

3    information learned during discovery, which courts have held is a reasonable justification for

4    granting leave to amend a complaint even when doing so will increase the burden of

5    discovery. *See*, *e.g.*, *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 531 (N.D. Cal. 1989)

6    (granting leave to amend even though defendant argued that doing so would "require

7    [defendant] to depose numerous witnesses . . . who have been previously questioned and

8    would necessitate additional document searches and written discovery"); *Collaboration*

9    *Props., Inc. v. Tandberg ASA*, No. C 05-01940 MHP, 2007 WL 205065, at *7 (N.D. Cal. Jan.

10   25, 2007) ("the need to re-open discovery is not fatal to a motion to amend where facts

11   underlying the new claims come to light during discovery"). Because the Court does not

12   believe any new discovery under the Proposed SAC will be unexpected or overly burdensome,

13   it rejects Defendants' argument that they will be unduly prejudiced.

14        **C. Granting Plaintiff Leave to Amend Will Not Unduly Delay the Proceedings**

15        Defendants also make an argument regarding undue delay. (*See* Defs. Resp. at 14.)

16   However, because the Court has not found any other reason to refuse to grant Plaintiff leave

17   to file a SAC, it cannot deny leave to amend merely because of undue delay. *See Owens*, 244

18   F.3d at 712-13 (quoting *Bowles*, 198 F.3d at 758) ("[u]ndue delay by itself . . . is insufficient

19   to justify denying a motion to amend"). However, the Court notes that Plaintiff's Motion is

20   based on information learned through discovery and that Plaintiff filed the Motion only two

21   days after receiving the last batch of discovery materials. (Pl.'s Mot. at 4.) Since Plaintiff

22   claims that the reason for his motion is to clarify the scope of discovery, it makes sense that

23   he would wait until Defendants had turned over all relevant documents before arguing to the

24   Court that he did not receive all the information to which he believed he was entitled. Thus,

25   there is no evidence of delay, much less undue delay.

26   **III.    CONCLUSION**

27        Plaintiff seeks leave to file his Proposed SAC after learning of new, relevant

28   information through discovery. (Pl.'s Mot. at 4-5.) Defendants have argued that leave to

amend should be denied because Plaintiff does not have standing to assert the new claims, he has not exhausted his administrative remedies, and granting leave would prejudice Defendants.   (Defs. Resp. at 9.) The Court is not persuaded by any of these arguments. Because Defendants have failed to carry their burden to prove why the Court should not grant Plaintiff leave to file his Proposed SAC, the Court grants Plaintiff's Motion for Leave to File Second Amended Complaint.

**IT IS ORDERED** granting Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 86).

**IT IS FURTHER ORDERED** denying Defendants' Motion for Leave to File Sur-Reply in Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 105).

DATED this 3rd day of October, 2012.

_____
Susan R. Bolton
United States District Judge