# EXHIBIT A

1

2

3

4

5

6           IN THE UNITED STATES DISTRICT COURT

7             FOR THE DISTRICT OF ARIZONA

8

| | |
|---|---|
| Barbara Allen, Richard Dippold, Melvin) Jones, Donald McCarty, Richard Scates) and Walter G. West, individually and on) behalf of all other similarly situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>Honeywell Retirement Earnings Plan,) Honeywell Secured Benefit Plan, Plan) Administrator of Honeywell Retirement) Earnings Plan and Plan Administrator of) Honeywell Secured Benefit Plan, )<br><br>Defendants. ) | No. CV 04-0424-PHX-ROS<br><br>**ORDER** |

Pending is Plaintiff's Motion For Class Action Certification (Doc. #84).  For the reasons set forth below, the Motion will be granted.

**I.    Background**

The Court incorporates the background set forth in its August 8, 2005 Order, in which it granted in part Plaintiff's Motion For Partial Summary Judgment on certain claims incorporated in Counts I and II of the Amended Complaint, including its claims brought under the Employment Retirement Income Security Act ("ERISA") § 1054(g) ("anti-cutback

claims"). (Doc. #77).[1] According to the Joint Case Management Plan, Plaintiffs contend that the following claims remain:

(1)   Whether amendments to the Plans[2] imposing the Social Security offset, changing the interest rates used to calculate the Secured Benefit Account ("SBA") offset and eliminating the fractional reduction to the SBA offset constitute contract violations and violate the terms of the Plan and ERISA under § 502(a)(1)(B) and (a)(3).

(2)   Whether Defendants violated the terms of the Plan and ERISA's claim procedure, disclosure requirements and applicable regulations.

(3)   Whether Defendants violated ERISA and the terms of the Plans by imposing administrative fees on their Secured Benefits beginning in 1993.

(4)   Whether Defendants violated the terms of the Plans and ERISA by failing to adjust Plaintiffs' benefits and pay them retroactive benefits plus interest for the claim granted in the administrative process.

(5)   Whether Defendants violated ERISA and the terms of the Plans by reducing accrued benefits by amendments made in 2000 which resulted in employees' service prior to

---

[1]   The Court has not decided the appropriate remedies and damages for the violations found on summary judgment.

[2]   As set forth in the Amended Complaint, Plaintiffs are former salaried employees of the Garrett Corporation and/or its participating subsidiary companies who were participants in the Garrett Retirement Plan and Severance Plan ("Garrett Plans") as of December 31, 1983 and who became vested participants in the Signal Retirement Plan and Secured Benefit Plan ("Signal Plans"), and as a result of various corporate mergers, became participants in several other retirement and secured benefit plans, including the AlliedSignal Retirement Plan, AlliedSignal Secured Benefit Plan, Honeywell Retirement Plan and the Honeywell Secured Benefit Plan ("Honeywell SBA Plan") (hereinafter, with the AlliedSignal Secured Benefit Plan, the Garrett Secured Benefit Plan and the Garrett Severance Plan collectively referred to as the "Secured Benefit Plan"). Some of the Plaintiffs are also participants in the Honeywell Savings and Ownership Plan ("Honeywell Savings Plan"). Hereinafter, the aforementioned employee benefits plans are collectively referred to as "the Plans." (Doc. #47, ¶3).

1      1984 being disregarded and caused some Plaintiffs to make benefit elections and
2      decisions based on incorrect benefit calculations.

3  (6)    Whether Defendants violated ERISA § 208's requirement that the consolidation of the
4      Plans must entitle the participant to receive a benefit equal to or greater than the
5      benefit the participant would have been entitled to before the consolidation.

6  (7)    Whether Defendants violated ERISA § 402's requirement for a written plan.

7

8      On August 25, 2005 Plaintiffs filed a Motion For Class Certification (Doc. #84). On
9  November 21, 2005, before Defendants responded to Plaintiffs' Motion, the Court stayed all
10  proceedings until the Ninth Circuit Court of Appeals ruled on the issues raised in Defendants'
11  Petition For Permission To Appeal filed with the Ninth Circuit Court of Appeals (Doc.
12  #139). On February 24, 2006 the Ninth Circuit issued an order denying Defendants' Petition
13  For Permission To Appeal (Doc. #142). Defendants responded to the Motion For Class
14  Certification on April 3, 2006, amending the response on June 15, 2006 (Doc. #146). At a
15  status conference on April 13, 2006, the Court permitted Defendants to conduct limited
16  discovery on the 800 putative class members identified by Plaintiffs' counsel and to file
17  supplemental briefing (Doc. #155). On June 12, 2006 Plaintiff filed a Reply (Doc. #168).
18  At a discovery dispute hearing on June 16, 2006 the Court reversed its previous ruling
19  allowing limited discovery of the 800 putative class members because Defendant did not
20  meet the standard required for discovery of putative class members prior to certification.
21  (Doc. #178). Based on the substantial issues surrounding certification, the Court ordered
22  supplemental briefing (Id.). On June 30, 2006 Defendants filed a Supplemental Brief In
23  Opposition To Plaintiff's Motion For Class Certification (Doc.# 214). Plaintiffs replied on
24  July 20, 2006 (Doc. #215).

