**SCHLEIER LAW OFFICES, P.C.**
**TOD F. SCHLEIER, ESQ.  #004612**
**BRADLEY H. SCHLEIER, ESQ.  #011696**
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250
Email: tod@schleierlaw.com
Email: brad@schleierlaw.com

**SUSAN MARTIN #014226**
**JENNIFER KROLL #019859**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas G. Frazier, a married man, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CV-10-01618-PHX-SRB |
| ) | |
| Honeywell International, Inc., a Delaware ) | |
| corporation;  Honeywell Retirement ) | |
| Earnings Plan; Salaried Employees ) | **JOINT CASE MANAGEMENT** |
| Pension Plan of Allied Corporation; ) | **REPORT AND REQUEST FOR** |
| Salaried Employees Pension Plan of ) | **ENTRY OF AMENDED** |
| AlliedSignal, Inc.; Salaried Employees ) | **SCHEDULING ORDER** |
| Pension Plan of the Bendix Corporation; ) | |
| Pension Plan for Salaried Employees of ) | |
| General Aviation Avionics; Plan ) | |
| Administrator of the Honeywell ) | |
| Retirement Earnings Plan; Plan ) | |
| Administrator of the Salaried Employees ) | |
| Pension Plan of Allied Corporation; Plan ) | |
| Administrator of the Salaried Employees ) | |
| Pension Plan of the Bendix Corporation; ) | |
| Plan Administrator of the Pension Plan for ) | |
| Salaried Employees of General Aviation ) | |
| Avionics, ) | |
| Defendants. ) | |

Consistent with this Court's November 16, 2012 Order that vacated the deadlines set for the supplementation of all discovery and the close of discovery and permitted the parties to submit a proposed amended scheduling order (Docs. 163 & 169), the parties hereby jointly submit this Joint Case Management Report.  The parties also submit individual proposed Amended Scheduling Orders reflecting their positions set forth below.

**1.     The Parties' Positions on Additional Discovery and Dispositive Motions:**

a.     <u>Plaintiff's Position.</u>

     **Status of Discovery**

Since November 23, 2011, Plaintiff has served six sets of requests for production, four sets of interrogatories and two sets of requests for admission. Plaintiff has also conducted four depositions and two more are noticed. Defendants have conducted two depositions.

From the outset of discovery, Plaintiff has requested documents and information pertaining to Bendix Plan participants who transferred to other locations within the Company and/or to and from Affiliated Companies.

Defendants agreed to produce some of the requested documents and information concerning Bendix Plan participants who transferred to King Radio. The group of Bendix Plan participants who transferred to King Radio comprises approximately 225 of the alleged 1,300 class members that Defendants have represented constitute the class. Defendants objected to and refused to produce documents and information regarding participants who transferred to other plans prior to class certification. In order to resolve the dispute, the parties entered into a stipulation, Doc. 92, that the Court approved by Order dated May 24, 2012, Doc. 94, which provided, *inter alia,* that Defendants would not challenge numerosity for purposes of class certification and that Plaintiff could defer further efforts to obtain discovery and documents concerning Bendix Plan participants who transferred to facilities other than King Radio until after resolution of Plaintiff's class certification motion. Pursuant to the discovery stipulation and Order, Defendants

have represented that they provided Plaintiff with copies of all readily accessible pension plans and summary plan descriptions from 1983 to the present maintained by Honeywell International Inc. or its affiliates covering locations that individuals transferred to at any time after having participated in the Bendix Plan. Approximately 21 such plan documents were produced.

Despite the Court's ruling certifying the class on November 20, 2012, the fact that Defendants have been on notice for over one year of Plaintiff's discovery requests and the fact that Defendants have made representations regarding the number of persons in the class, the locations to which they transferred and even the amount of damages, Plaintiff has not yet received any of the documents and information requested with respect to participants who transferred to locations other than King Radio. For example, Plaintiff does not know how many class members transferred to or from any specific location that maintained other pension plans that transferees participated in. Plaintiff believes that thirty-four of the discovery requests that were served prior to the ruling on class certification seek information that was withheld for participants who transferred to locations other than King Radio. Defendants have indicated that they will only commence a search for relevant discovery upon receipt of a comprehensive list of search terms from Plaintiff. Contrary to Defendants' representations, although Defendants mentioned that some pending discovery requests might need search terms, Defendants requested that Plaintiff await receipt of the latest discovery responses before discussion of search terms and then requested extensions of time through December 21, 2012 to produce one set of responses and the next set of responses was not produced until January 11, 2013. In addition, Plaintiff has indicated that prior to receipt of more information about the class, including identification of class members and production of benefits and personnel files and other data about the class members and their benefits, it is not possible to provide a comprehensive set of search terms. Nevertheless, the parties have discussed and Plaintiff has agreed to a process for search terms that involves preliminary search terms, Defendants' production of indices of documents in offsite storage that

contain those search terms and Plaintiff providing a comprehensive list of search terms after the benefits files have been produced and Plaintiff has had an opportunity to analyze them. Defendants recently advised Plaintiff that Defendants will begin production of benefit files by the beginning of February 2013.

