David B. Rosenbaum, 009819
Dawn L. Dauphine, 010833
OSBORN MALEDON, P.A.
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
ddauphine@omlaw.com
Attorneys for Honeywell Defendants

[Additional counsel for Defendants appear on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas G. Frazier, a married man, | No. 2:10-cv-01618-SRB |
| Plaintiff, | |
| vs. | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY ON ALL COUNTS OF THE SECOND AMENDED COMPLAINT** |
| Honeywell International, Inc., a Delaware corporation; Honeywell Retirement Earnings Plan; Salaried Employees Pension Plan of Allied Corporation; Salaried Employees Pension Plan of AlliedSignal, Inc.; Salaried Employees Pension Plan of the Bendix Corporation; Pension Plan for Salaried Employees of General Aviation Avionics; Plan Administrator of the Honeywell Retirement Earnings Plan; Plan Administrator of the Salaried Employees Pension Plan of the Allied Corporation; Plan Administrator of the Pension Plan for Salaried Employees of the Bendix Corporation; Plan Administrator of the Pension Plan for Salaried Employees of General Aviation Avionics, | |
| Defendants. | |

I.    PRELIMINARY STATEMENT

Plaintiff Thomas Frazier's motion for partial summary judgment rests on: (i) arguments that Defendants have already refuted in their own summary judgment motion; and (ii) additional contentions that are either legally flawed or premised on

disputed facts.

In support of his principal claim for additional benefits, Frazier portrays an implausible and muddled history of the Bendix Plan and the corporate history. But the Bendix Plan history is neither complicated nor sinister. As Defendants' motion shows, Frazier's benefit claims fail because the Bendix Plan *never* permitted the accrual of additional benefits based on service after an employee transferred to a location that did not participate in the Bendix Plan, and because the Bendix Plan has always been reasonably construed accordingly by the Plan Administrator. (Def. Br. (Doc. 213) at 16-18.)

Although Frazier's brief is laced with conspicuously unsupported assertions regarding purported erroneous communications and improper notices concerning his rights upon transfer, his principal class claim for the recovery of additional benefits necessarily depends exclusively on the terms of the Bendix Plan. Frazier's benefit claim ultimately fails because it hinges on two fundamentally wrong assertions: (i) that the locations he transferred to after leaving Prescott, Arizona participated in the Bendix Plan; and (ii) even if those locations did not participate in the Bendix Plan, Frazier was nevertheless entitled to a "true-up" at retirement that would provide him with the equivalent of a Bendix Plan benefit covering all his years of employment.

The first assertion was already conclusively debunked in Defendants' motion. The undisputed record testimony establishes that, prior to 2000, company policy was designed to ensure that employees working at any particular location would participate in the same plan, even if some of those employees may have transferred to that location from another location at which they received different benefits. Consistent with that policy, employees working at a Bendix Plan location and participating in the Bendix Plan continued to accrue Bendix Plan benefits only for as long as they continued to work at a Bendix Plan location. If they transferred to a location that did not participate in the Bendix Plan, they stopped accruing benefits in the Bendix Plan and started participating in the plan sponsored by the new location.

Frazier is simply wrong when he asserts that participation in the Bendix Plan extended to every location in Honeywell's aerospace or avionics division to which an employee like Frazier might have transferred. Instead, the undisputed record shows that plan participation was limited to "legacy" Bendix locations: *i.e.*, locations that were already participating in the Bendix Plan as of the time Allied Corporation ("Allied") acquired Bendix Corporation ("Bendix"), or companies/locations that were thereafter specifically approved to participate in the Bendix Plan. The King Radio facility in Olathe, Kansas could not possibly satisfy these criteria, as it (i) was not acquired until sometime after Allied acquired Bendix, and (ii) was never approved to participate in the Bendix Plan. The Deer Valley location similarly failed to satisfy these criteria, as it was a legacy Honeywell Inc. location.

Frazier's second assertion — that he was entitled to a "true-up" to a Bendix Plan benefit notwithstanding his transfer to a non-Bendix location — fails because the benefit "true-up" to which he refers: (i) was provided only where an employee transferred to a location with a plan that calculated benefits based, in part, on Bendix Plan service prior to the transfer; and (ii) even then, provided a true-up to the Bendix Plan benefit only for the *pre-transfer* period of employment. So limited, the provision could not apply to Frazier because King Radio sponsored a cash balance plan that did not calculate benefits based on prior Bendix Plan service and, in any event, Frazier will receive a Bendix Plan benefit for his employment *prior to his transfer to King Radio*.

Furthermore, Frazier has no legal basis for challenging the subsequent Plan amendments that removed the true-up provision — as well as other provisions on which he relies in support of his benefit claims — prior to his transfer to King Radio in 1996 and/or his subsequent transfer to Deer Valley in 2000. And, although this Court need not decide whether Frazier was ever a participant in the 1987 Bendix Plan to resolve Defendants' motion, there are factual disputes as to this issue that independently preclude him from prevailing on claims based on the 1987 Bendix Plan, including his "true-up" claim.

Frazier fares no better on his various notice, communication and administrative claims, including his class claim for failure to distribute SPDs, and his individual claims for breach of fiduciary duty and failure to properly handle his administrative claim. Each of these claims are unsustainable for failure to prove any of the requisite elements of harm and causation for equitable relief under ERISA. Even if that were not the case, there are disputed factual issues concerning, *inter alia*, what information was provided to Frazier and when, and whether he in any way relied on the information, all of which preclude a finding for Frazier on the merits.

