**SCHLEIER LAW OFFICES, P.C.**
**TOD F. SCHLEIER, ESQ.  #004612**
**BRADLEY H. SCHLEIER, ESQ.  #011696**
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250
Email: tod@schleierlaw.com
Email: brad@schleierlaw.com

**SUSAN MARTIN #014226**
**JENNIFER KROLL #019859**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas G. Frazier, a married man, | Case No.:  CV 10-01618-PHX-SRB |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE** |
| Honeywell Pension and Savings Plan; Honeywell, Inc., a Delaware corporation; Honeywell Retirement Earnings Plan; Honeywell Secured Benefit Plan;  Bendix Salaried Plan; King Radio Plan; Plan Administrator for the Honeywell Pension and Savings Plan; Plan Administrator for the Honeywell Retirement Earnings Plan; Plan Administrator for the Honeywell Secured Benefit Plan; Plan Administrator for the Bendix Salaried Plan; Plan Administrator for the King Radio Plan, | **(Oral Argument Scheduled for November 18, 2013 at 10:00 am)** |
| Defendants. | |

1    Plaintiff opposes Defendants' motion for summary judgment (Defs.' MSJ).[1] This

2    response is supported by Plaintiff's Corrected Statement of Facts, Doc. 231 ("S¶_") and

3    exhibits thereto, Plaintiff's Controverting ("PC¶__") and Additional ("PA¶_") Statements

4    of Fact and exhibits thereto and the record before the Court.

5                    **INTRODUCTION**

6    Defendants' motion must be denied because it is based on disputed facts and

7    inadmissible and conclusory allegations unsupported and contradicted by the evidence.

8    *See Scott v. U.S. Treasury Dep't*, 99-00348-PHX-ROS, 2000 WL 1434129 (D. Ariz. Aug.

9    25, 2000) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). The movant has

10   the burden of showing the absence of genuine issues of material fact. *Rashiel Salem*

11   *Enterprises LLC v. Bunton*, CV-11-08202-PHX-NVW, 2013 WL 3581723 (D. Ariz. July

12   12, 2013) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "The evidence of

13   the non-movant is to be believed, and all justifiable inferences are to be drawn in his

14   favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). *See also Nolan v.*

15   *Heald Coll.*, 551 F.3d 1148, 1155 (9th Cir. 2009).

16   **I.    ALL OF MR. FRAZIER'S WORK WAS FOR THE COMPANY**

17   Defendants' entire motion is based on the false premise --divorced from the terms

18   of the Plan and contradicted by the facts-- that Mr. Frazier's transfers were somehow not

19   to another part of the "Company" or to a "participating location" under the Bendix Plan.

20   Because Mr. Frazier's transfer to Olathe was a transfer to the Company, PC¶¶4,6,18,20,

21   66, 87, 88, and because the Olathe location indisputably participated in the Bendix Plan,

22   PC¶32,34,46, 67, 68, 71, 87, the argument that Mr. Frazier is not entitled to Bendix Plan

---

[1] Defendants' motion is with respect to violations of the terms of the Plan, violations of ERISA's summary plan description (SPD) requirements and violation of ERISA's fiduciary duty requirements (with respect to misrepresentations only). Accordingly, Plaintiff addresses only these claims herein. Plaintiff's motion for summary judgment, Doc. 232 (Pl.'s MSJ), seeks judgment on liability on these claims as well as Plaintiff's claims for violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 204(g) and (h) (Count II), claims for violation of ERISA and the Plan's claims procedure requirements (Count IV), Claims for additional violations of ERISA's disclosure requirements not addressed by Defendants' motion ( Count V) and individual breach of fiduciary duty claims that are not limited to misrepresentation (Count III).

benefits for all of his years of employment  is without merit. While Mr. Frazier is entitled to full Bendix benefits under several provisions of the Plan and ERISA, *See* Pl.'s MSJ, Doc.232,  his claim for benefits should be granted based on the simple fact that all of Mr. Frazier's employment following his 1996 transfer to King Radio entitled him to continue his active participation under the Bendix Plan. PC¶¶4,6,18, 20, 32,34, 46, 66, 67, 71,72, 73, 85-90.

If the Court finds, as Plaintiff submits it must, that (1) King Radio was part of the Company, PC¶¶4,6,18,20, 66, 87, 88, and/or (2) a participating location under the various versions of the Bendix Plan, PC¶32,34,46, 67, 68, 71, 87, and/ or (3) that Plaintiff's employment at King Radio was in a classification to which the Bendix Plan had been extended, *id.*, such finding is dispositive and warrants denial of Defendants' motion and granting of Plaintiff's motion for summary judgment on his claim for benefits under the Plan. (Count I). That is because Service under the each version of the Bendix Plan that is used to compute benefits (referred to as Credited Service under later Bendix Plan documents) includes, *inter alia*,  "the total years of Employment of an Employee with the Company…," employment as a salaried employee at a "participating location," PC¶13, 8, 23, 26-28, 31, and, (under the 96 Plan and later Plans), employment in a classification to which the Plan had been extended, PC¶31. [2]  Mr. Frazier satisfied all of these criteria. PC¶6,18, 20, 32,34, 40,41,44,46,48, 66, 67, 71,72, 73, 85-90. *See also* S ¶¶ 47-49, 52-56, 58-62, 67-73.