25      Plaintiffs seek certification for the claims granted on summary judgment, as well as
26  the remaining claims for which Plaintiffs have not sought summary judgment and which have

27

28

1   not been dismissed.  For these claims, Plaintiffs seek to certify the following classes and
2   subclasses:

3        **Class:**  All former participants of the Retirement Plan for Employees of the Garrett
4   Corporation and Its Participating Subsidiaries ("Garrett Retirement Plan") and the Severance
5   Plan for Employees of the Garrett Corporation and Its Participating Subsidiaries ("Garrett
6   Severance Plan") ("Garrett Plans") who became vested participants in the Signal Companies
7   Inc. Retirement Plan ("Signal Retirement Plan") or the Garrett Secured Benefit Account
8   ("SBA Plan"), their surviving spouses and/or beneficiaries who are or may become eligible
9   for benefits under the Plans.

10       **Subclass A:** Members of the class for whom the calculation of minimum benefits
11  under the Signal Retirement Plan without an offset based on their benefits under the Secured
12  Benefit Plan ("SBA Offset") would have resulted or will result in a higher benefit than the
13  benefit paid or to be paid.

14       **Subclass B:** Members of the class who had more than 35 years of credited service
15  under the Plans and whose retirement benefits were calculated without a fractional reduction
16  in the SBA Offset.

17       **Subclass C:** Members of the class who were active employees on or after July 1,
18  2000.

19       **Subclass D:** Members of the class who had administrative expenses deducted from
20  their SBA benefits.

21  **II.**    **Legal Standard**

22       Class certification is governed by Fed. R. Civ. P. 23, which provides the following
23  four prerequisites for a class action: (1) the class is so numerous that joinder of all members
24  is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or
25  defenses of the representative parties are typical of the claims or defenses of the class, (4) the
26  representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ.
27  P. 23(a).  "Additionally, the action must meet one of several alternative requirements under
28

- 4 -

1    Fed. R. Civ. P. 23(b)." Hoexter v. Simmons, 140 F.R.D. 416, 418 (D. Ariz. 1991). In this

2    case, Plaintiffs claim certification is proper under Rule 23(b)(2), which provides that "the

3    party opposing the class has acted or refused to act on grounds generally applicable to the

4    class, thereby making appropriate final injunctive relief or corresponding declaratory relief

5    with respect to the class as a whole."

6        Alternatively, Plaintiffs seek certification pursuant to Rule 23(b)(3), which is

7    appropriate where "the court finds that the questions of law or fact common to the members

8    of the class predominate over any questions affecting only individual members, and that a

9    class action is superior to other available methods for the fair and efficient adjudication of

10    the controversy." Fed. R. Civ. P. 23(b)(3). Under this rule, relevant factors include: (1) the

11    interest of members of the class in individually controlling the prosecution or defense of

12    separate actions; (2) the extent and nature of any litigation concerning the controversy

13    already commenced by or against members of the class; (3) the desirability or undesirability

14    of concentrating the litigation of the claims in the particular forum; (4) the difficulties likely

15    to be encountered in the management of a class action. Id.

16        The party seeking class certification bears the burden of demonstrating that it has met

17    all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)(1), (2),

18    or (3). See Valentino v. Carter-Wallace, 97 F.3d 1227, 1234 (9th Cir. 1996). A court must

19    conduct its own "rigorous analysis" of the moving party's claims to confirm "actual, not

20    presumed, conformance" with the applicable rules. General Tel. Co. of S.W. v. Falcon, 457

21    U.S. 147, 160-61 (1982). Furthermore, courts are permitted to consider whatever evidence

22    is necessary to conduct its analysis, including evidence related to the underlying merits of the

23    case. See Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992).

24    **III.**      **Discussion**

25        **A.**      **Rule 23(a) Prerequisites**

26

27

28

1
### 1.   Numerosity[3]

2   Plaintiffs contend that there are approximately 10,000 class members. (Doc. #84, p.
3   5.). This estimate is based on the size and history of Honeywell and forms for the Plans
4   indicating that as of December 31, 2003 there were "6,604 participants at the beginning of
5   the year and 6,259 participants at the end of the year." (Id.). The numerosity requirement
6   is met if it would be extremely difficult or inconvenient to join all class members. See Brink
7   v. First Credit Resources, 185 F.R.D. 567, 569 (D. Ariz. 1999). The Court considers many
8   factors to determine if joinder is impracticable, including "judicial economy arising from
9   avoidance of a multiplicity of actions, geographical disbursement of class members, size of
10  individual claims, financial resources of class members, the ability of claimants to institute
11  individual suits and requests for prospective injunctive relief which would involve future
12  class members." Hernandez v. Alexander, 152 F.R.D. 192, 194 (D. Nev. 1993).