The information requested by Plaintiff is directly related to questions regarding the meaning of the Plan, when and where the Bendix Plan was in force and effect, how the Plan was administered, Defendants' alleged understanding and practices with respect to the Plan and whether class members were treated uniformly or disparately. The information is also relevant to Plaintiff's breach of fiduciary duty claims. For example, on the motion to dismiss the benefits claim, Defendants' so-called administrative record included at least 36 pages of emails, memoranda and other documents that relate to Defendants' administration and interpretation of the Plan. Doc. 40-6, at FR000547-83. *See, e.g.*, *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010) ("Multiple erroneous interpretations of the same plan provision, even if issued in good faith, might well support a finding that a plan administrator is too incompetent to exercise his discretion fairly…"). By way of further example, Defendants' claim that certain members of the class were paid Bendix Plan benefits through "administrative error" is relevant to the interpretation and practices of the Plan. In addition, Defendants' shifting interpretations of the Plan are shown through documents submitted on their motion to dismiss regarding the so-called "grandfathered" employees. *See, e.g.,* Doc. 49, at pp.5-6.  With respect to these employees, Defendants stated in denying Plaintiff's claim that: "Employees who transferred from other businesses to the Avionics/King Radio business before [May 20, 1991] were permitted to continue accruing pension benefits **under the Bendix Salaried Plan**." *See* Doc.  40-7, at FR000650 (emphasis supplied).  Defendants now claim that **no** employees were entitled to benefits under the Bendix Plan, including the so-called grandfathered employees that Defendants now state were paid as the result of an "administrative error." This is more than ample reason to allow Plaintiff to complete discovery on the Plan violation claims.

Further, while the Court has denied Plaintiff's motion to strike Defendants' expert declaration, that declaration is replete with references to alleged practices and understandings by Defendants concerning the administration of the Plan. *See Johnson v. Meriter Health Services Employee Ret. Plan*, 12-2216, 2012 WL 6013457, at *3 (7th Cir. Dec. 4, 2012) (acknowledging that extent of a practice by the defendant plan could entitle class members to the benefit of the practice under the plan). Outstanding discovery requests seek to establish facts relating to the Plan's administration and practices with respect to class members who transferred to the various locations. For example, based on one document produced so far, it appears that there was not just one limited group of individuals who transferred to King Radio who received Bendix Plan benefits. Rather, it appears that other employees, including employees that transferred from a Bendix location to Torrance, California also received Bendix Plan benefits and were also "grandfathered." How these other class member transferees were treated is relevant to many issues, including the meaning of the Plan, the declaratory relief sought, the "uniform procedures" that must be followed and Defendants' claim that the Court should apply some level of deference. *See Met. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008); *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 973-74 (9th Cir. 2006). Plaintiff also does not have discovery concerning the distribution of summary plan descriptions at locations other than King Radio.

Defendants' claim that discovery is somehow inconsistent or would undermine the Court's class certification ruling makes no sense because Defendants' treatment of other class members' claims and appeals is pertinent to a determination of whether the Bendix Plan promised transferees that they would receive any shortfall in benefits from the Bendix Plan at the time of their retirement or whether, as Defendants now claim, it never did.  The fact is that although Defendants are focusing on the benefits and personnel files, Plaintiff also requested Company and Plan administration documents relevant to the issues regarding Defendants' alleged understanding and treatment of transferred employees under the Bendix Plan.  Because Defendants have so far failed to disclose any

information about the rest of the class and because Defendants have insisted that Plaintiff must come up with comprehensive search terms before Defendants will undertake a search of any documents in offsite storage facilities, the parties have agreed that the appropriate place to start with searching for the other documents that Plaintiff seeks is by reviewing the benefits and personnel files and developing a list of search terms. Defendants' arguments that somehow seeking declaratory relief obviates discovery of pertinent facts in support of the request for such relief is unfounded. Contrary to Defendants' statement below, most of the uncompleted discovery sought by Plaintiff does **not** relate solely to "individual liability issues and monetary relief for individual class members."[1] There is no justification to require Plaintiff to litigate Plaintiff's claims for violations of the terms of the Plan without discovery as to how the Plan was administered and applied with respect to class members who transferred to other locations.