Accordingly, Frazier's motion for summary judgment should be denied, and Defendants' motion for summary judgment should be granted.

## II.   FRAZIER IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIMS SEEKING ADDITIONAL PENSION BENEFITS

Defendants have already demonstrated their entitlement to summary judgment on Frazier's benefit claim by presenting undisputed evidence that: (i) the Bendix Plan, at all times before 2000 and consistent with company policy, provided that a participant would not accrue a pension benefit for work at a location that did not participate in the Bendix Plan, unless the participant subsequently returned to a Bendix Plan location; and (ii) Frazier, after leaving Prescott, never again worked at a Bendix Plan location. Nothing in Frazier's motion alters these conclusions. Furthermore, insofar as his claims are based on Bendix Plan documents that were no longer in effect when he transferred employment, Frazier cannot prevail because he has failed to establish either a legal or factual basis for applying such provisions.

### A.   Frazier Has No Valid Claim For Benefits Under Any Version Of The Bendix Plan

As Defendants' motion for summary judgment demonstrates, Frazier was not entitled to additional Bendix Plan benefits for service after he left Prescott in 1996 because the Bendix Plan did not provide for the continuation of credited service after a participant transferred to a location that did not participate in the Bendix Plan. Frazier

- 4 -

1    nonetheless seeks summary judgment on his benefit claim by asserting two flawed

2    theories: (i) that he continued to work at a location that participated in the Bendix Plan,

3    either when he transferred to Olathe in 1996, or later when he transferred to Deer Valley

4    in 2000; and (ii) even if Olathe and Deer Valley did not participate in the Bendix Plan,

5    he should still have received a "true-up" to the Bendix Plan level of benefits because of

6    the nature of the pension plan in which he participated at King Radio. (Pl. Br. (Doc.

7    232) at 6-13.) Each theory fails as a matter of undisputed fact and law.

8                    **1.  *The Abuse Of Discretion Standard Of Review Applies***

9            Defendants' motion explained why, under the Supreme Court's decisions in

10   *Frommer* and *Firestone*, this Court should defer to the Plan Administrator's claim

11   determination. (Def. Br. at 16-18.) Under the lens of such required deference, Frazier's

12   claim readily fails. Thus, Frazier struggles to offer reasons — three of them — why this

13   Court should depart from *Frommer* and *Firestone.* (Pl. Br. at 5-6.) None of the three is

14   availing.

15           First, Frazier contends that deferential review is unwarranted because of a

16   "structural conflict," in that Honeywell supposedly both funds and administers the Plan.

17   To begin with, the argument is simply wrong: the Plan is administered by a human

18   resources employee, and Frazier's claim was decided by an administrative committee

19   that includes no officers of the Company. (Ex. 56 at 11:20-12:12, 15:24-17:5.)[1] In any

20   event, the Supreme Court specifically held in *Metropolitan Life Ins. Co. v. Glenn*, 554

21   U.S. 105, 116-17 (2008), that the existence of a structural conflict of interest does not

22   obviate the abuse of discretion standard, but rather is merely one factor to be considered

23   in determining whether the plan administrator abused its discretion. Even in class

24   claims with significant monetary consequences, the Supreme Court has found it

25   appropriate to defer to the plan's administrative determination. *See Conkright v.*

26

27   [1]    All transcript cites and exhibits are referred to in the Declarations of Russell
     Hirschhorn and Lisa Dooley filed herewith or in support of Defendants' motion. (Docs.
28   215-2 and 215-3.) All citations to "Pl. Tab __" are to Plaintiff's exhibits filed with the
     Court on August 9, 2013.

1    *Frommert*, 559 U.S. 506, 512-14, 521-22 (2010).[2]

2        Frazier next contends that deference is defeated because the ruling on his

3    administrative appeal took longer than required.   That argument cannot survive

4    *Frommert*.  There, the Supreme Court held that the plan administrator's determination

5    enjoyed deference even when rendered after the plan's original determination was found

6    to be invalid, and after the claims process had closed.  A fortiori, deference is warranted

7    where the determination is merely late, not wrong.  *See Gatti v. Reliance Standard Life*

8    *Ins. Co.*, 415 F.3d 978, 983 (9th Cir. 2005) (applying an abuse of discretion standard of

9    review where plan administrator rendered decision approximately five months after plan

10   required it).[3]

11       Finally, Frazier argues that deference does not apply because he was not provided

12   certain documents during the administrative claim process.  This argument also fails.

13   First, Frazier was provided with the documents he requested following the denial of his

14   administrative claim.  To the extent Frazier requested documents after this litigation

15   commenced, those documents were ultimately produced during the course of discovery.

16   But even if the facts were otherwise, failure to provide documents is not a valid basis for

17   *de novo* review.   *See, e.g.*, *Harper v. UNUM Life Ins. Co. of Am.*, 2007 WL 3125088

18   (E.D. Cal. Oct. 24, 2007); *Sin v. Metro. Life Ins. Co.*, 2006 WL 3716750 (D. Or. Dec.

19   13, 2006); *Marchetti v. Sun Life Assurance Co. of Can.*, 30 F. Supp. 2d 1001 (M.D.