Even accepting for the sake of argument, the torturedly narrow  (yet  nevertheless contradictory) [3]  spin on the definition of Company under the 87 Plan argued for by

---

[2]  Defendants' assertion that the 96 Plan was in effect when Mr. Frazier transferred to Kansas in April 1996 is false.  The 96 Plan was not adopted until September 1996. PC¶ 22. A plan that had not yet been adopted could not govern Mr. Frazier rights at the time of his transfer. Defendants' repeated misrepresentation of this fact demonstrates their conflict, hostility and bad faith.
[3]  On this motion Defendants argue that Schedule A of the 87 Plan is limited to Company status that they assert inconsistently was frozen at three different times periods claiming that it must be limited to: a. only those divisions that were part of Bendix  as of Jan. 1, 1987, Defs.' MSJ p. 7:22-25; b. only those divisions at the time of the merger with Allied (April 1985) Marcotte Decl., Ex. A to Defs. MSJ, ¶17 p. 6:8-10, and c. only those

1    Defendants, PC¶18, 20, 87, the  documentary evidence is unassailable that King Radio
2    was purchased and became a part of  Bendix Aerospace  (prior to its merger of Bendix
3    with Allied). PC¶¶4,6,11. Therefore, even under Defendants' arguments, King Radio was
4    part of the "Company" under the 87 Plan. DSOF ¶20. Further, because Defendants: 1.
5    affirmatively and repeatedly advised Bendix Plan transferees that they would continue
6    under the Bendix Plan; 2. published (and now they claim distributed) a Bendix Plan SPD
7    that assures that all time with the company counts as service for benefit computation
8    purposes and a King Radio Plan SPD that expressly excludes employees eligible for
9    Bendix Plan benefits from its cash balance plan; 3. further extended Bendix  plan
10   coverage to non-union hourly employees working at King Radio, and 4. actually and
11   consistently (until Plaintiff filed his claim)  paid  Bendix Plan  benefits to dozens of
12   salaried Bendix Plan transferees for their time spent in Olathe, and other locations, King
13   Radio in Olathe was clearly  a "participating   location"  and the Bendix Plan employees
14   who transferred to Olathe were also "a classification to which the Plan had been
15   extended" under any conceivable construction of those terms. PC¶32,34,46, 67, 68, 71,
16   87. Any other interpretation, such as the multiple and ever shifting ones offered by
17   Defendants, would be arbitrary and in conflict with the terms of the Plan.  *See Salomaa v.*
18   *Honda LTD Plan*, 642 F.3d 666, 676 (9th Cir. 2011); *Tapley v. Locals 302 & 612 of Int'l*
19   *Union of Operating Eng'rs-Emp'rs Const. Indus. Ret. Plan*, 11-35220, 2013 WL
20   4767344, at *5 (9th Cir. Sept. 6, 2013).

21   **A.      Defendants are Barred from Disputing King Radio was Part of the Company**

22          Defendants' assertion that "King Radio was never a participating Company
23   location or employer under the Bendix Plan" (p. 12), is not only incorrect, Defendants are
24   barred from making such a claim, having provided a sworn response to a request for

25

26   divisions at the time of the Bendix  acquisition (some unspecified date in 1983), DSOF
27   ¶¶11,18. As discussed below, "none of the above" is the correct answer. However,
     Defendants' inconsistency, even on this single motion – and as demonstrated throughout
     Mr. Frazier's claim process and this litigation- highlights the arbitrariness of their
28   decision-making

- 3 -

admission that "Defendants are unable to either deny or admit" that "Defendants' King Radio facility in Olathe, Kansas was part of the 'Company' as defined in Article II(5) of the Salaried Employees Pension Plan of Allied Corporation Amended January 1, 1987" stating that they lacked sufficient information. PC¶6; S Tab 71, Defs.'Resp. to RFA 25.[4] Defendants' admission that they don't know and couldn't find information to support a factual response on this question is binding and cannot be contradicted by *post-hoc* unsupported assertions submitted on this motion. *See* Fed. R. Civ. P. 36 Advisory Committee Notes (admissions are given "a conclusively binding effect…"); *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981) (affirming order deeming answers admitted); *Corales v. Flagstar Bank, FSB*, 822 F.Supp.2d 1102, 1110 (W.D. Wash. 2011) (striking affidavit). *See also Praetorian Ins. Co. v. Site Inspection, LLC*, 604 F.3d 509, 514 (8th Cir. 2010); *United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir.1987) ("default admissions" based on failure to adequately investigate can serve as "<u>factual predicate for summary judgment</u>"); Fed.R.Civ.P. 26(e),(g). Defendants' attempt to contradict their sworn admissions should be summarily rejected. The inadmissible declaration of the Plan Administrator ¶¶14-21 and corresponding DSOF ¶¶6, 85-89 and Defs.' MSJ pp. 3:20-24, p. 12 should be stricken.[5]

---

[4] Defendants also denied that King Radio was an "Affiliated Company," under the 87 Plan yet now assert that it was. Doc.215-1 ¶26; S Tab 71 (Resp. to RFA 26).

[5] For the same reasons, Plaintiff also moves to strike Defs.' MSJ pp. 5:1-3, 18:17-19 and DSOF ¶¶62,63. *See* Defs. Resp. to RFAs 19-23, S Tab 71 (Defs lacked information to determine if Bendix and King Radio SPDs were distributed to Plaintiff and others at King Radio). Further, the Plan Administrator testified that Bendix Plan SPD's were not distributed in Olathe. PC¶¶62,63. In addition, in Plaintiff's Controverting Statement of Facts, Plaintiff moved to strike DSOF ¶¶6, 18, 32, 34, 65, 67, 68, 70-73, 85-90 and the Marcotte Decl. and certain other testimony offered by Defendants as lacking in foundation. The witnesses' alleged "understanding" and assertions are not factual but argumentative conclusions and in conflict with prior company statements and other evidence. *See, e.g.,* PC ¶18. *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).*See* Order striking Marcotte Declaration in *Allen v. Honeywell Ret. Earnings Plan*, No. CV04-0424-PHX-ROS (July 25, 2004), attached to Court's courtesy copy. Further, *post-hoc* arguments never offered in response to Plaintiff's claim and appeal are inadmissible and cannot be considered. *See Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 732 n. 2 (9th Cir. 2006); *Dishman v. Unum Life Ins. Co. of America*, 269 F.3d 974, 986-87 (9th Cir. 2001); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 691 (7th Cir. 1992).