13  Applying these factors, the Court finds that judicial economy favors a class action to
14  avoid multiplicity of actions by each of the Plan participants possibly impacted by the alleged
15  violations of the Plan and ERISA. In addition, Garrett had manufacturing facilities in several
16  states, which means that potential class members are geographically dispersed. In terms of
17  size of individual claims, the claims of the six individual Plaintiffs are substantial. Because
18  the financial resources of class members is unknown, it will not be considered. Finally, the
19  Court considers the difficulty individual plaintiffs would encounter in bringing separate
20  actions against a major corporate defendant. Although the exact number of class members
21  is not known, the record indicates that there is a strong likelihood that the number exceeds
22  several thousand members. In light of the aforementioned factors, the Court finds that the
23  numerosity requirement is met.

24

25

26   ³   Defendants do not dispute that the numerosity requirement has been met.
27   Nonetheless, the Court must conduct its own inquiry to confirm that the moving party's
     allegations comply with the requirements of Rule 23. See General Tel. Co. of S.W., 457 U.S.
28   at 160-61.

1        ## 2.    **Commonality and Typicality**[4]

2        A class has sufficient commonality "if there are questions of fact and law which are

3   common to the class." Fed. R. Civ. P. 23(a).  It is not necessary that all factual or legal

4   questions raised in the lawsuit be the same for the commonality requirement to be met;

5   however, there must be at least a single issue common to all class members.  See Hanlon v.

6   Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "Although members of the proposed

7   class . . . . may possess different avenues of redress, their claims stem from the same source

8   . . . ." Id.

9        The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the

10  representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P.

11  23(a).  Under the rule's permissive standards, claims are typical if "they are reasonably co-

12  extensive with those of absent class members; they need not be substantially identical."

13  Hanlon, 150 F.3d at 1020.  In other words, if the claim is based on the same event or course

14  of conduct giving rise to the claims of other class members and based on the same legal

15  theory, the claims are typical.  See Winkler v. Dte, Inc., 205 F.R.D. 235, 241 (D. Ariz. 2001)

16  (citation omitted).  The test for typicality "is whether other members have the same or similar

17  injury, whether the action is based on conduct which is not unique to the named plaintiffs,

18  and whether other class members have been injured by the same course of conduct."  Hanon

19  v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  These requirements tend to merge

20  when the plaintiffs allege a common issue that has caused class wide harm, including harm

21  to the plaintiffs.  See General Telephone Co. v. Falcon, 457 U.S. 147, 158 n. 13 (1982).

22        In its Order granting summary judgment in favor of Plaintiffs on some of the claims,

23  this Court noted that the "claims turn on a common issue, namely the proper interpretation

24  of the term 'accrued benefit,' for the purposes of the anti-cutback rule." (Doc. #77, p. 13, ll.

25  12-14).  Likewise, the remaining claims involve factual and legal issues common to the class,

26

27        [4]    The Court notes that variability of damages is not a basis for denying class

28  certification.  See Brink, 185 F.R.D. at 570.

1   most pertinently involving the proper interpretation of terms of the contract under ERISA.

2   In addition, whether Defendants failed to provide notice to participants when the Plan was

3   amended, and whether Defendants violated the reporting requirements under ERISA arising

4   out of the same common nucleus.  Thus, for these claims, commonality is present.

5   Defendants argue that there are no common questions regarding Plaintiffs' section 402(c)

6   claim (requirement for a written plan), but "not all factual or legal questions raised in the

7   lawsuit need be common for the commonality requirement to be met.  All that is required is

8   that there be at least a single issue common to all class members." Hanlon, 150 F.3d at 1019.

9       At oral argument, defense counsel correctly pointed out that typicality if different than

10   commonality.  But, the individual claims are typical of those of the class, as they are brought

11   on behalf of other Garrett Plan members who suffered the same alleged harm.  The factual

12   inquiry necessary to resolve these individual claims will necessarily impact other members

13   of the class.  For this reason, typicality is present.

14       The Ninth Circuit has acknowledged that "class certification is inappropriate where

15   a putative class representative is subject to unique defenses which threaten to become the

16   focus of the litigation." Hanon, 976 F.2d at 508.  Defendants argue that the typicality

17   requirement cannot be met because the named Plaintiffs and putative class members are

18   subject to affirmative defenses such as the statute of limitations that "depend on facts

19   peculiar to each plaintiff's case." (Doc. #146, citing Broussard v. Meineke Disc. Muffler

20   Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998) (citing In re N. Dist. of Cal. Dalkon Shield

21   IUD Prods. Liab. Litig., 693 F.2d 847, 853 (9th Cir. 1982)); Barnes v. Am. Tobacco Co., 161

22   F.3d 127, 149 (3d Cir. 1998) (same); O'Connor v. Boeing North American, Inc., 197 F.R.D.

23   404, 413 (C.D. Cal. 2000) (finding that no class representative's claims were typical given