Defendants' citation of *Adams v. Anheuser-Busch Companies, Inc.*, 2:10-CV-826, 2012 WL 1058977 (S.D. Ohio Mar. 28, 2012) is misplaced. *Adams* involved three individual claimants who sought benefits under a plan provision where the plan produced statistical evidence and other information showing the plan had been uniformly applied. The court refused to allow discovery of non-parties where plaintiff had nothing other than "conclusory allegations" in support of a claim that the plan was inconsistently administered. Here, unlike *Adams* this is a class action and Defendants' application and administration of the Bendix Plan with respect to the various locations where participants transferred is certainly relevant to the Plan interpretation issues. Further, Plaintiff has alleged and documentary evidence supports Plaintiff's claim that the Plan has been inconsistently administered and subject to much confusion as evidenced by Defendants' shifting positions, first that the Plan did entitle certain transferees to Bendix benefits but

---

[1] Plaintiff does not understand what Defendants mean by "individual liability issues" as the claims have been certified for class treatment and do not present questions of individual liability.

only those that were "grandfathered," then the claim that those employees were paid by administrative error and not entitled to benefits under the Plan.[2]

Defendants have also indicated that there are Board of Directors minutes and other documents that they have not yet produced but will produce at some time in the future. With respect to some of the other documents and information sought, Defendants have refused to commit to any date for production for even the documents that they have agreed to produce without a need for search terms.

With respect to the Bendix Plan participants who transferred to King Radio, there are still some outstanding discovery issues that may require Court assistance to resolve. The parties recently agreed to enter into a data stipulation that will assist in resolving some discovery issues.  By way of example, Plaintiff contends that the Bendix Plan was in effect at the King Radio location and that Bendix Plan participants were actually paid benefits for all of their time at King Radio. Defendants have now asserted in discovery in response to Requests for Admission that this was somehow an "administrative error." Plaintiff has requested further discovery on this issue and Defendants have not yet produced such responses nor committed to a date by which such documents will be produced.

Plaintiff also anticipates a number of additional depositions will be necessary following receipt of the written and document discovery that is outstanding, including a Rule 30(b)(6) deposition and subpoenas of Defendants' actuaries and consultants in addition to the depositions that have been taken or noticed. Accordingly, Plaintiff requests that the Court authorize Plaintiff to take a total of 24 depositions in addition to expert depositions. Plaintiff also needs to conduct appropriate follow-up discovery. Plaintiff also anticipates a need for further interrogatories and the parties have agreed that they will discuss and attempt to work out the number of requests and seek Court

---

[2] In addition, unlike *Adams*, Plaintiff has asserted that *de novo* review applies under the terms of the Plan and ERISA.  *See* Doc. 60, at pp. 8-9.

assistance if they cannot resolve the issue.

By way of brief summary, the remaining discovery goes far beyond discovery relating to monetary relief and is necessary for Plaintiff to litigate the claims for violation of the terms of the Plan, the disclosure claims and the claims for breach of fiduciary duty. Defendants' efforts to limit discovery or to litigate the motions for summary judgment prior to the completion of discovery should be rejected.

**Absent Class Member Discovery is Not Appropriate**

Plaintiff opposes Defendants' request to take absent class member discovery. Defendants have all the evidence in their possession that they need to litigate their statute of limitations defense without burdening the entire class with a fishing expedition that will result in duplicative and cumulative discovery. Defendants' affirmative defenses depend on the Defendants' conduct and Defendants' communications to class members. Defendants have failed to articulate any basis for serving interrogatories and requests for production on absent class members. Relevant communications, of necessity, must have come from Defendants in order to have triggered the running of the statute. Every document Defendants relied on, for example, in their motion to dismiss and in opposition to the motion for class certification on the statute of limitations issue was a document created by or distributed by Defendants and in Defendants' possession prior to the litigation.[3] The limited benefits and personnel files Defendants have produced contain documents dating back decades. It is simply not plausible that Defendants could prevail on a statute of limitations defense based on documentation not in their possession but in the possession of absent class members. Given this Circuit's standard for notice and clear and unmistakable repudiation of Plaintiff's claims prior to commencement of the running of a statute of limitations, it is Defendants' burden to establish that there were

---

[3] Contrary to Defendants' contention, Plaintiff is not claiming that Defendants do not have a right to litigate their defense.  Plaintiff is merely asserting that Defendants have made no threshold showing of any information that could conceivably be in class members' possession but not in Defendants' possession to warrant the intrusion and burden they seek to impose on absent class members.

communications emanating from Defendants that triggered the running of the statute of limitations. *Chuck v. Hewlett Packard*, 455 F.3d 1026, 1038 (9th Cir. 2006).