20   Tenn. 1998).

### 2. *Frazier Did Not Work At A Bendix Plan Location After Transferring Out Of Prescott In 1996*

23       The undisputed facts show that neither the Olathe nor the Deer Valley locations

___

[2]    There similarly is no merit to Frazier's assertion (Pl. Br. at 6) that *de novo* review is warranted because an employee charged with collecting records concerning Frazier's claim — but having no decision-making authority — stated in an email that he had not located a "smoking gun."  In the cases cited by Frazier in support of this assertion (Pl. Br. at 5-6), the courts applied the abuse of discretion standard of review.
[3]    The DOL regulation and cases cited by Frazier (Pl. Br. at 5-6) are distinguishable because those authorities refer to instances where there was no decision rendered by the plan at all, and the claim was merely deemed to have been denied.

1   to which Frazier transferred after leaving Prescott participated in the Bendix Plan.  They

2   neither:  (i) fit within the definition of "Company" under the 1987 Bendix Plan; nor

3   (ii) were locations that participated in the 1993, 1995 and/or 2000 Bendix Plans.  (Def.

4   Br. at 7-8; Marcotte Decl. (Doc. 215-1) at ¶¶ 14-21, 33-37.)  Frazier's arguments to the

5   contrary are unavailing.

6        First, Frazier argues that King Radio was once described in a shareholder report

7   as part of the Bendix Aerospace unit.  (Pl. Br. at 7-8.)  But that generic description of the

8   business in an unrelated shareholder document has no bearing on the salient plan

9   interpretation issue:  whether that location participated in the Bendix Plan.  The Bendix

10  Plan document, not some generic corporate communication, controls.  *CIGNA Corp. v.*

11  *Amara*, 131 S. Ct. 1866, 1877-78 (2011).   Its terms limit participation to "*Former*

12  Bendix Division[s]."  As the Plan Administrator and Defendants' Rule 30(b)(6) witness

13  explained, to satisfy this definition, a division must have been part of Bendix *as it*

14  *existed prior to Allied's acquisition of Bendix in 1983*.  (Marcotte Decl. at ¶ 16; Ex. 18 at

15  54:21-57:9, 88:1-89:3; Def. Ex. 60.)  King Radio could not have been a "*Former* Bendix

16  Division," as Bendix did not merge with King Radio until 1985.  (Def. Counter 56.1 at

17  ¶ 107.)  Similarly, Deer Valley did not qualify as a "Former Bendix Division," as it was

18  a legacy Honeywell Inc. location, and thus was not associated with the legacy Bendix

19  businesses until after AlliedSignal acquired Honeywell Inc. in 1999.  (Ex. 38 at 93:16-

20  94:13, 101:17-102:2; Ex. 22 at 185:10-18.)

21       Second, Frazier relies on the 1986 Bendix Plan SPD and the King Radio Plan

22  SPD.  (Pl. Br. at 8-9.)  This argument contradicts *Amara*, 131 S. Ct. at 1877-78.  In

23  *Amara*, the Supreme Court held that a participant cannot rest a benefit claim on language

24  that contradicts the terms of the plan document.[4]  *Amara* aside, there is no contradiction

25  here.  The 1986 Bendix Plan SPD describes "benefits available to salaried employees of

26

27  ---
    [4]      The same is true with respect to the other alleged communications on which
28  Frazier purports to rely.  Although they may be relevant to a fiduciary breach or notice
    claim, and as such are addressed below, they have no bearing on Frazier's class claim
    for benefits under the terms of the Plan pursuant to Section 502(a)(1)(B) of ERISA.

1   the Bendix Aerospace Sector of Allied-Signal" (Ex. 39 at D0033718), but then
2   specifically identifies the participating divisions and subsidiaries of that sector that are
3   referenced by this provision. Neither Olathe (or the business in Olathe known as King
4   Radio) nor Deer Valley appears on this list. (Ex. 39 at D0033766.) The King Radio Plan
5   SPD states that "All salaried employees of AlliedSignal General Aviation Avionics are
6   members of the Retirement Growth Benefit Plan [*i.e.*, the King Radio Plan] unless they
7   are eligible for benefits under the Bendix Pension Plan." (Pl. Tab 12 at D0040690.) It
8   thus allowed for the fact that some employees of AlliedSignal General Aviation
9   Avionics may not have participated in the King Radio Plan because they continued to
10  participate in the Bendix Plan. Absent any independent documentation that Frazier
11  continued to participate in the Bendix Plan, however, there is no basis for finding that
12  this caveat applied to him.

13      Third, Frazier asserts that a plan amendment was needed to "remove" him from
14  active participation in the Bendix Plan. (Pl. Br. at 9.) No such amendment was needed.
15  The Bendix Plan already provided that Frazier's right to accrue additional benefits
16  automatically ceased when he transferred from Prescott to Olathe. (Ex. 7 at TGF0573;
17  Ex. 9 at D0009828.)

18      Fourth, Frazier argues that King Radio was a "Company" within the meaning of
19  the 1987 Bendix Plan. In support, he disingenuously purports to rely on a response to a
20  Request to Admit (Pl. Br. at 7) served prior to this Court's decision granting Frazier's
21  motion to amend his complaint to include a claim under the 1987 Bendix Plan. (Pl. Tab
22  71; Doc. 137.) At that time, Defendants could neither admit nor deny this assertion.
23  Defendants had not yet investigated the 1987 Bendix Plan because Frazier's claim had
24  previously been evaluated under the 1995 Bendix Plan (the Plan that was in effect at the
25  time of his transfer to King Radio). Defendants' later investigation confirmed that King
26  Radio, in fact, did not satisfy the definition of "Company" under the 1987 Bendix Plan
27  for the reasons stated by the Plan Administrator and Defendants' Rule 30(b)(6) witness.
28  (*See supra* at p. 6.)