Even if Defendants were permitted to contradict their sworn responses, Defendants' prior judicial admissions and public disclosure documents governed by the Securities Act of 1933 also bar any claim that King Radio was "never a division of Bendix" (DSOF ¶ 6) as Defendants now assert. PC¶6 (citing *inter alia* 1986 Annual Report, (defining King Radio as a unit of Bendix Aerospace); [6] admissions in FTC consent Order (confirming King Radio was purchased by subsidiary of *Bendix* in 1984 and acquisition was complete in January 1985)). Defendants' public disclosures and judicial admissions lay to rest any challenge to the fact that King Radio became part of Bendix Aerospace several years prior to the 87 Plan. PC¶4,6. Defendants' response to Requests for Admissions claiming they did not know whether King Radio was part of Bendix Aerospoace further demonstrates their incompetency and/or bad faith and arbitrary decision making. If Defendants were being truthful, they need have looked no further than the documents they produced to Plaintiffs along with other business records, in order to respond to the request of admission. *Id.* Their *post-hoc* assertions on this motion that King Radio was not part of Bendix is supported by nothing and plainly contradicted by Company records and legally binding disclosures and admissions. PC¶4,6, 32-34.

## B.    Employment at King Radio Was Under the Bendix Plan

Even if Defendants were not precluded from disputing that King Radio was part of the Company under the 87 Plan, their argument is defeated by the clear language of the Plan and incontrovertible facts establishing that King Radio was indeed  part of a former Bendix division under the 87 Plan, that King Radio actually participated in the Bendix Plan on behalf of its salaried employees who were transferred to Olathe from other Bendix Plan locations, and that Defendants expressly included employees transferred to Olathe from other Bendix Plan locations as a classification covered by Bendix Plan.

---

[6] Mr. Hennessy was under a legal obligation under Rule 13-b2 of the Securities Act of 1933 to supply accurate and truthful information in annual reports.  *See e.g*. *S.E.C. v. Benson*, 657 F. Supp. 1122, 1132 (S.D.N.Y. 1987).

1    PC¶¶4,6,18,20, 32,34,46, 66, 67, 68, 71 87, 88.

2         Defendants' argument that the term "Company" in the 87 Plan is somehow

3    confined to only those business locations that were part of Bendix Aerospace prior to

4    Bendix's merger with Allied is baseless and, with respect to King Radio, irrelevant.

5    First, neither the 87 Plan's definition of Company nor Schedule A which lists the

6    "Participating Companies as of January 1, 1987," restricts the term Company to

7    businesses that were part of Bendix Aerospace before its merger with AlliedSignal. It

8    simply says "Former Bendix Divisions of: Allied-Bendix Aerospace." PC¶18. Second,

9    Defendants' argument that the Plan was somehow limited to those businesses that

10   became part of Bendix before its merger with Allied violates fundamental rules of

11   contract interpretation because it conflicts with and renders meaningless the definition of

12   Company set forth in Article II(5) of the 87 Plan. PC¶4,18. The definition provides for

13   inclusion in the Plan of businesses acquired after January 1, 1987, by defining Company

14   to include "such divisions of such divisions of the Corporation… which have been or

15   shall be acquired by the Corporation." PC¶4. "Each provision in an [ERISA] agreement

16   should be construed consistently with the entire document such that no provision is

17   rendered nugatory." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982,

18   985 (9th Cir. 1997). Third, to the degree there is any ambiguity, contemporaneous

19   extrinsic evidence makes clear that all businesses within Bendix's Aviation Avionics are

20   included. PC¶18. Company documents contemporaneous with the 87 Plan (adopted on

21   February 13, 1987) are replete with discussion of Allied's recent acquisitions.  The

22   documents make clear that the only sensible interpretation of Schedule A is that  the term

23   ("former Bendix Divisions") merely denotes the category of business units pertaining to

24   Bendix businesses as distinguished from the businesses aligned with Allied's other

25   acquisitions including former Garrett, Signal, Electronics or Instrumentation  and other

26   non-Bendix businesses. PC¶18. Since many of these businesses had their own pension

27   plans, the only reasonable view of Schedule A that reconciles and does not contradict or

28   render nugatory the actual definition of "Company" (which contemplates future

acquisitions), is that the words "former Bendix Division" were used to distinguish a Bendix business from Garrett, Signal or other businesses. This is confirmed by the contemporaneous documentary evidence.[7]   "The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." *Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194-95 (9th Cir. 2007) (citations omitted). Not only do Defendants ignore the best and most logical reading of Schedule A derived from its context, their position makes no sense. There can be no dispute that numerous other businesses including Sundstrand were added before any later versions of the Plans were adopted. PC¶65. In any event, Defendants' argument confirms, rather than defeats, that King Radio was part of the "Company" under the 87 Plan because King Radio was purchased by Bendix in 1984, finalized in January of 1985 and the merger between Allied and Bendix did not occur until April 1, 1985.[8]  PC¶¶4,6,11,18.

Defendants also ignore language in later Plan documents and refuse to acknowledge that Mr. Frazier was an "Eligible Employee" entitled to accrue benefits for all of his years of service under each post-87 Plan document. The 94 Plan document introduced the terminology "Eligible Employee" and "participating location," which was continued in the 96 and 2000 Plans as the defining criteria for those employees who were entitled to receive credited service for benefit computation purposes under the Plan. PC¶ 29, S¶22, 34, 59.[9]  S¶34.  Where as here the term "participating location" is not defined

---

[7] See PC¶18, *See also* SPDs and other plans maintained by Defendants on behalf of other acquired companies that use the words "former [other Company] locations" to distinguish those plans from other acquired company pension plans. *Id.* Defendants' claim is also defeated by the 1997 Bendix SPD that lists locations added *after* the 87 Plan date, including Prescott (where Mr. Frazier first worked) yet continues to be entitled  "former Bendix Locations." PC¶18, S¶118.

[8] Defendants' additional assertion that Plaintiff is not entitled to benefits because Schedule A in the 87 Plan does not make a specific reference to King Radio or Sundstrand is also unfounded and in conflict with the definition of Company, which includes all businesses that became part of  the enumerated Bendix Divisions and does not use the term "participating location" used in later plans. PC¶2. There was no need to expressly identify King Radio (or Sundstrand) in the 87 Plan Schedule A because *no* specific locations of any sort are identified. PC¶¶17-18.