24   the individualized focus of the statute of limitations defense)).  Thus, according to

25

26

27

28

1  Defendants, the individualized issues render Plaintiffs' claims atypical. (Doc. #214, citing

2  Dongelewicz v. PNC Nat'l Bank Ass'n, 2004 WL 1661863, at *816 (3d Cir. 2004)).[5]

3      The issue before the Court is whether Defendants have raised significant enough

4  issues calling into question whether the statute of limitations will substantially limit

5  Plaintiffs' recovery. Defendants were permitted to conduct limited discovery on the named

6  Plaintiffs in order to accomplish this objective. Defendants argue that most or all participants

7  learned or should have learned of their claims through summary plan descriptions and other

8  broadly distributed communications. For example, in January 1984 participants allegedly

9  received two brochures explaining the merger of the Garrett plans into the Signal plans,

10  disclosing the Social Security offset, that the SBA would earn over 12% interest, and that the

11  SBA offset would be calculated using this high interest rate. Defendants argue they will

12  succeed on summary judgment that this information, and other distributed communications,

13  gave Plaintiffs actual or constructive knowledge of the injuries underlying their claims.

14  Defendants acknowledge that there may be some participants who lacked knowledge of the

15  relevant facts in the 1980's or by the mid-1990's, but ultimately, the claims will survive or fail

16  based on facts unique to each individual.

17      Defendants also contend that there are additional ways in which putative class

18  members "may have" been put on notice of their claims, such as:

19  (1)   Complaints and inquiries by plan participants regarding SBA Offset (petitions,

20      letters, meetings). Individualized inquiries will be necessary to determine what

21      facts were known to employees so each claim can be assessed on the merits.

22

23      [5] This decision was designated as "Not Precedential" by the Third Circuit. Although
the Ninth Circuit prohibits the citation of unpublished Ninth Circuit authority, the Third

24  Circuit does not have such a rule. See United States Court of Appeals for the Third Circuit,
Internal Operating Procedure 5.3 (stating that such opinions "appear to have value only to

25  the trial court or the parties."); 3rd Cir. R. 28.3(a) ("Citations to federal decisions that have

26  not been formally reported shall identify the court, docket number and date, and refer to the
electronically transmitted decision."); contra 9th Cir. Fed. R. App. P. 36-3(b) ("Unpublished

27  dispositions and order of this Court may not be cited to or by the courts of this circuit, except

28  in the following circumstances . . . .").

- 9 -

(2)  Company presentations designed to address SBA offset. One series in 1995 aimed at addressing participants' concerns and provided examples of how the offset was calculated.  Over 1,000 persons attended.  Several employees complained by email afterwards. Another presentation in 1995 was intended to educate participants about retirement benefits.  Defendants contend that there is presently no means of identifying those who attended these presentations on a class-wide basis.

(3)  Focus group. Created by the company to better understand complaints regarding SBA offset and create more effective communication regarding offsets.  Four meetings were held beginning in October 1995.  It is argued that a group of employees who had the full resources of the company available to answer their questions received constructive notice of their potential claims at the four meetings.  E.g., one member prepared an eight-page summary. Further, the focus group mailed participants a "detailed" pamphlet in November 1995.

(4)  Administrative claims. Some employees filed administrative claims allegedly constituting notice.  One employee filed in January 1984 a calculation of SBA offset.  It is argued that without individualized discovery, it is impossible to determine how many other putative class members had similar concerns or filed similar claims.[6]  More importantly, the issue is not who filed claims, but what information was provided to participants.

(5)  Consultation with attorneys. Documents revealing that employees consulted with counsel regarding SBA offset.  These letters indicate that putative class members were on notice of the SOL.  Defendants do not know who of the putative class members consulted with an attorney, but they suggest there are

---

[6]  It is significant that Defendants are unaware at this point how many of the possible 10,000 putative class members filed administrative claims, although Defendants should have such information in files in their possession.

- 10 -

1   more. E.g., flyer posted in 1995 at one of the Company's facilities soliciting
2   employees to speak to the "Law Firm of William M. Spence, P.C." to
3   challenge the SBA offset.

4   (6)   Efforts to involve government agencies. Many employees complained to
5   government agencies about the SBA offset. E.g., over 100 participants
6   corresponded with the Department of Labor alleging some type of violation of
7   ERISA. Although they did not couch their complaints in proper legal terms,
8   it is suggested they were aware of some alleged "injury" and who caused it.

9   (7)   Benefits calculations, estimates, and statements. For example, in 1984 and
10   1985, detailed statements contained projection of benefits to normal retirement
11   age, including calculation of SBA offset. Retiring participants also received
12   final calculations upon their retirement, although they could have requested
13   such calculations earlier.