Defendants make no showing that the broad request to take absent class member discovery of all class members is appropriate, necessary or would serve any purpose. They cite no documents other than those that emanated from Defendants that could have triggered the running of the statute of limitations and neglect to mention that the 2000 Pension Choice statement for Mr. LittleJohn (who is not seeking a recovery in this class action), which Defendants prepared and distributed, was substantially different than Mr. Frazier's.   Mr. LittleJohn's subjective belief about the 1996 offer letter or other information provided to  Plaintiff that might have indicated that he was participating in multiple plans, is insufficient to trigger the running of any statute of limitations, particularly where, as Plaintiff alleges, the relevant provisions of the Bendix Plan promise to make up any difference in benefits and the only Summary Plan Description in effect at the time of Mr. Frazier's transfer confirmed his right to continue accruing benefits under the Bendix Plan. *See* Order on Defendants' Motion to Dismiss, Doc. 71 p. 12 n. 6 (stating with respect to Plaintiff's 1996 offer letter and 2000 Pension Choice Statement, "Even if the Court were to consider these documents, the documents are not conclusive denials or repudiations of Mr. Frazier's right to benefits under the Bendix Plan.").

Absent class member discovery is only appropriate if it is necessary, seeks information not known to the movant, would not require the assistance of a lawyer or other expert to answer and is not directed toward winnowing the size of the class. *See Barham v. Ramsey*, 246 F.R.D. 60, 64-65 (D.D.C. 2007) (denying defendants request to serve interrogatories on absent class members where defendants failed to show necessity of information sought and relevance, particularly since court had already made determination that defendants lacked probable cause to arrest all the people in Pershing Park, whether or not specific individuals among them may have engaged in any earlier unlawful activity). The party moving to take absent class member discovery has the burden of proving necessity. *Schwartz v. Celestial Seasonings,* 185 F.R.D. 313, 316

(D.Colo.1999); *Enter. Wallpaper Mfg., Co. v. Bodman,* 85 F.R.D. 325, 327 (S.D.N.Y.1980) (requiring a strong showing). *See Clark v. Universal Builders,* 501 F.2d 324, 340-41 & n. 24 (7th Cir.1974) (reversing a trial court's dismissal of claims of absent class members who failed to respond to interrogatories where no showing was made of necessity for discovery and where the questions required legal assistance to answer and where some of the interrogatories sought information on matters already known to defendants); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1555-56 (11th Cir. 1986;) *Dellums v. Powell,* 566 F.2d 167, 187 (D.C.Cir.1977). Defendants fail to meet that standard. Defendants' cases do not support the broad-reaching discovery they seek here. For example, *National Western Life Insurance Deferred Annuities Litig.*, No. 05-cv-1018, 2010 U.S. Dist. LEXIS 123089 (S.D. Ca. Nov. 19, 2010) and *Bruhl v. Pricewaterhousecoopers Int'l*, No. 03-23044-Civ, 2010 U.S. Dist. LEXIS 129504 (S.D. Fla. Dec. 8, 2010) deal with detrimental reliance, which is not an element of Defendants' defenses here. In *In re Warner Chilcott Ltd. Sec. Litig.*, 06 CIV.11515 WHP, 2008 WL 344715 (S.D.N.Y. Feb. 4, 2008), where those who bought more than 70 million shares of stock were class members, the court allowed limited document requests and short depositions of a small group of individuals who attended a limited number of meetings. Defendants propose no such limitation here.[4]

----

[4] Contrary to Defendants' claims, Plaintiff opposed open-ended class member discovery and no such discovery was permitted in the *Allen v. Honeywell Ret. Earnings* case. Although Defendants sought to serve questionnaires and interrogatories on the entire class, Plaintiffs in that case opposed the request and no questionnaire was permitted. *See Allen v. Ret. Earnings Plan*, No. CV04-0424 ECF No. 469 at p. 1 (D. Ariz. Jun. 17, 2008) (denying request to serve questionnaires on all class members); ECF No. 226 p. 11 n. 7 ("Defendants have the burden of establishing the statute of limitations defense. It does not appear suitable in order for Defendants to establish the defense for them to take interrogatories of each putative class member."). The only absent class member discovery that was allowed by agreement was limited to certain officers of the company in certain functions related to the claims, members of the Board of Directors, class member management employees involved in benefits functions, four class members who were asked to participate in a focus group regarding the plan at issue and three individuals as to whom Defendants made a specific claim that their prior complaints somehow triggered the statute of limitations.