Finally, Frazier contends that the 1999 amendment to the Bendix Plan rendered King Radio a participating employer.  (Pl. Br. at 9.)  This last argument also fails.  In connection with AlliedSignal's acquisition of Honeywell Inc., the newly named company, Honeywell International Inc., adopted multiple plan amendments that consolidated the assets of many of the then active pension plans with those of the Bendix Plan, and amended and restated the Bendix Plan as The Honeywell Retirement Earnings Plan ("HREP").  One such amendment merged the King Radio Plan into the Bendix Plan.  The merger amendment provided, in relevant part, that participants in the Bendix Plan would continue to participate (*i.e.*, accrue benefits) in the Bendix Plan formula, and participants in the King Radio Plan would continue to participate (*i.e.*, accrue benefits) in the King Radio Plan formula, even after the plans were merged together.  (Pl. Tab 15.)   Since Frazier had been accruing benefits under the King Radio Plan after transferring from Prescott to Olathe in 1996, he continued to accrue benefits under the King Radio Plan following the 1999 merger amendment.

### 3. *Frazier Is Not Entitled To A "True-Up" Based On The 1987 Bendix Plan*

Frazier's alternate theory — that he should receive a true-up to his Bendix Plan benefit as a result of his transfer to Olathe and resulting participation in the King Radio Plan — turns on a mistaken application of a provision in the 1987 Bendix Plan that never applied to Frazier in the first place and, in any event, was not even in effect when he transferred to King Radio in 1996.

To begin with, by its terms, the provision in question applied only to employees who, after transferring out of a Bendix Plan location, participated in another plan that "recognize[d] Service as service for benefit computation purposes."  (Ex. 10 at § 13.4.)  The King Radio Plan does not satisfy this condition.  As the Plan Administrator explained, the King Radio Plan is a cash balance plan that pays benefits based on pay credits and interest credits accrued during the period of employment at King Radio (and thereafter with respect to the interest credits), and thus are determined without regard to

1    prior service at a Bendix Plan location.  (Marcotte Decl. at ¶ 31; *see also* Doc. 132 at

2    ¶¶ 24-26; Doc. 106 at 2-8.)  Indeed, Plaintiff's own expert conceded that the King Radio

3    Plan does not use Bendix Plan "Service" to compute benefits under the King Radio Plan.

4    (Ex. 59 at 174:23-175:18.)

5         Second, the provision in question does not, as Frazier asserts, entitle a participant

6    to a true-up to a full Bendix Plan benefit that is based on all years of service.  Rather, it

7    references "guidelines" that would govern if a participant transferred to a location with a

8    pension plan that calculates benefits based, in part, on prior service.  The applicable

9    "guidelines" appear in Section 13.4(1), and merely provide for a true-up to the Bendix

10   Plan formula for the period *prior* to the transfer, in the event that benefits for the entire

11   period are for some reason governed only by the subsequent plan and the subsequent

12   plan has a less generous formula than the Bendix Plan formula.  (Marcotte Decl. at ¶ 32;

13   *see also* Ex. 59 at 125:23-128:7 (admitting that such an interpretation is plausible).)

14   There is no relief provided for the period *after* the transfer.

15        Third, for the reasons stated below, Frazier cannot rely on provisions of the 1987

16   Bendix Plan that were amended prior to his transfer in 1996, and in any event there are

17   factual issues as to whether he was ever even a participant in the 1987 Bendix Plan.

18   **B.    Frazier Cannot Rely On Older Plan Provisions That Were Amended**
19         **Prior To His Transfer To Olathe**

20        Frazier's motion relies on various provisions of the 1987 Bendix Plan in support

21   of his assertion that he was entitled to the continued accrual of Bendix Plan benefits for

22   service after he transferred to Olathe in 1996, even though AlliedSignal had amended

23   and restated the 1987 Bendix Plan, effective January 1, 1993, and subsequently adopted

24   additional amendments that were effective as of January 1, 1995.  (Pl. Br. at 7-9.)

25   Frazier similarly seeks to rely on the 1995 Bendix Plan (including the uniform

26   procedures referenced in Section 5.5(b)(2) of that Plan) in support of his contention that

27   he was entitled to Bendix Plan benefits for his service after his transfer to Deer Valley in

28   2000 (Pl. Br. at 9-10) even though, in the interim, AlliedSignal had adopted the 1999

1    Plan amendment, which provided that individuals who transferred from a legacy
2    AlliedSignal location to a legacy Honeywell Inc. location, or vice versa, remained in the
3    pension plan in which they were participating prior to the transfer. Frazier's reliance on
4    these provisions ultimately fails because: (i) his legal challenges to the amendments are
5    flawed; and (ii) in the case of the 1987 Bendix Plan provisions, his factual assertions
6    regarding the timing of his Plan participation are contested, and thus cannot form the
7    basis for summary adjudication in his favor.[5]

8
9    **1.  *There Is No Legal Basis For Frazier's Challenge To The Plan Amendments Based On ERISA's Anti-Cutback Rules***