[9] Eligible Employees are defined in relevant part under the 94 Plan as "any salaried Employee of an Employer at a participating location." S¶22. The 96 Plan added to the definition of Eligible Employees "an employee belonging to a classification to which the

1  in the Plan, the term is to be interpreted "in the ordinary and popular sense as would a

2  [person] of average intelligence and experience." *Gilliam*, 488 F.2d at 1194, 1195.  When

3  the Plan is silent, courts "look to the dictionary definition…"  *Id.*  Websters dictionary

4  defines "participate" in relevant terms as: 2)(a) To take part, (b) to have a part or share in

5  something.  *Merriam-Webster's Collegiate Dictionary* 903 (11th ed.  2012).  King Radio

6  satisfied both of these criteria. PC¶¶34, 67-68, 70, 87, 90.

       There can be no dispute King Radio actually participated in the Plan. *Id.* It clearly

8  did so on behalf of Bendix Plan transferees and on behalf of the non-union hourly

9  employees added to the 94 Plan. *Id.*; PC¶23. Employees in those categories earned and

10  were paid Bendix plan benefits for their employment at King Radio. PC¶¶18, 23, 34, 67-

11  68, 70, 87, 88, 90. Defendants cannot disregard several decades of King Radio's actual

12  participation in the plan and now claim it was somehow not a "participating location." *Id.*

13  Defendants had clear notice of King Radio's participation and permitted it to treat its

14  Salaried Bendix transferees as participants for decades. *Id.* Whatever undisclosed basis it

15  now relies on to claim that King Radio somehow was not a participating location for

16  Bendix Plan transferees does not undo Defendants' clear ratification of participation by

17  that location under the terms of the Plan. *Halliburton Co. Benefits Comm. v. Graves*, 463

18  F.3d 360, 372 (5th Cir. 2006) *clarified,* 479 F.3d 360 (5th Cir. 2007) *See* Pl's MSJ pp.

19  12-13.

20         Numerous Plan documents and communications also confirm that King Radio

21  was part of the "Company" under the 87 Plan and a "participating location" under later

22  Plan iterations and that Bendix Plan transferees were in classifications to which the Plan

23  had been extended. S¶44, 45-46; S¶158-172, and payment of Bendix benefits to King

24  Radio employees, S¶197-201. Plaintiff was an "Eligible Employee" under the post-87

25  Plans and as a Bendix Plan transferee worked at a participating location and classification

26  to which the Plan had been extended.  PC¶¶18, 23, 34, 65-73, 87, 88, 90.

27
28  Plan had been extended."  Under the 94 and 96 Plans AlliedSignal Inc. was the "Participating Employer." S¶24,33.

Defendants' motion attempts to assert a brand new rationale that "participating locations" are limited to only those expressly approved or "legacy" locations. DSOF ¶32. While there is no evidence for this assertion, both Sundstrand and King Radio satisfy these elements. PC¶32. As explained above King Radio was a Bendix business and was already participating in the Bendix Plan before the 94 Plan was adopted in June 1994. Sundstrand likewise became part of the Bendix Plan in November 1993 before the 94 Plan was adopted. *See* Pl.'s MSJ pp.12-13. There was not a single piece of evidence demonstrating express approval for adding any of the myriad participating locations of the Bendix Plan that Defendants could identify. PC¶32. To the contrary, there is no documentation and that locations were added to a plan without any written records although there may have been meetings with the Senior VP of HR. PC¶32. The Plan affiliation was based on the alignment of the businesses being acquired. The so-called "approval" process was basically a "rubber stamp" for what had already been decided by the "acquisition team" "most of which took less than three minutes because people knew which plans for the most part were supposed to cover particular sites" and "which businesses typically aligned where." PC¶32. Given Plaintiff's evidence, any finding that Mr. Frazier was not covered under the 87 Plan immediately in November 1993 (before the 94 Plan was adopted) or that King Radio was not part of the Bendix Plan must be rejected. PC¶¶4,6,18, 20, 32,34, 46, 66, 67, 71,72, 73, 85-90. [10]

**Mr. Frazier Worked at a Bendix Plan Location In Phoenix**

In their continuing pattern of ignoring or misrepresenting the relevant documents, Defendants' arguments that Mr. Frazier was not entitled to Bendix Plan benefits upon his

---

[10] Defendants' apparent attempt to rely on a list found in a 1997 SPD is likewise unavailing with respect to when or whether King Radio and Sundstrand became participating locations. For example, the 96 Plan expressly states that the non-union hourly employees of both the Bendix Air Transport and General Aviation Avionics Division [i.e. its non-union hourly employees in Olathe] are Eligible employees but Olathe is not listed as a location on that list. Compare Defs Ex. 17, Schedule A & PC¶22, In any event the SPD is not a Plan document and does not alter the terms of the Plan. *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1877 (2011).

return to Phoenix in 2000 violates the clear terms of the 2000 Plan which unambiguously designates his location as a Bendix Plan location. In apparent recognition of this fact, the only assertions regarding Mr. Frazier's entitlement to benefits upon his transfer to Phoenix included in Defendants' SOF ignore "participating locations" and address exclusively the 1987 Plan.  *See* DSOF ¶72 & 73.  Defendants fail to even mention, much less analyze the Plan documents in effect when Mr. Frazier returned to Phoenix including the 2000 Plan effective as of January 1, 2000 that clearly applies the Bendix Plan to Mr. Frazier's Phoenix locations.  DSOF ¶¶ 72-73.

The 2000 Plan document defines the Company as Honeywell. S¶52. After Mr. Frazier left Kansas in March 2000, he continued to work for the Company as an "Eligible Employee" at "participating locations," where there were other employees who were participating in the Plan and which were in fact designated "participating locations" under the Appendix of participating locations made effective as of January 1, 2000, a few months before his transfer. PC¶72,73. Mr. Frazier's work history printouts, identify Mr. Frazier as having worked at **Location 0650** on and after his transfer back to Arizona. PC¶72,73. Under the terms of the 2000 Plan (which incorporates the Bendix Plan), Mr. Frazier's location was expressly designated as a participating location under the Bendix Plan and Mr. Frazier was accordingly an Eligible Employee entitled to Bendix Plan credited service for all of his years of employment. PC¶72,73.  This is true regardless of whether King Radio was a participating Bendix Plan location.[11]   Mr. LittleJohn, Mr. Frazier's manager, who worked at the exact same location, also remained in the Bendix Plan in the year 2000, further confirming that Deer Valley was a participating location. S¶224.