14   (8)   Individual benefits meetings, exit interviews, and other oral communications.
15   (Doc. #214, p. 2-3).[7]

16   Plaintiffs contend that none of these items would establish that there was a "clear and
17   continuing repudiation of rights under the pension plan which [was] made known to the
18   beneficiary." See Martin v. Constr. Laborer's Pension Trust For S. Cal., 947 F.2d 1381, 1384
19   (9th Cir. 1991). Known as the federal discovery rule, Defendants must show Plaintiffs had
20   knowledge of the injury, i.e., that their benefits were reduced by Plan amendments. Thus,
21   a plaintiff cannot be charged with knowledge, actual or constructive, until the defendant
22   shows that it *clearly repudiated* the plaintiffs' claims. See Romero v. Allstate, 404 F.3d 212
23   (3d Cir. 2005). It does appear, however, as alleged by Plaintiffs that in their recent papers
24   Defendants have abandoned the argument that clear repudiation occurred. Plaintiffs argue
25   that at a minimum, before the statute of limitations could run, they were entitled to know that

26

27   [7]   Defendants have the burden of establishing the statute of limitation defense.
It does not appear suitable in order for Defendants to establish the defense for them to take
28   interrogatories of each putative class member or take each of their depositions.

- 11 -

1   the Plan was amended and applied to reduce benefits and that Defendants repudiated
2   Plaintiffs' claims.  In view of the complexity of the calculations showing the "error" by
3   Defendants, it seems unreasonable to assume that Plaintiffs might have been able to figure
4   out that they had claims and what they were by reviewing, "a complex thicket of obscure
5   mathematical formulations, footnotes and calculations with cross references to nonexistent
6   tables in the 17-20 page benefit calculation worksheet."  (Doc. #168).

7       The Court need not determine for purposes of deciding whether certification is
8   warranted what the applicable statute of limitations is, when it accrued, and whether it
9   applies.  Neither must the Court decide whether laches is a viable defense or whether
10  Defendants waived their defenses.  Indeed, there is much dispute about these issues, which
11  Defendants contend will likely constitute much of their defense and lie at the heart of this
12  matter.  Defendants argue that determining when the statute of limitations accrued will
13  depend on "specific documents, communications, conversations, and investigations he or she
14  received, participated in or conducted over the twenty year period between the first
15  challenged amendment and the institution of this action."  (Doc. #146, p. 5).

16      However, in reviewing arguments and limited concrete evidence given by Defendants,
17  they have not met the burden of defeating commonality or typicality.  Although Plaintiffs'
18  claims may be somewhat different, they have alleged a course of conduct that has given rise
19  to claims that are based upon the same legal theories, thus satisfying the typicality and
20  commonality requirements.  See Cameron v. Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976)
21  (finding that the issue of individual issues of compliance with statute of limitations did not
22  defeat predominance of the common question); Williams v. Sinclair, et al., 529 F.2d 1383,
23  1388 (9th Cir. 1976) (finding that the existence of a statute of limitations issue does not
24  compel a finding that individual issues predominate over common ones).

25      Defendants cite Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th
26  Cir. 1998), in support of their argument that typicality cannot be met.  In Broussard, which
27  involved a contract dispute brought by franchisees, the Fourth Circuit held that the proposed
28

1   class lacked commonality and typicality on the basis that the claim involved individualized
2   inquiry into the nature of the claims and defenses.   In reaching this determination, the court
3   noted that plaintiffs failed to overcome several obstacles, including  a "conflict of interest
4   between different groups of franchisees with respect to the appropriate relief. "  Id. at 338.
5   In addition, plaintiffs could not advance a single collective breach of contract action on the
6   basis of multiple different contracts, as the agreements at issue "may vary from year to year
7   and from franchisee to franchisee." Id. at 340.  Further, the "reliance element of plaintiffs'
8   fraud and negligent misrepresentation claims were not readily susceptible to class-wide
9   proof," as these claims turned on whether "each franchisee reasonably relief on [defendant's]
10   representations." Id. at 431.  Because "proof of reasonable reliance would depend upon a
11   fact-intensive inquiry into what information each franchisee actually had about the operation
12   of the [] account," typicality could not be shown. Id. at 431.  The Fourth Circuit analogized
13   the case with Zimmerman v. Bell, a securities fraud case which held that "[t]o recover in an
14   action for securities fraud, individual class members must demonstrate that the omitted
15   information was not otherwise available to them." Id. at 342, citing Zimmerman v. Bell, 800
16   F.2d 386, 390 (4th Cir. 1986).  Finally, the court noted that the issue of tolling of the statute
17   of limitations on each of plaintiffs' claims "depends on individualized showings that are non-
18   typical and unique to each franchisee." Id. at 342.