**Plaintiff's Proposed Schedule on Dispositive Motions**

Plaintiff requests that the Court set a hearing on the proposed schedule and outstanding discovery. Plaintiff has attached hereto a proposed Amended Rule 16 Scheduling Order. Plaintiff anticipates that following Defendants' production of outstanding discovery requests, the parties will require a minimum of six months to complete expert reports, rebuttal and reply expert reports, appropriate depositions, third party discovery and follow-up discovery. Assuming that Defendants agree to or are directed to comply with completion of the provision of the benefits files and the data by mid-February. Plaintiff will promptly provide additional search terms and believes that the remaining documents to be produced, including those that are produced pursuant to agreed search terms can be produced no later than the end of April 2013.  Accordingly, Plaintiff proposes the following schedule:

Deadline to supplement expert disclosures and to disclose any additional experts: July 31, 2013

Deadline for rebuttal expert reports:  August 30, 2013

Deadline for reply expert disclosures:  September 30, 2013

Last day to complete discovery:  December 6, 2013

Deadline to file motions for summary judgment: January 17, 2014

Deadline to file opposition to motions for summary judgment: February 28, 2014

Deadline to file summary judgment replies:  March 28, 2014.

Plaintiff requests leave to revise the schedule in the event the Court orders longer time frames for Defendants to complete production of the outstanding discovery. Plaintiff believes that all claims can be disposed of by dispositive motions following discovery. These include Plaintiff's claims for violation of ERISA §§ 204(g) and (h), the claims for violations of the terms of the Plan, Defendants' breach of fiduciary duty with respect to the class, Defendants' violation of ERISA's disclosure and summary plan

description requirements and Plaintiff's individual claims for violations of ERISA's claims procedures requirements and for misrepresentation. Defendants' suggestion that they should be permitted to cherry-pick isolated claims and proceed on those under a time frame that would preclude Plaintiff from conducting the requisite discovery is inefficient and would deprive Plaintiff of facts essential to justify his opposition to Defendants' motion and preclude Plaintiff from presenting his own countervailing motion at the same time. As set forth above, the outstanding discovery relates to what Defendants are purporting to characterize as the so-called "Declaratory Relief" claims (in fact all of the claims seek, *inter alia*, declaratory relief). Plaintiff has provided several examples of how the information requested pertains to the claims for violations of the terms of the Plan and the other selected claims on which Defendants are proposing to proceed.

Defendants' request to litigate the benefits claim divorced from the ERISA § 204(g) and (h) and breach of fiduciary duty claims makes no sense and is yet another example of Defendants' inconsistent positions on Plan administration and interpretation. Although Defendants now claim "that the terms of the Bendix Plan at issue in this litigation have not changed from one version to the next," they previously asserted that "[t]he 1987 Bendix Plan contains provisions that differ materially from the later plan documents that were previously the subject of Plaintiff's allegations."  Doc. 93 pp. 7-8. The ERISA statutory violation claims present many of the same facts and similar legal and factual issues as the plan violation claims. Plaintiff has contended that the 1987 Plan's transfer provisions allowed class members to receive Service and benefits under the Bendix Plan based on their employment with the Company and affiliated companies following their transfer.  Plaintiff has alleged that he and members of the classes were or will be paid less than the full amount of retirement benefits to which they are entitled under the terms of the 1987 Bendix Plan, the 1994 Bendix Plan and the 1996 Bendix Plan and that Plaintiff and class members are entitled to declaratory and injunctive relief and to benefits for all of their years of employment. Plaintiff further alleges that these Bendix Plan provisions were amended retroactively and without notice in violation of ERISA §§

204(g) and (h) and accordingly, those amendments could never become effective.  It makes no sense to litigate the 1987 Plan claim without litigating Plaintiff's claim that to the extent the 1994 Plan changed the transfer provisions, the 1994 Plan never become effective because it was adopted without notice and reduced the rate of future benefit accruals and because it retroactively reduced accrued benefits in violation of ERISA's anti-cutback rule.  There is no benefit to litigating in this fashion, from an efficiency or fairness standpoint.  Likewise, Plaintiff's claim that Defendants violated their fiduciary obligations by failing to administer the Plan in accordance with ERISA and the governing plan documents requires litigation of factual issues that are in many cases identical to the facts to be developed on the claim for violation of the terms of the Plan, as well as the balance of the claims.  Summary judgment factual statements on these claims would be nearly identical. The plan claims should be litigated together with the ERISA claims.

Accordingly, Plaintiff believes that the claims could be decided on cross-motions for summary judgment. However, contrary to Defendants' efforts to litigate piecemeal only a portion of Plaintiff's claims that all stem from the same conduct without discovery, Plaintiff believes that summary judgment motions should include all claims and must allow sufficient time to complete all discovery relating to all claims.

b.   Defendants' Position.