10    Frazier mistakenly contends that he can rely on the terms of Bendix Plan
11    documents that were no longer in effect at the time he transferred. The basis of his claim
12    is that the subsequent amendment of these Plan terms constituted an illegal cut-back of
13    accrued benefits. To begin with, the argument is misplaced because it overlooks the
14    terms of the Plan. ERISA mandates that accrued benefits be "determined under the
15    plan." 29 U.S.C. § 1002(23)(A); *see Shaw v. Int'l Ass'n of Machinists & Aerospace*
16    *Workers Pension Plan*, 750 F.2d 1458, 1465-66 (9th Cir. 1985) ("the material available
17    for interpreting ERISA's definition of 'accrual' always refers to the terms of the pension
18    plan itself"). To determine the accrued benefit, therefore, one must "(1) read the plan;
19    (2) read the plan; (3) read the plan." *Allen v. Honeywell Retirement Earnings Plan*, No.
20    CV-04-0424, Rec. Doc. 555 at p. 1 (D. Ariz. Oct. 9, 2004). Here, the 1987 Bendix Plan
21    specifically states that "[i]f an Employee is transferred to . . . an Affiliated Company,
22    benefits, if any, under the Plan shall be based on Service, on Average Salary, and on the
23    terms of the Plan *in effect on the date of transfer*." (Ex. 10 at § 13.4 (emphasis added).)
24    The 1993 Bendix Plan has a similar provision. (Ex. 16 at § 5.5(c).) Accordingly,
25    Frazier cannot claim to have an accrued benefit based on Plan transfer rules contained in

26    _____
    [5]    Additionally, as set forth above, the transfer rules in the 1987 Bendix Plan on
27    which Frazier relies applied only to employees who transferred from the Bendix Plan to
    a plan that "recognize[d] [Bendix Plan] Service as service for benefit computation
28    purposes." Frazier's own expert conceded that the King Radio Plan does not use Bendix
    Plan "Service" to compute benefits. *See supra.*

the 1987 and 1993 Bendix Plans, as the provisions were no longer in the Bendix Plan as of the date of his transfer.  He similarly cannot claim to have an accrued benefit based on Bendix Plan transfer rules contained in the 1987, 1993 or 1995 Bendix Plan document with respect to his transfer in 2000, by which time the 1999 Plan amendment had been adopted.

Frazier is, in any event, mistaken in contending that the challenged amendments "purport[ed] to take away credited service he had already earned and rights to benefits for transferees promised under the Plan."  (Pl. Br. at 16.)  The so-called "anti-cutback" rule on which Frazier relies, ERISA § 204(g), does not protect every "benefit, right or feature" in a plan.  Rather, its protection is explicitly limited to "accrued benefits."  29 U.S.C. § 1054(g).

ERISA defines "accrued benefit" as a benefit "expressed in the form of an annual benefit commencing at normal retirement age."   29 U.S.C. § 1002(23)(A).   "[A]n employee's accrued benefit at any particular point in time is what a fully vested employee would be entitled to receive under the terms of the plan if employment ceased at that particular time."  *Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan*, 854 F.2d 1516, 1524 (3d Cir. 1988).  As one court explained, it "can sensibly mean nothing other than the *dollar amount* of the annuity at retirement — *i.e.*, the product of the plan's benefit formula . . . not intangible components of a benefit formula."   *Allen v. Honeywell*, 382 F. Supp. 2d 1139, 1151 (D. Ariz. 2005), *vacated, in part, on other grounds*, No. 04-cv-00424, Rec. Doc. 481 at p. 9 (D. Ariz. Aug. 12, 2008).

Conversely, accrued benefits do not include "conditional benefits."  *Sutton v. Weirton Steel Div. Of Nat'l Steel Corp.*, 567 F. Supp. 1184, 1196 (N.D.W.Va. 1983).  "Benefits expected but not yet accrued are not . . . protected" by Section 204(g).  *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 8 (1st Cir. 2003); *see* 26 C.F.R. 1.411(d)-4, Q&A-1(d) (stating that ancillary benefits and other rights and features of a plan are not protected accrued benefits).   Similarly, the Ninth Circuit has recognized that a "promised" benefit is not the same as an "accrued" benefit.  *See Shaw*, 750 F.2d at 466.

If it was, the court would have had no need to explain that a particular plan feature was "promised, anticipated **and** accrued." *Id.* (emphasis added). *See also Cinotto v. Delta Air Lines, Inc.*, 674 F.3d 1285, 1297 (11th Cir. 2012) ("Where the right to future benefit accruals are contingent on additional service, such future increases are not *presently* accrued benefits"). An employer is thus free to amend a plan to eliminate such benefits without violating Section 204(g). *See Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 747 (2004) ("[E]mployers are perfectly free to modify the deal they are offering their employees, as long as the change goes to the terms of compensation for continued, future employment[.]"); *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1526-27 (9th Cir. 1993) (no § 204(g) violation where accrued benefits were not reduced); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986) ("ERISA simply does not prohibit . . . eliminating previously offered benefits that are neither vested nor accrued."); *Ensley v. Ford Motor Co.*, 647 F. Supp. 2d 791, 800-02 (E.D. Mich. 2007) (holding that § 204(g) is not violated by eliminating the possibility of credit for service with non-participating employers) (citations omitted).[6]

None of the cases cited by Frazier holds otherwise. (Pl. Br. at 16.) These cases found anti-cutback violations where an amendment either (1) eliminated or reduced an already accrued benefit, (2) imposed a new condition on an already accrued benefit, or (3) eliminated an early retirement benefit protected by Section 204(g)(2). None of these authorities supports Frazier's contention that future service provisions or transfer rules are "accrued benefits" protected by ERISA Section 204(g). This is not surprising as even Frazier's expert admits to knowing of nothing in ERISA that prohibits amending a

---

[6]     To be sure, ERISA Section 204(g)(2) was amended to provide protection to certain specifically identified plan rights that a participant may "grow into." Retirement Equity Act of 1984, Pub. Law 98-397, § 301(a)(1). These rights — early retirement benefits, retirement-type subsidies and optional forms of benefits — may not be reduced or eliminated if a participant satisfies the pre-amendment conditions either before or after the amendment. 29 U.S.C. 1054(g)(2). But no such protections are afforded to rights to future benefit accruals upon transfer. Contrary to Frazier's assertions (Pl. Br. at 16-17), his own expert conceded that the transfer rules at issue in this case are not an early retirement benefit, retirement-type subsidy or optional form of benefit protected under Section 204(g)(2). (Ex. 59 at 45:16-47:13.)