---

[11] While in 1996 Defendants purported to amend the express Plan provisions guaranteeing full Bendix benefits to employees returning to the Company from cash balance plans  and relegate the terms governing returns from cash balance plans  to so-called "uniform procedures," (*see* Pl.'s MSJ pp.15-16),to the extent such provision could be applied to reduce transferees' rights to benefits it would violate ERISA §§204 (g) and (h). Pl.'s MSJ pp. 11-12, 15-18.  Despite Defendants' discussion of the 2000 Election, Mr. Frazier had moved to the designated Bendix Plan location in March 2000 before Defendants purported to effectuate an "election" in September 2000, PC¶72,49.

Defendants' only argument that Plaintiff did not continue to accrue benefits under the Bendix Plan when he transferred was based on alleged changes to the Plan in November and December 1999 that were never disclosed to plan participants and legally had no effect on participants rights to benefits upon transfer back to a Bendix Plan location. *See* Pl's MSJ p.9, S¶47-48.  In any event, prior to the merger of the King Radio Plan into the Bendix Plan, Mr. Frazier was a participant and clearly "covered" by the terms of the Bendix Plan, including its provisions governing credited service and transfer rights  (even if also covered by the King Radio Plan).  Accordingly, he continued to have rights under the Bendix Plan as in effect before the November 1999 amendment, including the rights to all of his Bendix Plan service upon return to the Company. Defendants' Secret Red / Blue could not change that.  PC¶9. *See also* Pl's MSJ p.15-18 asserting ERISA 204(g) and (h) violations.  The 2000 Plan contains, in the various supplements, the provisions governing the plans that were merged into and made a part of the 2000 Plan. The 2000 Plan contains an appendix listing all of the locations and the plans applicable at each location. PC¶73,89, S62, ¶Tab 16. The Phoenix location to which Plaintiff transferred on and after March 2006, "Location 0650" is a participating location under the Bendix Plan.PC¶73,89. Accordingly, Plaintiff was an Eligible Employee entitled to a credited service at that location under the Bendix Plan. *Id.* Under the Bendix Plan transfer rules, all of his prior service with the Company, even if not under the Bendix Plan, must be counted in computing his benefits.[12] There is no ambiguity in the Appendix of Participating Employers and nothing to interpret.  Mr. Frazier's employment of Location 0650 was covered by the Bendix Plan.  Defendants' arguments that Mr. Frazier was not covered by the provisions of the Bendix Plan after his

---

[12] Not only does the Bendix Plan designate Mr. Frazier's location as a participating location, Defendants' assertion that that Plaintiff somehow continued to participate in the King Radio Plan after he transferred is contradicted by the later adopted 2000 plan document which affirms the applicability of the Bendix Plan (Supplement A), and precludes the applicability of the King Radio Plan (Supplement CC) and provides that his benefits are to be determined by the terms of  the "applicable Supplement." See  PC¶10, PC¶72, S¶64-66.

1  return to Phoenix conflicts with the express terms of the Bendix Plan and must be
2  rejected.

3  **C.    No Plan Policy Supports Denial of Bendix Plan Benefits**

4  Defendants' argument that denial of Mr. Frazier's claim for benefits is consistent
5  with so-called policies that were never made known to, much less adopted by the plan
6  administrator, never disclosed in the Plan or otherwise made known to employees and
7  that violate the terms of the Plan can somehow control Mr. Frazier's entitlement to
8  benefits is unavailing. A cornerstone of ERISA protections is that plans must be in
9  writing and disclosed to plan participants (ERISA §§ 402 & 102.)  29 U.S.C. § 1102 &
10 1022. ERISA and the tax code require pension plans to "specify the basis on which
11 payments are made to and from the plan," 29 U.S.C. § 402(b)(4),   and to provide
12 definitely determinable benefits in a manner that precludes employer discretion. 26
13 U.S.C. §401(a)(25), 26 C.F.R. §1.401(b)(1)(i).  Similarly, ERISA §102, 29 U.S.C. § 1022
14 requires that Defendants provide detailed notice to employees of their benefits and rights
15 "written in a manner calculated to be understood by the average plan participant." 29
16 U.S.C. § 1022(a)(1).  Such notice must clearly identify, *inter alia*, the circumstances that
17 can result in ineligibility, denial, loss, offset or reduction of any benefits that a participant
18 might otherwise reasonably expect the plan to provide.  29 C.F.R. § 2520.102-3 (l)

19 Defendants' "alleged policy" was not adopted by the Plan Administrator or
20 anyone with authority to amend the Plan, and never distributed to anyone but a select few
21 and that demonstrably was not followed on numerous occasions. *See* DSOF ¶8, PC¶8.
22 However, this is an ERISA case and the task is to determine what the Plan provides, not
23 whether some unwritten policy never communicated and in conflict with the terms of the
24 Plan can be used to deny benefits.[13]  *Canseco v. Constr. Laborers Pension Trust for S.*

---

[13] As set forth in Plaintiffs motion, Defendants' 1996 amendment of the Plan to purport to
relegate the rights of transferees from cash balance plans to those set forth under the
"uniform procedures of the Plan Administrator" violates ERISA because Plan terms need
to be stated in the Plan, not in undisclosed policies and because the amendment purported
to cut back the rate of future benefit accrual for Bendix Plan transferees in violation of
ERISA §204(h).