19        Here, the issue of commonality or typicality is not one of initial burden of proof and
20   does not involve the same level of complexity as in Broussard that would require inquiry into
21   the employees' state of mind.  Rather, Plaintiffs' class claims involve various facts, many of
22   which have already been established. The Fourth Circuit was concerned about individualized
23   showings with regard to tolling of the statute of limitations, which was plaintiff's burden.
24   Here, Defendants contend that the individualized inquiry involves the statute of limitations
25   itself, which is their burden.   In addition, Plaintiffs do not allege fraud such that an
26   individualized inquiry may inherently be part of the claim. For these reasons, the Court does
27   not find Broussard persuasive.

28

1    Defendants also cite to Barnes v. The American Tobacco Company, 161 F.3d 127,

2  134 (3d Cir. 1998), a toxic tort case brought by smokers against cigarette manufacturers in

3  which the district court certified, then changed its decision based on several individual issues,

4  including addiction and causation.   On the issue of the accrual of statute of limitations for

5  medical monitoring claims, it is when the plaintiff suffers a "significantly increased risk of

6  contracting a serious latent disease."  Id. (citation omitted).   According to plaintiff, "a

7  cigarette smoker suffers this risk when he reaches the ten or twenty 'pack-year' level."  Id.

8  Thus, determining when the statute of limitations accrued required two individual inquiries:

9  when the plaintiff began smoking and how much he smoked since then.  See id. at 149.

10  Unlike the plaintiffs in Barnes, who raised their own complex issue of accrual, Plaintiffs

11  here, to the contrary, contend that the statute of limitations does not require such an inquiry,

12  because regardless of the information presented, there is no way Plaintiffs would have been

13  on notice.  It is Defendants who contend that individualized inquiries are necessary to

14  establish the statute of limitations, which is their burden to prove.  Furthermore, there are no

15  primary individual issues such as causation or addiction.  For these reasons, the Court does

16  not find Barnes is persuasive.

17    Also, Defendants cite to a recent Ninth Circuit decision, Chuck v. Hewlett Packard

18  Co., et al., No. 04-36094 (9th Cir. July 25, 2006), in which the court held that despite

19  defendants' violations of ERISA's disclosure and review requirements, plaintiffs' benefits

20  claim was time-barred. In reaching this conclusion, the Ninth Circuit noted compelling facts

21  indicating that plaintiff was on notice of his claim, such as that he had complained to Hewlett

22  Packard ("HP") about the specific benefits calculation in question in that he claimed he was

23  entitled to the original, higher-benefits calculation as a condition of his agreement to return

24  to the company's employ.  Id. at 8299.  In addition, in late December 1980, after plaintiff

25  resigned, HP sent him a claim form with instructions regarding the election of a method for

26  pension benefit payment.  Id.  Plaintiff then wrote a letter asking that the amount be corrected

27  to reflect his original hire date, to which HP re-affirmed the decrease in plaintiff's vested

28

1  benefits. Id. In response, plaintiff took no immediate action. Further, plaintiff "admit[ted]
2  that he was aware at this time that HP was going to take the position that he was not eligible
3  for any further pension benefits." Id. Plaintiff subsequently sent a series of letters to HP
4  seeking clarification of the benefits, to which HP responded that no further benefits would
5  be paid." Id. Based on these "unusual" facts, the Court reluctantly determined that there was
6  "a clear and continuing repudiation" of a claimant's rights under the plan such that his claims
7  were barred. Id. at 8305-06. In the present case, we have no such compelling facts.

8       At oral argument, Defendants contended that unlike the defendant in Williams, 529
9  F.2d at 1388, they presented evidence that some plan participants knew or should have
10  known of the violation. However, as Plaintiffs' stated at oral argument, courts have been
11  clear that the repudiation must be "unequivocal" or "unmistakable." Chuck, No. 04-36094
12  at * 8309. Much of Defendant's evidence is based on speculation, and they are largely in
13  possession of the evidence that the statute of limitations will defeat the class action. Thus,
14  Defendants have not established a threshold that the documents presented triggered the
15  statute of limitations. "These persons are linked by this common complaint, and the
16  possibility that some may fail to prevail on their individual claims will not defeat class
17  membership." Vizcaino v. U.S. Dist. Court for Western Dist. of Washington, 173 F.3d 713,
18  722 (9th Cir. 1999). Should the Court later find that certain individual's claims are barred,
19  it can enter an appropriate order excluding those persons from the class. See Cohen v.
20  District of Columbia Nat'l Bank, 59 F.R.D. 84, 90 (D.D.C. 1972).[8]

21              **3.     Fair And Adequate Representation of the Class**

22       Rule 23(a)(4) requires that the named Plaintiffs fairly and adequately represent the
23  interests of the class. The two criteria for determining adequacy of representation are that:
24  (1) the named plaintiffs and their counsel do not have any conflicts of interest with other
25  class members, and (2) the named plaintiffs and their counsel will prosecute the action

26

27       [8]     In addition, Defendants argue that Plaintiffs' § 502 claim requires
individualized inquiry is incorrect. As Plaintiffs point out in their Reply, this claim is based
28  only on the request for plan documents made by Plaintiffs' counsel. (Doc. #168).