***Discovery Relating to Individualized Liability and Monetary Relief Issues is Unnecessary***

Notwithstanding Plaintiff's contentions to the contrary, most of the uncompleted discovery sought by Plaintiff relates to individual liability issues and monetary relief for individual class members.  Defendants believe that this discovery is unnecessary in light of the Court's conclusion that "this suit is one for mainly declaratory relief" (Doc. 165, at 7).  Specifically, in the Court's ruling granting in part and denying in part Plaintiff's motion for Class Certification, the Court held:

> "Because this suit is one for mainly declaratory relief, the Court will not have to examine each employee individually to

13

> determine what Plans each person fell under at different times and whether transfers resulted in a reduction or increase in benefits.  (*See* SAC, Prayer for Relief.)  The Court will have to provide only common answers, i.e., determining what the Plans provide and whether employees received notice of Plan changes.   If the Court were to decide these questions in Plaintiff's favor, it would then be up to Defendants and the individual employees to determine how each person was affected by the improper change in benefits and how to remedy that violation."  (Doc. 165, at 7)

Defendants thus believe that remaining discovery should be limited to discovery necessary to resolve (1) Plaintiff's individual claims for relief that were not certified for class treatment, namely: (a) Plaintiff's individual breach of fiduciary duty claim (Count III), and (b) individual claim for violation of ERISA's claim procedures (Count IV) (the "Individual Claims"); and (2) the two claims for declaratory relief that have been certified for class treatment, namely:   (a) Plaintiff's benefit claim based on interpretation of the Bendix Plan documents that were effective January 1, 1987, January 1, 1993 and January 1, 1995 (Count I); and (b) Plaintiff's claim that a summary plan description was not properly distributed (Count V) (the "Declaratory Relief Claims").  As discussed below, Defendants believe that, as so limited, this discovery can be completed by March 31, 2013, thus facilitating the near-term briefing of cross-motions for summary judgment.  To conclude that the additional discovery by Plaintiff is needed before this lawsuit can be resolved would effectively undermine the premise for this Court's class certification ruling.

***Staged Discovery To Facilitate Timely Motions for Summary Judgment***

Whether or not the Court permits discovery relating to individual liability and relief issues, discovery with respect to the merits of the class claims for which the Court stated it would issue declaratory relief, and Plaintiff's individual claims, can be completed in short order.  Defendants propose that this discovery be completed by March 31, 2013, so as to facilitate the timely briefing of cross-motions for summary judgment on the Declaratory Relief Claims and Individual Claims, and thereby avert or curtail

14

potentially needless additional discovery and judicial proceedings.  Contrary to Plaintiff's assertions, Defendants are **not** seeking to preclude Plaintiff from moving for summary judgment at this time with respect to his statutory claims under ERISA Sections 204(g) and (h).  However, if Defendants are correct that the terms of the Bendix Plan at issue in this litigation have not changed from one version to the next, then the Court may not need to reach the Section 204(g) and (h) issues in order to resolve the class claims.[5]

Plaintiff's purported reasons for opposing this schedule are misplaced.  First, Plaintiff contends that the discovery that Defendants have characterized as being related to individual liability and relief issues is also relevant to the adjudication of the merits of the class claims.  This is not true.  Discovery of every document and communication relating to the administration of each class member's claim for benefits cannot possibly be relevant to a class claim for a declaratory ruling on the interpretation of the Bendix Plan.  To the extent that Plaintiff has contended, based on the experiences of certain participants who transferred to King Radio, that he is entitled to discovery relating to the consistency of Defendants' administration of the Bendix Plan, that concern has been addressed because Defendants already have agreed to produce documents concerning transfers to the King Radio Plan.  Plaintiff also has the ability to determine whether there are any other locations that provoke such concerns, since Defendants have agreed to produce the benefit and personnel files of all class members.  Any additional discovery with respect to individual class member claims is not appropriate, however, for purposes of adjudicating the class claims on the merits.[6]

---

[5] Contrary to Plaintiff's assertions, Defendants have consistently maintained that "the 1987 Bendix Plan in fact provides no greater rights to transferred employees than any subsequent Bendix Plan document."  (Doc. 93, at 8 n.3.)

[6] It is not correct that Plaintiff should be permitted to take discovery with respect to every benefit file for the purposes of exploring the consistency in the administration of the Bendix Plan.  *See, e.g.*, *Adams v. Anheuser-Busch Cos.*, No. 10-826, 2012 WL 1058977 (S.D. Ohio Mar. 28, 2012) (holding discovery of benefit files of 1,227 other participants was inappropriate since plaintiffs' claims depended upon interpretation of the plan).  Whether or not the past administration has been consistent or not, the Bendix Plan must be administered in accordance with a proper construction of its terms.  *See* 29 U.S.C.