1    plan's transfer provisions. (Ex. 59 at 63:23-64:6.) Nor is he aware of any authority that

2    specifies that a transfer provision is a protected benefit. (*Id.* at 70:20-71:23.)

3         Accordingly, Frazier's cut-back claim (Count II) cannot serve as a basis for

4    relying on older Plan terms that were no longer in effect at the time of his transfer.

5                    **2. *Defendants Complied With Section 204(h)***

6         Frazier also challenges the validity of the Bendix Plan amendments relating to

7    transfer rules due to an alleged failure to issue advance notice of the amendments in

8    accordance with the requirements of Section 204(h) of ERISA. (Pl. Br. at 17-18.)

9    Section 204(h) requires advance notice to participants only for amendments that

10   significantly reduce the rate of future benefit accruals. 29 U.S.C. § 1054(h). To prevail

11   on a 204(h) claim, "each plaintiff, as distinct from a group or class, must show that he or

12   she personally would experience such a significant reduction" in "the amount of the

13   future annual benefit commencing at normal retirement age," and that the reduction was

14   "reasonably expected . . . taking into account the relevant facts and circumstances at the

15   time the amendment was adopted." *Charles v. Pepco Holdings, Inc.*, 314 Fed. Appx.

16   450, 452 (3d Cir. 2008) (internal quotation omitted) (rejecting 204(h) claim where

17   amendment would not have been reasonably expected to result in a significant reduction

18   in the rate of future benefit accrual). *See also* 26 C.F.R. § 1.411(d)-6 (Q&A 7) (1999)

19   (determination of whether a 204(h) notice is required must "tak[e] into account the

20   relevant facts and circumstances at the time the amendment is adopted.").

21        Frazier has offered no facts that could satisfy this standard. He has, at most,

22   alleged that the various Bendix Plan amendments would significantly alter *future*

23   transfer rights of Bendix Plan participants. There is no contention that these

24   amendments would reduce the ongoing rate of accrual for any participants.

25   Furthermore, even if future transfer rights were relevant to the 204(h) inquiry, a change

26   to those rights could not be viewed as "reasonably expected" to reduce the rate of future

27   benefit accruals with respect to Frazier because: (i) he had no reasonable expectation of

28   being transferred at the time of the 1993 amendment, when the shutdown of the Prescott

facility was not even being contemplated, and (ii) after his transfer he was no longer an active Bendix Plan participant and thus, by definition, no longer subject to 204(h)'s protections because he was no longer actively accruing benefits under the Bendix Plan. *See Ensley*, 647 F. Supp. 2d at 802, citing Temp. Treas. Reg. Sec. 1.411(d)-6T, 60 Fed. Reg. 64,320, 64,321 (1995) (204(h) notice not required because the amendment did not affect the rate of plaintiffs' future benefit accrual where plaintiffs' accrual under the plan had already ceased); *see also Bopp v. Idaho Nat'l Lab. Emp. Ret. Plan*, 709 F. Supp. 2d 1024, 1030-32 (D. Idaho 2010) (notice not required for amendment changing the rules for rehired participants because the rehired participants were not employed by an entity participating in the plan at the time of the amendment); 26 C.F.R. § 1.411(d)-6, Q&A 9, Example 3 (1998) (where plan providing same rate of benefit accrual to both hourly and salaried employees is amended to significantly reduce the rate of future benefit accrual of the salaried employees only, and at the time of the amendment it is reasonable to expect that only a small percentage of hourly employees will become salaried in the future, no 204(h) notice is required for the hourly employees).  Moreover, Plaintiff's own expert, who is the former Chief Pension Actuary for the Internal Revenue Service, conceded that he had never seen a 204(h) notice given for changes made to a plan's transfer rules.  (Ex. 59 at 88:21-24.)

In short, Frazier cannot assert a claim for violations of Section 204(h) (Count II) as a predicate for challenging the validity of the Bendix Plan amendments.

### 3.   *Material Factual Disputes Exist As To Whether Frazier Was A Participant in the 1987 Bendix Plan*

Separate and apart from Frazier's inability to invalidate the Bendix Plan amendments pre-dating his transfers to Olathe and Deer Valley, he cannot prevail on a claim based on the terms of the 1987 Bendix Plan document because he cannot establish, beyond dispute, that he ever was a participant in the 1987 Bendix Plan.  (Pl. Br. at 12-

13.)[7]

Contrary to Frazier's contentions (Pl. Br. at 12-13), Defendants have always taken the position that Frazier first became a Bendix Plan participant when the 1993 Bendix Plan was finalized in May 1994, and that, under that Plan document, he received credit retroactive to the date of the Sundstrand acquisition on November 12, 1993. In fact, Defendants' Rule 30(b)(6) witness testified that employers that were not "Former Bendix Divisions" became participating employers in the 1987 Bendix Plan only through formal action by the Board of Directors. (Ex. 28; Ex. 18 at 48:1-17.) There is no evidence of any such action having been taken with respect to the former Sundstrand employees at the Prescott location during the time that the 1987 Bendix Plan document was in effect (*i.e.*, between the Sundstrand acquisition date of November 12, 1993 and the finalization of the 1993 Bendix Plan in May 1994). Rather, the first evidence of this location joining the Bendix Plan appears in connection with the adoption of the 1993 Bendix Plan restatement, when Prescott was designated as a participating location. (Ex. 18 at 54:21-57:9; *see also* Ex. 17.)