- 12 -

*Cal.*, 93 F.3d 600, 609 (9th Cir. 1996); *Adams v. Cyprus Amax Mineral Co.*, 44 F. Supp. 2d 1126, 1133 (D. Colo. 1999); *McGee v. Equicor–Equitable HCA Corp.,* 953 F.2d 1192, 1202 (10th Cir.1992).The undisputed facts establish that no "uniform policies" were ever adopted by the Plan Administrator who, when shown the document upon which Defendants rely, could not identify it. PC¶37-39. Here again Defendants are disingenuous.  They attempt to elevate a spreadsheet they claim supports denial of Plaintiff's benefits to evidence of "uniform procedures" yet they carefully fail to quote the full provision of the Plan which mandates "uniform procedures of the Plan Administrator." *See e.g.*, Defs.' MSJ p. 9:13-14. DSOF ¶37-39 (referring to "'uniform procedures' of the Plan Administrator").  This is not a mistake - Defendants' alleged "uniform procedures" did not follow the Plan and were not approved by the Plan Administrator.  S.¶205.  An alleged consistent "policy" is, in any event, irrelevant where it violates the terms of the Plan. A plan administrator "lacks discretion to rewrite [a] Plan." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 460 (9th Cir.1996); *see also Gallo v. Madera,* 136 F.3d 326, 330–31 (2d Cir.1998); *Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1163 (D. Ariz. 2005). The procedures were created by three individuals who never looked at the Plan documents or attempted to make Plan-specific rules. S¶204, 206. The current Plan Administrator, who testified he looked at something he termed uniform procedures "back in 2000" proceeded to testify that he had never seen the document Defendants are now calling the uniform procedures. *See* S¶204-206; PC¶ 37-39. Defendants' own evidence on this motion demonstrates that not only did Defendants know that Bendix transferees stayed in the Bendix Plan, they effectively approved it.  *Id.*  ("Mr. Snethen concurred with the bridge leave approach, an all service Bendix calculation, with the offset for the King annuity value.").

The record is replete with actions and statements from Company upper management and Human Resources and Employee Relations managers, confirming that Bendix transferees would continue to accrue Bendix Plan benefits. PC¶8. See S¶¶ 17, 44,

- 13 -

158-172, 184, 188-189, 191-199. These representations are binding. The SPDs (which were approved by the Board and the individuals Defendants claim were delegated authority by the Board) advise employees that the Company personnel confirming Bendix Plan benefits to transferees were "trained to assist and guide …in all matters concerning.. benefits." A¶1. *See* S¶¶ 17, 44, 158-172, 184, 188-189, 191-199. Defendants knowingly accepted and ratified King Radio's participation under the Bendix Plan.

Nor does calling certain individuals "grandfathered" when such term appears nowhere in the Bendix Plan enable Defendants to selectively pick and choose certain Bendix Plan transferees entitled to Bendix benefits. In apparent recognition of their obligation to apply uniform treatment to all Bendix Plan transferees, *see e.g.* 29 C.F.R. 2560.503-1(b)(5) (requiring procedures to ensure consistent treatment), Defendants now claim that the fact that some Bendix Plan participants continued to receive benefits following their transfer to King Radio was somehow an "administrative error" or a "mistake," and supposedly based on allegedly incorrect representations (representations Defendants were clearly aware of and ratified).[14] Providing credited service under the Bendix Plan benefits to transferees was no mistake. The real company policy was embodied with the terms of the Plan. PC¶8. King Radio was a Company and participating location under the Bendix Plan.  PC¶¶4,6,18,20, 34,46, 66-68, 71, 87, 88. The Company knew it; employee relations and human resources employees knew it and Bendix Plan transferees knew it. *Id.* The SPDs stated it. S¶17-18,44. Even Defendants stated as much in denying Mr. Frazier's claim, although they claimed it was just for pre-1992 transferees (a factually incorrect assertion). S¶120, 194-199, 202-204. Defendants may have had a change of heart but that does not mean that they can rewrite history and effectuate whole-scale reductions in benefits. *See Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739,

---

[14] Although Defendants have asserted that individuals should have been paid from a non-qualified Plan, they have not provided any information verifying that they corrected any supposed error.A¶12 The employee who actually performed the benefit calculations for the so-called grandfathered employees and trained others to do the same testified that the so-called grandfathered employees who had the "pension promise" would receive "an all-service Bendix with the King offset…" A¶12.

743, (2004); *Tapley v. Locals 302 & 612 of Int'l Union of Operating Engineers-Employers Const. Indus. Ret. Plan*, 11-35220, 2013 WL 4767344 (9th Cir. Sept. 6, 2013). Pension plan participants should be able to reasonably rely on plan terms in planning their retirement. Defendants' attempt to rely on undisclosed policies should be rejected.

## II.  PLAINTIFF IS ENTITLED TO BENEFITS UNDER OTHER PROVISIONS

Defendants do not address the numerous provisions that also require that Plaintiff receive benefits even if his transfer to Olathe were not transfer to a Company location or to employment as an Eligible Employee. Plaintiff addressed these provisions in his MSJ, Doc. 232 pp. 12-15. *See* S¶11-12, 27, 35. Defendants' motion erroneously asserts that the 94 and 96 Bendix Plan's provisions remained the same with respect to participants' service after a transfer of employment. (p. 9-10)   As demonstrated by Plaintiff in his MSJ, Defendants are incorrect.   Further, to the extent Defendants are contending that Plaintiff did not receive credit following his transfer as the result of the so-called uniform policies, the transfer rules did indeed change Plaintiff's rights and violated ERISA.   See Pl.'s MSJ pp. 15-20. [15]

## III.  NO DEFERENCE IS WARRANTED

*Conkright v. Frommert*, 559 U.S. 506 (2010) has no application in this case. In *Frommert*, it was undisputed that the plan administrator had deference to interpret the plan under a claim for benefits. The reason the lower court did not apply deference was based on an exception it crafted "where the administrator ha[s] previously construed the same [plan] terms and we found such a construction to have violated ERISA." 559 U.S. at 513. The *Frommert* Court reaffirmed that *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) and *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008) remain intact and that "Under trust law, a trustee may be stripped of deference when he does not exercise his discretion 'honestly and fairly.'" *Frommert*, 559 U.S. at 521. Deference is also inappropriate where a "plan administrator is too incompetent to exercise his

---

[15] Defendants do not address the argument in their MSJ so Plaintiff does not address the argument here. *See* Pl.'s MSJ pp. 12-13. S ¶12, 13.

discretion fairly." 130 S.Ct. at 1651. *See also Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 973-74 (9th Cir. 2006). Unlike *Frommert*, this is not a case where the Plan Administrator otherwise vested with discretion has made "a single, honest mistake." To the contrary, as set forth below, and in Pl.'s MSJ pp. 5-6, no weight or only the slightest weight can be accorded to the Plan Administrator's arguments on this motion.