1  vigorously on behalf of the class.  See Hanlon, 150 F.3d at 1020.  All named Plaintiffs are
2  former Garrett Plan participants who suffered the same alleged harm as putative class
3  members as a result of the violations alleged.  As Plaintiffs contend, each of the named
4  Plaintiffs are members of the Garrett Action Committee that has recruited others to help
5  finance and prosecute this action and enlisted over 900 former employees to assist in their
6  efforts.  (Doc. #84, citing Decl. of Richard Scates ¶ 4-5).  Defendants only argument is that
7  Plaintiffs are inadequate representatives based on the applicable statute of limitations and
8  doctrine of laches.  However, because this Court has not determined what statute of
9  limitations applies or when the claims accrued for each of the individual Plaintiffs,
10  Defendants' argument is premature.  If the Court finds that the statute of limitations does bar
11  one or more of Plaintiffs' claims, then these Plaintiffs will be dismissed as inadequate
12  representatives of the class.  See Patterson v. Alaska Airlines, Inc., 756 F. Supp. 476, 478
13  (W.D. Wash. 1990).

14  Based on Plaintiffs' efforts thus far, and their individual statements submitted in
15  support of their Motion, the Court is satisfied that they are committed to the present
16  litigation.  Furthermore, based on Plaintiffs' counsel's representation to date, the Court is
17  persuaded that her firm has the expertise, and commitment to continue to fairly and
18  adequately represent the class.  Plaintiffs represent that they have "worked on this matter
19  since June 2001 and [have] diligently investigated and identified potential claims."  The
20  Court agrees.  As set forth in Ms. Martin's declaration, it is apparent that Ms. Martin has a
21  significant amount of experience in class action litigation, which Defendants do not dispute.
22  Thus, pursuant to Rule 23(g), Martin & Bonnett will be appointed class counsel.

23  **B.    Rule 23(b)(2) Requirements**

24  Some of Plaintiffs' claims seek declaratory and injunctive relief, while others seek
25  monetary damages.  Defendants contend that certification under Rule 23(b)(2) is precluded
26  because Plaintiffs are seeking primarily money damages.  (Doc. #146, p. 23).  "Because Rule
27  23(b)(2) does not allow for notice or the right to opt out, therefore, class certification under
28

- 16 -

1   Rule 23(b)(2) is proper only when a claim for money damages is "secondary" to a claim for
2   injunctive or declaratory relief." (Id. citing Molski v. Gleich, 318 F.3d 937, 947-48 (9th Cir.
3   2003). Defendants also contend that "[a]lthough Rule 23(b)(2) is silent on whether monetary
4   relief can be recovered on behalf of putative class members, the Committee Notes state that
5   [it] does not extend to cases in which the appropriate final relief relates exclusively or
6   predominantly to money damages." (Id. citing Committee Notes to Fed. R. Civ. P. 23(b)(2)).

7       In Molski, the Ninth Circuit acknowledged that "although the rule is silent as to this
8   issue, we have recognized that '[c]lass actions certified under Rule 23(b)(2) are not limited
9   to actions requesting only injunctive or declaratory relief, but may include cases that also
10  seek monetary damages.'" 318 F.3d at 947, citing Probe v. State Teachers' Ret. Sys., 780 F.2d
11  776, 780 (9th Cir. 1986). Thus, in order to determine predominance, the Court focused on the
12  language of Rule 23(b)(2) and the intent of the plaintiffs in bringing the suit. See Molski,
13  318 F.3d 937. Other circuits have similarly rejected a bright-line rule, whereby class-
14  certification is denied if any monetary damages are sought, in favor of an ad hoc approach.
15  See Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 164 (2d Cir. 2001)
16  (rejecting bright-line bar to (b)(2) class treatment of all claims for compensatory damages
17  and other non-incidental damages in favor of an ad hoc approach). Although the Ninth
18  Circuit clearly adheres to an ad hoc standard, there is little guidance on how it is applied.

19      Defendants argue that the size of the award indicates that money damages are the
20  predominate form of relief sought, because Plaintiffs allege that they "have been damaged
21  .... and deprived of benefits under the Plans totaling hundreds of millions of dollars." (Doc.
22  #146, p. 25, citing Amended Compl. ¶ 82). However, the amount sought has not as much to
23  do with the alleged injury to each individual Plaintiff stemming from the violation as it does
24  with the overall size of the putative class. As a result, this factor alone does not indicate that
25  certification under Rule 23(b)(2) is improper.

26      Defendants cite to Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1240 (9th Cir.
27  1998)) as further support for their argument, in which the Ninth Circuit considered whether
28

- 17 -

1 | new class counsel erred by not insisting that the class be allowed to opt-out of the monetary

2 | portion of the settlement. See id. In deciding which predominated, the court compared the

3 | value of the injunctive relief ($20.9 million to $34.2 million) to the monetary relief ($6

4 | million before costs and attorneys' fees, and approximately $3.7 to $4 million after) before

5 | ultimately concluding that injunctive relief predominated. In this case, although Plaintiffs

6 | estimate they were deprived of benefits "totaling hundreds of millions of dollars," neither

7 | party has attached a monetary amount to the declaratory relief.