Second, Plaintiff contends that substantial additional discovery is needed with respect to the class claims because of an alleged lack of cooperation from Defendants in responding to prior requests.   This contention misstates the record.   Defendants have already reviewed over 860,000 pages from multiple locations, and produced to Plaintiff 62,411 pages, in response to the numerous document requests and interrogatories served to date.   They also have engaged in numerous telephone conferences with Plaintiff's counsel that have resulted in the resolution of many issues concerning the scope of discovery to be provided.   Most recently, notwithstanding their objection to many requests that relate to individualized issues based on their reading of the Court's class certification ruling, Defendants agreed to:   (a) enter into a stipulation and provide the raw data that could be used to calculate class member benefits; and (b) produce the remainder of the class member benefit and personnel files (to the extent they can be located through a reasonable search).   With respect to the data stipulation, the parties have had extensive discussions about it and both parties have recognized that there will need to be a joint effort to determine an appropriate date for production of the data.   With respect to the benefit and personnel files, Defendants told Plaintiff that they will produce these materials on a rolling basis by the beginning of February.

With respect to the discovery Plaintiff seeks related to transferee plans other than the King Radio Plan (which in many cases dates back three decades), Defendants have requested from Plaintiff for over one month (and on several occasions) a set of search terms, so that the terms could be run through a database that identifies the boxes and files stored throughout the Country in Iron Mountain facilities for Defendants.   Once the search terms are run, Defendants have agreed to produce the indices for such terms and work with Plaintiff to arrive at a reasonable number of boxes and files to review for potentially responsive documents.

---

1104(a)(1)(D) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and in accordance with the documents and instruments governing the plan . . .").

To the extent that there are additional requests or issues outstanding, this is due primarily to the fact that Plaintiff has only recently, communicated these requests or the basis therefore.  Defendants believe that, with proper communications, most (if not all) of the outstanding discovery issues can be resolved.

***Class Member Discovery***

If the Court concludes that discovery relating to individual liability and monetary relief issues is appropriate, then Defendants also should be permitted to conduct discovery relevant to these issues.  All such discovery, by Plaintiffs and Defendants can be completed by December 31, 2013.

Discovery of class members is particularly important for purposes of enabling Defendants to litigate, on an individualized basis, their statute of limitations defense.  Although Plaintiff appeared to concede during the parties' meet and confer that Defendants were entitled to litigate their statute of limitations defense through some form of absent class member discovery, he now appears to be opposing any discovery relating to that defense on the grounds that the defense has been precluded by prior Court rulings.[7]  There has been no ruling on the merits of Defendants' statute of limitations defense.  The Court concluded only that it was not appropriate to decide the issue on Defendants' motion to dismiss.

Moreover, contrary to Plaintiff's assertions, Defendants need discovery with respect to this issue because:  class members may be in possession of documentation relevant to the statute of limitations defense that Defendants no longer possess; and class members' personal understanding of their benefit rights is relevant to a determination of whether their individual claims are time-barred.  The discovery to date confirms this to be true.  First, Plaintiff himself has produced several documents that Defendants have not been able to locate in their records, including:  (i) statements showing his participation in

---

[7] Notably, Plaintiff's position that absent class member discovery is not appropriate is at odds with his counsel's position taken in a prior ERISA class action litigation commenced against Honeywell.

17

and retirement benefit from the King Radio cash balance plan; (ii) documentation that he was provided about his choice in 2000 to continue participating in the cash balance plan; and (iii) an estimate of his benefits under the Bendix Plan and King Radio Plan that he requested and was provided.  In light of the fact that the documents necessary to establish a statute of limitations defense, as Plaintiff acknowledges, may date back as much as three decades, it is hardly surprising that Defendants may not be in possession of (or at least not be able to locate) such documents.  Second, Plaintiff's former supervisor, Mr. Thomas LittleJohn, testified, among other things, that:  (a) the transfer letter provided to Mr. Frazier (which Mr. LittleJohn co-signed on behalf of the company) in 1996 clearly told Mr. Frazier he was participating in the Bendix Plan while he was in Prescott, AZ and that he would start participating in the King Radio cash balance upon his transfer to Olathe, KS (*see* LittleJohn Tr. at 178-79), and (b) the documentation provided to Mr. LittleJohn in 2000 was "Big time very clear" to him and that he understood he had a choice to stay in his current Bendix Plan or move to the then new Honeywell Retirement Earnings Plan.  (*See*, *e.g.*, LittleJohn Tr. at 214-17.)  Other class members may similarly have been privy to communications that expressly put them on notice of their benefit rights, such that their claims may be time-barred.  Thus, only through class member discovery can Defendants fully develop their defense.