That Sundstrand was acquired before the 1993 Bendix Plan document was finalized does not suggest to the contrary. The Purchase Agreement pursuant to which Sundstrand was acquired merely committed AlliedSignal "to provide a plan that recognized service for the period prior to the sale." It did not require participation specifically in the Bendix Plan, let alone mandate that employees enter that plan as of the date of the sale. The omission of a deadline is striking when compared to the commitment to immediately enroll employees in AlliedSignal's welfare plans. (Ex. 26 at § 6.2(c).) Likewise nothing in the Plan's financial statements or actuarial valuation shows that Frazier and other former Sundstrand employees were made participants in the 1987 Bendix Plan. (Pl. Br. at 13.) These documents merely reflect that changes to the actuarial value of the Bendix Plan occurred as a result of the Sundstrand acquisition, and

---

[7]    Frazier's inability to rely on the 1987 Bendix Plan document is particularly significant because his "true-up" theory is premised exclusively on provisions contained in that Plan document, and no others. (*See supra* at II.A.3.)

1    that retroactive coverage was being provided to those employees. (Pl. Tab 37 at
2    D0003368.)

3        In short, as demonstrated in Defendants' motion (Def. Br. at 16-18), Defendants
4    are entitled to summary judgment whether or not Frazier was a participant in the 1987
5    Bendix Plan.  But if the Court disagrees, Frazier cannot prevail on his benefit claim
6    insofar as it is based on provisions of the 1987 Bendix Plan because there are substantial
7    grounds for disputing Frazier's assertion that he was ever a participant in that Plan.

8    **III.    FRAZIER IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS
9           BREACH OF FIDUCIARY DUTY CLAIM**

10        There are several reasons why this Court should deny Frazier's motion for
11   summary judgment on his individual fiduciary breach claim (Count III).[8]   As a
12   preliminary matter, Frazier has not identified a single person who (i) was a plan
13   fiduciary with responsibility for communicating information to him about his pension
14   benefits, and (ii) either misrepresented or failed to provide him with information about
15   his pension benefits.   Absent a fiduciary communication, there can be no fiduciary
16   breach claim.  (Def. Br. at 18-20.)[9]

17        Frazier's allegations of misleading communications and omissions do not, in any
18   event, entitle him to summary judgment because these allegations are vigorously
19   disputed, and for good reason.  For example:

20        •     Frazier's allegations that his supervisor, Thomas LittleJohn, told him he
21              would be entitled to accrue benefits under the Bendix Plan for as long as he
22              worked for AlliedSignal (PSOF ¶ 186), and that he had such a discussion with
23              LittleJohn following his transfer to Olathe in 1996, are refuted by LittleJohn
24              himself.  (Ex. 23 at 109:18-110:23, 115:14-16, 220:2-5.)

---

25   [8]    As this Court previously ruled, Frazier's statutory violation, SPD, and
26   administrative process claims do not support independent fiduciary breach claims.  (Doc.
     165 at 8.)
27   [9]    Plaintiff's reliance on cases in which *plan fiduciaries* were found to have
     breached their fiduciary duties by providing incomplete information in response to a
28   participant inquiry, or by otherwise failing to include all relevant information in direct
     communications with participants, are thus inapposite.  (Pl. Br. at 18-19.)

- • Frazier's allegation that he did not receive any information about modifications to his benefits upon his transfers to Olathe and Deer Valley (PSOF ¶¶ 153, 189, 191) is contradicted by the benefits documentation he admittedly received and reviewed. (Ex. 35 & Ex. 22 at 320:13-22; Ex. 36 & Ex. 22 at 110:13-112:17; Ex. 15 & Ex. 22 at 73:19-74:13, Ex. 52 at 266:18-268:5; PSOF ¶ 216.)

- • Frazier's allegation that in 1997-1998 he was "advised that he was still in the Bendix Plan" (PSOF ¶ 173) is based on nothing more than an alleged telephone conversation with an unidentified person. (Pl. Tab 7 at 176:4-8, 11-13, 176:25-177:22.)

Frazier's unsubstantiated contentions about alleged misrepresentations made to other participants are similarly disputed.[10] But these contentions are, in any event, irrelevant because Frazier's fiduciary breach claim was not certified as a class claim.

In short, Frazier is not entitled to summary judgment on his fiduciary breach claim and this Court should dismiss Count Three of his Complaint.

## IV.    FRAZIER IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS NOTICE CLAIMS

In granting in part Frazier's motion for class certification, this Court certified a class claim for failure to distribute summary plan descriptions ("SPDs"). (Doc. 165 at 7-8, 13.) Defendants accordingly moved for summary judgment on this claim by citing uncontroverted testimony that SPDs were distributed pursuant to a well-established policy. (Def. Br. at 18.) Frazier has now asserted what appear to be different claims relating to the timeliness of the SPDs that were distributed, as well as the timeliness or failure to distribute summaries of material modifications ("SMMs"). The SMM claim should be rejected outright as it appears nowhere in the multiple complaints filed in this

---

[10]    As previously explained (Def. Br. at 10-11), Frazier cannot mount a breach of fiduciary duty claim based on the limited number of occasions when — usually without proper authorization — exceptions were made to the transfer rules, as these communications were not directed to Frazier and thus he had no basis to rely on them.