**1. The Plan language does not permit any deference.** The "default" standard of review for review of a benefits determination is *de novo*. The provision relied on by Defendants has no application here because Plan §12.10 expressly forbids the Plan Administrator from rendering a decision respecting the denial of a claim for benefits beyond 120 days after the matter is submitted to the Plan Administrator. PC¶¶77, 78,81-82. No decision was made within that time frame. PC¶77, S¶57. *See* Richard A. Lord, 11 *Williston on Contracts* §32:10 (4th ed. 2011 supp.) ("the specific clause governs the meaning of the contract" and will control over the general grant of discretion). *See* Pl's MSJ pp. 5-6. *See also Vaught v. Scottsdale Healthcare Corp. Health Plan*, CV-05-718-PHX-DGC, 2009 WL 649806, at *2 (D. Ariz. Mar. 10, 2009).

**2. Defendants' wholesale violations of ERISA's claims regulations preclude deference under controlling regulations and DOL authority.** *See* Pl's MSJ p. 5: 8-19.

**3. Defendants' failure to investigate and develop the record, and their unreasonable construction and disregard of Plan terms and other shifting grounds for denial preclude deference.** Defendants' proffered explanations ignore and misrepresent the facts and purport to arrive at tortured and unsupported meanings of plan terms and completely fail to address other relevant terms. PC¶¶82-90. *See also* A¶2-5.Defendants' bad faith and failure to adequately develop the record is also demonstrated by their reliance on Mr. Frazier's 2000 choice election in denying Plaintiff's appeal, *see* DSOF Ex. 9, pp. 5-6, S¶222-223, PC¶50-53. Whether as a result of incompetence or bad faith, Defendants closed their eyes to relevant facts and documents that required the granting of Plaintiff's claims and went out of their way to deny benefits here. *Id. See also* fn.4, *supra*. *See Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 960 (9th Cir.

2001); *LifeCare Mgmt. Servs., LLC v. Ins. Mgmt. Adm'rs, Inc.*, 761 F. Supp. 2d 426, 441 (N.D. Tex. 2011) *aff'd*, 703 F.3d 835 (5th Cir. 2013) ("IMA's investigation was plainly inadequate."); *Helton v. AT & T Inc.*, 709 F.3d 343, 356, 358 (4th Cir. 2013) ("An ERISA plan administrator can be charged with knowledge of Corporate information and the contents of its books and records…AT & T failed to compile an adequate record to render its decision.")  5A Fletcher Cyclopedia of Corporations § 2203 (2012)).

**4.  Defendants' conflict of interest and procedural irregularities affected the determination.**  This lawsuit was pending for over nine months before Defendants submitted their purported appeal determination. PC¶77. They did so only after the Complaint was amended in March 2011 to assert class action claims. PC¶7. In seeking to appeal class certification, Defendants asserted that the make-whole payments sought by Mr. Frazier and other class participants "would run into the tens of millions of dollars." A¶7.  Defendants have demonstrated that it is their concern over the financial impact of this case and not an unbiased review of the Plan that motivated their "years after the fact" appeal denial and their arguments on this motion. This structural conflict of interest warrants the most skeptical review of Defendants' proffered plan interpretations.  *See* Pl's MSJ at 5-6. *See also Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009); *Couture v. Gen. Motors, LLC*, CV-12-00106-PHX-FJM, 2013 WL 1693598 (D. Ariz. Apr. 18, 2013)  (applying "a higher level of skepticism to the administrator's actions"); *Mondolo v. Unum Life Ins. Co. of Am.*, CV 11-7435 CAS MRWX, 2013 WL 179711 (C.D. Cal. Jan. 16, 2013). *See also Sluimer v. Verity, Inc.*, 606 F.3d 584 (9th Cir. 2010);  *Vincenzo v. Hewlett-Packard Co.*, 12-CV-03480-JCS, 2013 WL 3327892 (N.D. Cal. June 28, 2013).  *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008) (noting that "conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision…").

**5.  Defendants' post-hoc arguments mandate *de novo* review.** Defendants' arguments regarding alleged practices and interpretations were never offered in response to

1    Plaintiff's claim and appeal and are inadmissible and cannot be considered. *See* fn. 5,

2    *supra.   See* 29 C.F.R. §2560.503-1(f).  *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d

3    1461, 1463 (9th Cir. 1997); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002);

4    *Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001); *Marolt v. Alliant*

5    *Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998).

6        For all these reasons and those stated in Plaintiff's motion, no deference can be

7    accorded to Defendants' latest purported basis for denying Mr. Frazier's claim. Under

8    any standard of review, Defendants' denial is arbitrary and unreasonable.

9    **IV. DEFENDANTS VIOLATED ERISA'S DISCLOSURE REQUIREMENTS**

10        Defendants' argument that summary judgment is appropriate on Count V is

11    frivolous. Plaintiff has asserted not only that Defendants failed to furnish the SPDs and

12    required disclosures but that the SPDs themselves violate ERISA by, *inter alia*, failing to

13    provide adequate notice of participants' rights and benefits and circumstances that can

14    result in denial or loss of benefits under the Plan. Pl.'s MSJ pp. 19-20. Because

15    Defendants do not even address the substantive deficiencies of the SPDs, and do not

16    address their failure to furnish any of the required summaries of material modifications,

17    Plaintiff confines his response to Defendants' argument regarding distribution of the

18    SPDs. Defendants' argument is without merit.

19        Defendants' motion on Count V is supported by only three factual assertions,

20    none of which establish any genuine issue of fact to defeat Plaintiff's sworn testimony

21    that the SPDs were not distributed to him and other employees in Olathe. PC¶61-63.

22    There is no dispute that Plaintiff never received the 1997 Bendix Plan SPD, and nor that

23    Defendants never distributed Bendix Plan SPDs to Bendix participants in Olathe.

24    Defendants are barred from asserting they did.[16] PC¶62-52.

25

26

27    ───────────────────
      [16] *See* PC¶¶62-63 (citing, *inter alia*, Defs' Resp.to RFAs and  Plan Administrator's
      testimony establishing that Mr. Frazier would never have received the 1997 Bendix SPD
28    because Mr. Frazier was in Olathe at the time that SPD was distributed).