8 | At oral argument, Defendants attempted to provide the Court with a mechanism for

9 | attributing value to the relief sought, noting that approximately 80-90% of the putative class

10 | members have already retired implying that the predominate source of relief sought by these

11 | individuals relates to benefits already paid, not declaratory relief impacting future benefits.

12 | (8/4/06 Trans. p. 39, l. 1-20). Defendants use the following example:

13 | [T]ake a typical participant who retired 15 years ago, who I'm assuming is now 75 years old. Assuming he retired at 60, or at 65, he or she is 80-year[s]-old.

14 | What that person's claim's [sic] for is money. A 15-year annuity is 180 monthly annuity payments which that person says are calculated incorrectly,

15 | and he or she wants money put back in the pocket. That's the hundreds of millions of dollars that Ms. Martin's talking about. That's most of the class.

16 | They're not looking for a declaration as to the future, they are looking for money as to the past. Id.

17 |

18 | Regardless of whether the plaintiff is retired or not, the relief sought affects both previous and future benefits. However, because Plaintiffs were all former members of the Garrett

19 | Plans as of 1983, it is unlikely that the injunctive relief sought for future benefits would

20 | outweigh the amount of monetary relief by three times as in Linney, or even two times.

21 | Indeed, if 80-90% of the putative class members are retired, then using the example above

22 | of the individual who retired fifteen years ago, the declaratory relief sought would need to

23 | affect future benefits for the next 30-45 years to predominate the litigation. In other words,

24 | this individual would receive 15 years of monetary relief, so the declaratory relief would need

25 | to affect payments for two or three times that amount in order to predominate. Thus,

26 | although courts have held that (b)(2) certification is proper where monetary damages directly

27 |

28 |

- 18 -

1  flow from the injunctive relief sought,[9] the same cannot be said here where the injunctive
2  relief is so disproportionate to the monetary relief sought. Thus, (b)(2) certification would
3  be improper.

4       **C.   Rule 23(b)(3) Requirements**

5       As previously set forth, pursuant to Rule 23(b)(3), Plaintiffs must establish
6  predominance, i.e., that "the questions of law or fact common to the members of the class
7  predominate over any questions affecting only individual members," and superiority, i.e., "a
8  class action is superior to other available methods for the fair and efficient adjudication of
9  the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is much more
10  vigorous than the commonality requirement of Rule 23(a). See Brink, 185 F.R.D. 567, 572
11  (D. Ariz. 1999) citing O'Connor v. Boeing North American, Inc., 180 F.R.D. 359, 379 (C.D.
12  Cal. 1997). Common issues predominate when they constitute such a "significant aspect of
13  the case" that "'there is a clear justification for handling the dispute on a [class] . . . . basis.'"
14  Id. (citations omitted).

15       In the instant action, the common issues of law and fact greatly predominate. All of
16  the proposed class members' claims involve the same common nucleus of facts and arise
17  from Defendants' alleged violation of the Plan and ERISA. Furthermore, unlike the cases
18  cited by Defendants, there are no legally distinct issues.[10] Although there may be some
19  variation among the individual employees, such as with damages, it is not enough to defeat
20  certification. Thus, certification under (b)(3) is proper. See Local Joint Exec. Bd. of
21  Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001)

22

23

---

24  [9] Gete v. Immigration and Naturalization Service, 121 F.3d 1285, 1299 (9th Cir.
    1996); Paxton v. Union Nat'l Bank, 688 F.2d 552, 563 (8th Cir. 1982); Morgan v. Laborers
25  Pension Trust Fund For Northern California, et al., 81 F.R.D. 669, 681 (N.D. Cal. 1979);
    LaFlamme v. Carpenters Local #370 Pension Plan, et al., 212 F.R.D. 448, 456-67 (N.D. Cal.
26  2003).

27       [10]The only individualized questions Defendants contend are present involve proof of
28  Defendants' defenses, which the Court has addressed previously.

- 19 -

1   (finding that where individualized issues are few and likely relatively easy, (b)(3)

2   certification is proper); Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount

3   of damages is invariably an individual question and does not defeat class action treatment.").

4        Furthermore, given the size of the potential class, numerous adjudications on the same

5   issue would be costly and inefficient. See Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d

6   507, 512 (9th Cir. 1978). Having satisfied all of the requirements established by Rule 23(a)

7   and (b)(3), the Court will certify the proposed class and subclasses. See supra p. 4.

8        Accordingly,

9        IT IS ORDERED that Plaintiffs' Motion For Class Certification (Doc. #84) is

10  GRANTED.

11       DATED this 6th day of September, 2006.

12

13

14

15

16                                Roslyn O. Silver
                                  United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28