Without waiver of Defendants' rights to seek additional discovery if needed, Defendants propose that they initially be permitted to serve ten interrogatories or questionnaires and ten document requests on all class members and depose for no more than three hours each up to fifty class members.  *See*, *e.g.*, *In re National Western Life Insurance Deferred Annuities Litig.*, No. 05-cv-1018, 2010 U.S. Dist. LEXIS 123089 (S.D. Ca. Nov. 19, 2010) (allowing absent class member discovery to establish class members' lack of reliance); *Bruhl v. Pricewaterhousecoopers Int'l*, No. 03-23044-Civ, 2010 U.S. Dist. LEXIS 129504 (S.D. Fla. Dec. 8, 2010) (concluding that the "fact that this case has been certified for class treatment should not function to deprive the [d]efendants of their right to prove their defenses"); *In re Warner Chilcott Limited*

*Securities Litig.*, No. 06 Civ. 11515, 2008 U.S. Dist. LEXIS 7613 (S.D.N.Y. Feb. 4, 2008) (allowing absent class member discovery to establish that class members had actual knowledge of certain facts that plaintiffs allege were not disclosed).  Depending on the outcome of this initial discovery, Defendants reserve the right to seek, subject to the Court's approval, additional discovery of absent class members.

***Schedule for Dispositive Motions***

Defendants propose that the schedule for cross motions for summary judgment on the Declaratory Relief Issues and Individual Claims should be as follows:  opening briefs and supporting statements of facts due by April 30, 2013; Opposition briefs and statements of facts due by May 31, 2013; and Reply Briefs due by June 30, 2013. Defendants propose that, in light of the multiplicity of issues, the limit for moving and opposition briefs be extended to 25 pages, and the limit for reply briefs be extended to 15 pages.

**2.      The Parties' Positions on Expert Discovery.**

a.      <u>Plaintiff's Position.</u>   Plaintiff believes that expert disclosures should be supplemented as set forth above, on p. 11 as follows:

Deadline to supplement expert disclosures and to disclose any additional experts: July 31, 2013

Deadline for rebuttal expert reports:  August 30, 2013

Deadline for reply expert disclosures:  September 30, 2013

Plaintiff objects to Defendants' schedule which does not allow sufficient time for completion of discovery.

b.      <u>Defendants' Position.</u>   In the event that remaining discovery is limited to the Declaratory Relief Issues and Individual Claims, Defendants propose that all expert discovery be completed by March 31, 2013.  In the event that the Court does not limit discovery to the Declaratory Relief Issues and Individual Claims, Defendants propose that all expert discovery related to Declaratory Relief and Individual Claims be completed by March 31, 2013, that Plaintiff provide any supplemental expert reports

related to claimed relief be served no later than August 31, 2013, Defendants' expert report in response be submitted by November 15, 2013, and all expert discovery be completed by December 31, 2013.

**3.     The Parties' Positions on Pretrial Procedures:**

The parties propose that the Court set a further pretrial scheduling conference, following its summary judgment ruling, to set dates for the final pretrial conference and for filing and service of required pretrial filings.

DATED this 14th day of January, 2013.

David B. Rosenbaum
Dawn L. Dauphine
OSBORN MALEDON, P.A.
2929 North Central Avenue
21st Floor
Phoenix, Arizona  85012-2793

Myron D. Rumeld
Amy Covert
Russell L. Hirschhorn
PROSKAUER ROSE LLP
11 Times Square
New York, New York  10036-8299

Howard Shapiro
PROSKAUER ROSE LLP
Poydras Center
650 Poydras Street
Suite 1800
New Orleans, Louisiana  70130-6146

**Attorneys for All Defendants**

By: s/Russell Hirschhorn (w/ permission)__

Susan Martin
Jennifer L. Kroll
MARTIN & BONNETT, P.L.L.C.
1850 N. Central Ave. Suite 2010
Phoenix, AZ 85004

Tod F. Schleier, Esq.
Bradley H. Schleier, Esq.
SCHLEIER LAW OFFICES, P.C.
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012

**Attorneys for Plaintiff**

By: __s/Susan Martin_____

21

1

### CERTIFICATE OF SERVICE

2

I hereby certify that on January 14, 2013, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

3 Notice of Electronic Filing to the following CM/ECF registrants:

4

David B. Rosenbaum

5 Dawn L. Dauphine
Osborn Maledon, P.A.

6 2929 North Central Ave., Suite 2100
Phoenix, AZ 85012-2794

7

8 Howard Shapiro
Kara L. Lincoln

9 Nicole A. Eichberger
Proskauer Rose LLP

10 650 Poydras Street, Suite 1800
New Orleans, LA 70130

11

12 Amy Covert
Myron D. Rumeld

13 Russell L. Hirschhorn
Proskauer Rose LLP

14 Eleven Times Square
New York, NY 10036

15

16

17 s/T. Mahabir

18

19

20

21

22

23

24

25

26

27

28

22