1    case, and discovery has long ago closed.  *See Wasco Prods. v. Southwall Techs., Inc.*,

2    435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second

3    chance to flesh out inadequate pleadings"); *Cervantes v. Emerald Cascade Rest. Sys.*,

4    2012 WL 1681654, at *4 (D. Nev. May 11, 2012) (same).[11]

5           In any event, Frazier cannot prevail on any of his notice claims absent a showing

6    of harm, and he has not even attempted to present a triable claim that he was harmed.  In

7    *Amara*, the Supreme Court ruled that a participant must satisfy the elements of a

8    traditional equitable remedy to be entitled to relief in a misrepresentation/material

9    nondisclosure suit.  *Amara*, 131 S. Ct. at 1878.  The Court identified three types of

10   equitable remedies that were potentially available in such cases:  (i) equitable estoppel,

11   which places the plaintiff in the position he/she would have been in had the

12   representation been true; (ii) reformation, which allows the court to reform a document

13   to reflect the mutual understanding of the contracting parties in cases of fraud or

14   mistake; and (iii) surcharge, which allows the court to hold a fiduciary liable for benefits

15   it gained through unjust enrichment or harm caused by fiduciary breach.  *Id.* It further

16   ruled that a participant bore the burden of proving the type of actual harm required for

17   the equitable remedy.  *Id.* at 1871.  The Court found that each remedy has unique

18   requirements for proving causation and concrete harm: for estoppel, a showing of

19   detrimental reliance; for reformation, a showing that a fraudulent representation or

20   omission materially affected the substance of the contract; and for surcharge, a showing

21   of "actual harm," meaning that "the violation injured him or her."  *Id.* at 1881-82.  *See*,

22   *e.g.*, *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162 (9th Cir. 2012)

23   (affirming summary judgment for plan administrator and rejecting class claim for plan

24   reformation or surcharge to remedy plan administrator's failure to provide an accurate

---

25   [11]    Frazier's conclusory assertion that he never received a SPD is insufficient to
26   prevail on summary judgment. (Pl. Br. at 19-20.)  As Defendants demonstrated in their
     motion, judgment in Defendants' favor is warranted because the undisputed facts
27   establish that the Plan Administrator had distribution procedures in place for SPDs.
     (Def. Br. at 18.)  But, if the Court disagrees, Frazier's conclusory assertion that he never
28   received a SPD gives rise to factual disputes precluding summary judgment in Frazier's
     favor.

1    and unambiguous SPD, in part because the class could not establish that they were

2    actually harmed).

3        Frazier has not alleged any of the elements of causation or harm required to

4    sustain a claim for equitable relief.  Accordingly, if not dismissed for failure to establish

5    an underlying SPD (or SMM) violation, Count V should be dismissed for failure to

6    establish any basis for relief.

7    **V.    FRAZIER IS NOT ENTITLED TO RELIEF ON HIS CLAIM FOR A**
     **VIOLATION OF ERISA'S CLAIM PROCEDURES REGULATIONS**

8

9        Frazier contends that Defendants violated ERISA's claims regulations by taking

10   too long to decide his administrative claim and appeal (Count IV).  As demonstrated

11   above, to prevail, Frazier must demonstrate, not only a violation, but harm caused by

12   that violation.   Having failed to demonstrate any harm, he is entitled to no relief.   *See*

13   *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1308 (9th

14   Cir. 1986); *Ibrahim v. Bayer Corp. Disability Plan*, 2012 WL 3627362, at *9 (C.D. Cal.

15   Aug. 22, 2012); *Tate v. General Motors, LLC*, 2013 WL 4007733, at *4 (6th Cir. Aug. 6,

16   2013).  Furthermore, before the Court could adjudicate the merits of the claim, it would

17   have to resolve disputed factual issues regarding the circumstances that provoked the

18   delay in administering Frazier's claim for benefits.  (Def. Counter 56.1 ¶¶ 260-261, 264-

19   267.)

20   **VI.    <u>CONCLUSION</u>**

21       For all of the reasons set forth herein and in Defendants' motion for summary

22   judgment, the Court should grant Defendants' motion for summary judgment, deny

23   Plaintiff's motion for summary judgment, and dismiss the complaint with prejudice.

24       DATED this 25th day of September, 2013.

25                                    David B. Rosenbaum
                                      Dawn L. Dauphine
26                                    OSBORN MALEDON, P.A.
                                      2929 North Central Avenue, 21st Floor
27                                    Phoenix, AZ  85012-2793

28

Myron D. Rumeld (*Pro Hac Vice*)
Amy Covert (*Pro Hac Vice*)
Russell L. Hirschhorn (*Pro Hac Vice*)
PROSKAUER ROSE LLP
Eleven Times Square|
New York, NY  10036-8299

Howard Shapiro (*Pro Hac Vice*)
Robert Rachal (*Pro Hac Vice*)
PROSKAUER ROSE LLP
Poydras Center
650 Poydras Street, Suite 1800
New Orleans, LA  70130-6146

**Attorneys for Honeywell Defendants**

By    s/Dawn L. Dauphine
       Dawn L. Dauphine

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2013, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

Upon receipt of the Notice of Electronic Filing, a copy of the attached document and Notice of Electronic Filing will be mailed to The Honorable Susan R. Bolton.

By:  s/ Jessica A. Lopez
5099732

- 21 -