1    There can also be no dispute that Defendants method of distribution violated
2    ERISA. Drop shipping documents to a facility (the only method Defendants have claimed
3    they utilized) is not a method designed to ensure actual receipt and fails to comply with
4    ERISA regulations, which require that documents such as SPDs and summaries of
5    material modification must be sent by a method or methods of delivery likely to result in
6    full distribution.  29 C.F.R. §2520.104b–1(b)(1) (in no case is it acceptable merely to
7    place copies of the material in a location frequented by participants.)   Defendants'
8    process was completely inadequate. There is no evidence supporting the assertion that
9    *any* transferred employees received the 1997 Bendix SPD when it was distributed.  *See*
10   PC ¶62-63.  See *Helton v. AT & T Inc.*, 709 F.3d 343, 361 (4th Cir. 2013); *See Leyda v.*
11   *AlliedSignal, Inc.*, 322 F.3d 199, 209 (2d Cir. 2003); *Kaszuk v. Bakery & Confectionery*
12   *Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 555 (7th Cir. 1986).[17]

## V. DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES

13   Although Defendants do not address most of Plaintiff's breach of fiduciary duty
14   claims, Defendants' motion must be denied with respect to the misrepresentation claim, the
15   only claim Defendants have argued on summary judgment,.  Defendants misrepresented,
16   concealed and failed to disclose critical information, S¶153, 173, 175, 186-195, 216,
17   withheld documents and information, S¶209, 224-225, 230-239, 254-256, and violated the
18   Plan terms and ERISA. As the Supreme Court recognized in *Amara*, a failure to comply
19   with ERISA's disclosure obligations, which caused harm to Plaintiff , can be remedied
20   through ERISA § 502(a)(3) even if Plaintiff did not have a copy of the SPDs Defendants
21   were required to, but did not, provide. *See Amara*, 131 S. Ct. at 1881. *See Kenseth v. Dean*

---

[17] Each of the cases cited by Defendants at p.18, *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 814 (2d Cir. 1985); *Francis v. Telecare Corp.*, C08-2468 BZ, 2009 WL 1578714 (N.D. Cal. June 4, 2009); *Bronia, Inc. v. Ho*, 873 F. Supp. 854, 859 (S.D.N.Y. 1995), involved a mailing to the individual, not a bulk mailing to a worksite. Those cases are inapposite because Defendants  have never alleged notices were mailed to individual participants and have only claimed that some SPDs were mailed to some worksites, but not the Bendix Plan SPD to Mr. Frazier's worksite.

1 | *Health Plan, Inc.*, 722 F.3d 869, 886-87 (7th Cir. 2013).[18]

2        Defendants' assertion that Mr. LittleJohn was not a fiduciary also fails.  Under the

3 | 87, 93 and 96 Plans, the Corporation/Company was the named Plan Administrator under

4 | the Plan. A¶8. The 1986 SPD advises employees "***you should first and always consult***

5 | ***with your local employee relations representative. This person has been trained to***

6 | ***assist and guide you in all matters concerning your benefits***."  A¶1. The 97 SPD also

7 | advises employees to speak to their HR employee.  Mr. LittleJohn, Director of Flight

8 | Operations for the Company, signed a 1996 letter to Mr. Frazier, that advised him that

9 | "AlliedSignal, Inc. Retirement Benefits Administration (RBA) is reviewing the impact of

10 | the Bendix plan and the cash balance Bendix-King Plan.  You will receive information

11 | regarding this at a later date." PC ¶57. Mr. LittleJohn was clearly acting as a fiduciary

12 | when communicating on behalf of the Company to Mr. Frazier about his benefits.   Mr.

13 | LittleJohn also received information about his own benefits from the Company President,

14 | and employee relations and human resources employees who were "***trained to assist and***

15 | ***guide …in all matters concerning your benefits***" including the fact that he was

16 | continuing in the Bendix Plan both in Olathe and when he transferred to the same

17 | location Mr. Frazier transferred to in Phoenix. As his supervisor, he relayed that

18 | information to Mr. Frazier.  PC¶57.The question of fiduciary status is a functional test.

19 | 29 C.F.R. §2509.75-8 (D-3). See *Varity Corp. v. Howe*, 516 U.S. 489, 502-03 (1996).As

20 | in *Varity*, it was the employer that was the named fiduciary and Plan Administrator. *See*

21 | *also* A¶8.

22                             **CONCLUSION**

23        For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion

24 | for summary judgment be denied in all respects.

25        RESPECTFULLY SUBMITTED this 25th day of September, 2013.

26

27 | [18] Defendants do not make any challenge to and accept Plaintiff's assertions that he would have undertaken other actions and suffered harm as a result of Defendants'

28 | breaches of fiduciary duty.  *See* SAC ¶¶117-118. See S¶137-140

1

2          **MARTIN & BONNETT, PLLC**
           By:   s/Susan Martin
3          Susan Martin
           Jennifer L. Kroll
4          1850 N. Central Ave. Suite 2010
5          Phoenix, AZ 85004

6          **SCHLEIER LAW OFFICES, P.C**
           Tod F. Schleier, Esq.
7          Bradley H. Schleier, Esq.
8          3101 N. Central Avenue
           Suite 1090
9          Phoenix, Arizona 85012

10
           Counsel for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

        I hereby certify that on September 25, 2013, I electronically filed the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants:

4

5

David B. Rosenbaum

Dawn L. Dauphine

6

Osborn Maledon, P.A.

2929 North Central Ave., Suite 2100

7

Phoenix, AZ 85012-2794

8

9

Howard Shapiro

Nicole A. Eichberger

10

Proskauer Rose LLP

650 Poydras Street, Suite 1800

11

New Orleans, LA 70130

12

13

Myron D. Rumeld

Amy Covert

Russell Hirschhorn

14

Proskauer Rose LLP

Eleven Times Square

15

New York, NY 10036

16

17

s/T. Mahabir

18

19

20

21

22

23

24

25

26

27

28