David B. Rosenbaum, 009819
Dawn L. Dauphine, 010833
OSBORN MALEDON, P.A.
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
ddauphine@omlaw.com

Attorneys for Honeywell Defendants
[Additional counsel for Defendants appear on signature page)

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas G. Frazier, a married man,<br><br>Plaintiff,<br><br>vs.<br><br>Honeywell International, Inc., a Delaware corporation; Honeywell Retirement Earnings Plan; Salaried Employees Pension Plan of Allied Corporation; Salaried Employees Pension Plan of AlliedSignal, Inc.; Salaried Employees Pension Plan of the Bendix Corporation; Pension Plan for Salaried Employees of General Aviation Avionics; Plan Administrator of the Honeywell Retirement Earnings Plan; Plan Administrator of the Salaried Employees Pension Plan of the Allied Corporation; Plan Administrator of the Pension Plan for Salaried Employees of the Bendix Corporation; Plan Administrator of the Pension Plan for Salaried Employees of General Aviation Avionics<br><br>Defendants. | No. 2:10-cv-01618-SRB<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Oral Argument Requested) |

## I. PRELIMINARY STATEMENT

Defendants' summary judgment motion amply demonstrates that Frazier's benefit claims fail because the Bendix Plan gave him no right to additional benefit accruals after he transferred to Olathe. Frazier's opposition creates no triable issues of fact and presents no legal argument to defeat the Plan Administrator's reasonable interpretation of the Plan. This is true as to Frazier's individual claims as well as his class claims.

At Frazier's urging, this Court certified a class of all persons who once participated in the Bendix Plan and then ceased accruing service credits under that Plan when they transferred to non-Bendix Plan locations. The class claim appeared to rest on the argument that the Bendix Plan's transfer provisions somehow entitled all of these participants to continue accruing service credits under the Bendix Plan, no matter where they transferred in the vast network of AlliedSignal (and later Honeywell) locations. Frazier's responding brief confirms, however, that he has no viable class claim because his claim for additional benefits under the Bendix Plan turns on the individualized contention that the specific locations to which he transferred – the King Radio facility in Olathe, Kansas and the legacy Honeywell Inc. facility in Deer Valley, Arizona – participated in the Bendix Plan. Even as so limited, Frazier's claim finds no support in the Bendix Plan documents, as reasonably construed by the Plan Administrator. His benefit claims should accordingly be dismissed, individually and for the class, together with his statutory cut-back and notice claims, all of which are wholly dependent on the viability of his benefit claims.

Frazier contends that Defendants somehow conceded that King Radio was a "Company" within the meaning of the 1987 Bendix Plan because, in response to a Request to Admit served before the operative complaint even included claims under that Plan, Defendants stated that they lacked sufficient information to admit or deny that assertion. As a matter of law, a response framed in this fashion is no admission. Later in discovery, Defendants advised Frazier that, as a result of their investigation conducted to address his assertion, Defendants concluded that there was no basis for finding that King Radio participated in the 1987 Plan because it was not a division of Bendix before Bendix's acquisition by Allied. Indeed, even

after Allied's acquisition of Bendix, Bendix's subsequent acquisition of King Radio, and the ultimate merger of Bendix into Allied (and thus out of existence), King Radio continued to operate as a wholly owned subsidiary that sponsored its own pension plan for its employees. It therefore could not have been a former division of Bendix. Moreover, Bendix clearly knew how to designate subsidiaries as participating employers in the Plan, which it did with five distinct subsidiaries. Conspicuously, King Radio was not among them. Accordingly, not only did Defendants not concede Frazier's argument, but they specifically demonstrated why the Plan Administrator concluded to the contrary. Absent a basis for finding this conclusion unreasonable, the Administrator's determination must be upheld.

Frazier's alternative argument — that he was entitled to Bendix Plan benefits because of his transfer to Deer Valley in 2000 — is based on a patently false reading of the 2000 Plan. For reasons previously stated, the 1999 amendment to the Bendix Plan merely froze — effective as of the time of the merger between AlliedSignal and Honeywell Inc. — the employees of each merger partner in the retirement plans sponsored by each legacy company (*i.e.*, Honeywell Inc. employees remained in Honeywell Inc. plans, and AlliedSignal employees remained in AlliedSignal plans). In any event, neither the 2000 version of the Bendix Plan nor the plan Appendix relied upon by Frazier support an argument that the Deer Valley location *ever* participated in the Bendix Plan. In fact, the 2000 Bendix Plan and the Appendix confirm that the exact opposite is true.

Frazier fares no better with respect to his other individual and class claims. As stated below, he has no viable fiduciary misrepresentation claim because no Plan fiduciary ever assured him that he would continue to accrue credited service under the Bendix Plan after transferring to Olathe. He also has no viable SPD claim because the evidence confirms that the Plan Administrator employed proper distribution procedures.

In short, the Court should grant summary judgment in favor of Defendants.

## II. ARGUMENT

### A. Frazier's Benefit And Statutory Claims Must Be Dismissed Because Neither Of The Locations To Which Frazier Transferred Participated In The Bendix Plan.

Frazier does not now dispute that the Bendix Plan's transfer provisions did not entitle employees to accrue additional Bendix Plan benefits for service at a location that did not participate in the Bendix Plan, even though this appeared to be a cardinal premise for his class claims. (*Compare* Doc. 111 at 4-7 with Doc. 242.) Instead, he contends that the specific locations to which he transferred after leaving the Prescott facility – King Radio and Deer Valley – were locations that also participated in the Plan. (Doc. 242 at 1-12.) The assertion contradicts black and white facts: these locations did not participate in the Bendix Plan. In fact, each provided its employees an entirely different pension plan. (Def. Ex. 11; Tab 23; *see also* Tab 16 at Appendix A.)[1] The Plan Administrator's determination that, under the Plan terms, neither King Radio nor Deer Valley participated in the Bendix Plan, is thus rock solid. Accordingly, summary judgment should be granted dismissing Frazier's and the class' benefit claim, as well as the statutory claims that are dependent on his benefit claim. (*See* Doc. 237 at 11-14.)

#### 1. Defendants Are Not Barred From Arguing That King Radio Was Not A "Company" Under The 1987 Bendix Plan.

Frazier hopes to defeat summary judgment based, not on facts, but on a circumvention of facts – his contention that Defendants conceded that King Radio is a "Company" under the 1987 Bendix Plan, and thus are now barred from contending otherwise. This bizarre argument rests on Defendants' response to a Request to Admit served *before* Frazier filed an amended complaint to include claims under the 1987 Bendix Plan. (*See* Doc. 242 at 3-4; Doc. 141.) The response did not concede that "King Radio" was a "Company" under the 1987 Plan. Rather, it neither admitted nor denied the assertion. (Tab 71 at 21-22.) Defendants responded this way because the Plan Administrator had not yet been presented with, and hence had not yet

---

[1] All exhibits and transcript cites are referred to in the Declarations of Russell Hirschhorn and Lisa Dooley filed herewith or in support of Defendants' motion or in opposition to Plaintiff's motion. (Docs. 215-2; 215-3; 239-1; 239-2.) All citations to "Tab __" are to Plaintiff's exhibits filed with the Court on August 9, 2013 and September 25, 2013.

- 3 -

investigated, a claim based on the 1987 Plan. (*See* Def. Exs. 5; 6; 8.) After completing the investigation, Defendants repeatedly communicated to Frazier that King Radio was not a "Company" or a "participating location" in the Bendix Plan. (Def. Ex. 18 at 88:1-89:3, 177:12-178:19; Def. Ex. 51 at 102:14-103:14; *see also* Def. Ex. 62 at 170:5-171:1; 171:19-22; 192:23-193:6.)

Frazier cites no legal support for his contention that Defendants' early response to a claim not yet fully articulated forever ties Defendants' hands, despite a later factual investigation and timely supplemental disclosures. Federal Rule 36(a)(4) specifically distinguishes an admission from a response asserting a lack of knowledge or information. Fed. R. Civ. P. 36(a)(4). *See also Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981) (noting distinction between admission and response asserting lack of knowledge); *Stark-Romero v. Nat'l R.R. Co.*, 275 F.R.D. 551, 556-57 (D.N.M. 2011) (denying motion to deem matters admitted where party asserted lack of knowledge sufficient to admit or deny). Furthermore, the Rules do not require amendment of an initial response that neither admits nor denies an assertion where, as here, supplemental or corrective information is made known to the opposing party during discovery. Fed. R. Civ. P. 26(e)(1)(A). *See also* Adv. Comm. Notes on 1993 Amendments to Fed. R. Civ. P. 26(e); *All Star Seed v. Nationwide Agribusiness Ins. Co.*, 2013 WL 1882260, at *1, 11 (S.D. Cal. May 3, 2013) (denying motion to strike witness not identified in initial disclosures when witnesses' identities were later made known during depositions); *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200, at *1, 3 (N.D. Cal. June 3, 2011) (same). Instead, the Rules require the party serving the request to file a motion if he wishes to challenge a response asserting lack of sufficient knowledge. Fed. R. Civ. P. 36(a)(6).[2] Not only did Defendants make no admission that King Radio was a "Company," but, having failed to challenge the response by motion, Frazier may not use the response as a substitute for proving his case.

---

[2] As the advisory committee notes explain, Rule 36(a)(6) was added to avoid the "unfair surprise" that may be caused by "[g]iving a defective answer the automatic effect of an admission" and to ensure that "[a] responding party who purported to . . . be unable to admit or deny will [not] for the first time at trial confront the contention that he has made a binding admission." Fed. R. Civ. P. 36 adv. comm.'s note (1970 amendment).

- 4 -

**2. The 1987 Plan Terms Conclusively Establish That Neither King Radio Nor Deer Valley Were Participating Companies.**

Both sides agree that Schedule A of the 1987 Bendix Plan lists the participating companies in the Plan, as of January 1, 1987, as: "Former Bendix Divisions of: Bendix Corporate Headquarters[,] Allied-Bendix Aerospace[,] Allied Automotive[, and] Allied Electrical Connectors." (Doc. 214 at ¶ 17; Doc. 231 at ¶ 14.)[3] The undisputed testimony, as well as a plain reading of the Plan, confirms that "Former Bendix Divisions" were entities that were divisions of Bendix prior to its acquisition by Allied in 1983. (Def. Ex. 18 at 55:14-57:9, 88:1-89:3; Doc. 215-1 at ¶ 16; *see also* Doc. 237 at 7.)[4] The language thus excludes not only "Garrett, Signal, Electronics or Instrumentation" as Frazier contends, but also King Radio, which, like the other businesses, maintained its own pension plan.

Frazier recites language in the 1987 Bendix Plan that extends coverage to divisions or businesses "which have been or shall be acquired by the Corporation." But this provision extends coverage only to those divisions or businesses that are so "designated . . . by the Board of Directors." (Def. Ex. 10 at § 2.5; Def. Ex. 61 at 81:10-83:19.) Frazier has cited no evidence that the Board of Directors ever designated either King Radio or Deer Valley as participating companies on Schedule A.

King Radio would not qualify as a "Former Bendix Division" in any event because it *never* became a division of Bendix, but rather remained a wholly owned subsidiary. (*See* Def. Exs. 65-70; Tab 105 at 2, 3, 5, 16; Tab 106 at 2, 4; Tab 107 at 2; Tab 122 at D0003233, D0003235; *see also* Def. Ex. 18 at 88:1-88:11, 89:23-90:1.) *See, e.g.*, 1 Fletcher Cyc. Corp.

---

[3] Schedule A also lists five subsidiary corporations as participating companies. (*Id.*)
[4] The conclusion that "Former" means prior to the Allied acquisition is also confirmed by the fact that the 1985 version of the Plan contains the same Schedule with the same terms as the 1987 Plan. (Def. Ex. 64 at D0000217.) For that reason, it matters little whether there is no basis for Frazier's assertion that the qualifier "Former Bendix Division" references three different time periods. Accordingly, while Defendants may at various times have stated that King Radio did not qualify as a "Company" because it was not a division of Bendix as of 1987 or 1985, in fact, King Radio would have had to have been a division of Bendix prior to Allied's acquisition of Bendix in 1983 to qualify. King Radio was not even a part of the Bendix or Allied family when the qualifier "Former Bendix Divisions of" was first used in the 1985 Schedule A. (Def. Exs. 65-69; *see also* Def. Ex. 70.) It therefore defies reason that King Radio could have been considered a "Former Bendix Division of" one of the listed businesses identified on Schedule A.

§ 26 (a subsidiary is a separate and distinct entity from its parent corporation); *cf. id.* at § 25 (unincorporated divisions of a corporation are not separate entities); *Nava v. VirtualBank*, 2008 WL 2873406, at *1, * 11 (E.D. Cal. Jul 16, 2008) ("A division of a corporation is not a separate entity but is the corporation itself").  Although Schedule A identifies five subsidiaries as "participating companies," King Radio was conspicuously not among them. (Def. Ex. 10 at D0006369.) Thus, when Bendix wanted to cover a subsidiary under the Bendix Plan, it clearly knew how to accomplish that task.

In short, the Plan Administrator's conclusion that King Radio was not a "Company," within the meaning of the 1987 Plan is a reasonable – indeed, the only reasonable – construction of that Plan.

### 3.   King Radio Was Not A "Participating Location."

Frazier fares no better in contending that King Radio was a "participating location" in the 1993 and 1995 Bendix Plan. As there is no dispute that Olathe was not listed as a participating location in the 1996 Bendix Plan SPD (Def. Ex. 17 at D0005302), there is no basis for contending that it was made a participating location.

The Olathe location could not have participated in the Bendix Plan for a simple and undisputed fact: King Radio sponsored a completely different plan for all of its salaried employees. (Def. Ex. 11.) If King Radio was a "participating location" in the Bendix Plan, all King Radio salaried employees would be eligible for Bendix Plan benefits, and the King Radio Plan would be rendered a nullity. (*Id.*) Frazier's purported explanation – that King Radio participated in the Bendix Plan only "on behalf of Bendix Plan transferees" (Doc. 242 at 8:7-9) – finds no support in any plan document.[5] (*See* Def. Exs. 10; 11; 16; 24.) Frazier tries to support this argument by referencing instead the 1987 King Radio Plan SPD, which contains a clause stating that coverage under the King Radio Plan extends to its salaried employees "unless

---

[5] The fact that non-union hourly employees at Olathe participated in the Bendix Plan is of no relevance. These employees were not included by virtue of King Radio being a "participating location." Rather, they participated in the Plan because the 1993 Bendix Plan specifically includes them within the definition of "Eligible Employee." (Def. Ex. 16 at § 2.13.) No such provision is made for salaried non-union employees. Nor is there any evidence to support Frazier's contention that King Radio was in a classification to which the Plan had been extended.

- 6 -

they are eligible for benefits under the Bendix Pension Plan." (Tab 12 at D0040690.) However, as Frazier concedes, the terms of the King Radio Plan SPD cannot serve to amend either the Bendix Plan or the King Radio Plan. *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877-78 (2011); *see also* Doc. 242 at 9 n.10. Furthermore, the language on which he relies is not included in subsequent SPDs, and there is no evidence that this language was intended to carve out Bendix Plan transferees. (*See* Def. Ex. 71; *see also* Def. Ex. 61 at 102:14-103:14.)

In short, there is no basis for concluding that King Radio employees who transferred from a Bendix Plan location continued to earn service credits in the Bendix Plan, rather than benefits under the King Radio Plan.

### 4. Deer Valley Was Not A "Participating Location."

Frazier argues that the 2000 amendment to the Bendix Plan somehow converted Deer Valley – a legacy Honeywell Inc. facility – into a "participating location" in the Bendix Plan. But his argument ignores Plan language that defeats it, and rests instead on out-of-context references that do not overcome the Plan's plain meaning.

As previously explained, a 1999 plan amendment precluded legacy AlliedSignal employees from migrating to Honeywell Inc. plans, and vice versa;[6] and in 2000, employees made a one-time irrevocable election to either remain covered by their then-current pension plan formula or switch to a newly adopted pension equity formula. (Doc. 213 at 6-7.) Thus, there was never any possibility that Frazier, upon transferring to a legacy Honeywell Inc. business location in 2000, could have been transferred from the King Radio Plan to any other plan (other than the new pension equity plan by his own election). Because Frazier elected not to become covered by the new pension equity plan, he remained covered under the King Radio Plan. Frazier's contention that Deer Valley must have been a participating location in the Bendix Plan because other Deer Valley employees participated in that Plan is misplaced.

---

[6] Frazier's contention that this amendment constituted an illegal "cut-back" has been addressed in Defendants' response to Frazier's summary judgment motion. (*See* Doc. 237 at 11-14.) In any event, for the reasons stated below, Frazier's transfer to Deer Valley would not entitle him to Bendix Plan benefits even if the 1999 amendment had never been adopted, as the simple fact remains that this location never participated in the Bendix Plan.

Employees in Deer Valley would, in fact, be covered by the Bendix Plan if, unlike Frazier, they had transferred from a Bendix Plan location and elected to remain covered thereunder. (Doc. 214 at ¶¶ 9-10.)

The appendix to the Honeywell Retirement Earnings Plan ("HREP"), on which Frazier relies, does not support any contrary conclusion. The 2000 Bendix Plan that is annexed to the HREP[7] limits coverage to an employee who is "employed by an ***Employer*** at a participating location specified in an Appendix to the Plan." (Def. Ex. 2 at § 1.09 (emphasis added).)[8] The Appendix shows that Location 0650, Phoenix, was affiliated with the Bendix Plan with respect to one "Employer" (Tab 16 at D0007431), which, notably, was not Frazier's "Employer" in Deer Valley. In fact, Appendix A specifically states that the Deer Valley business to which Frazier transferred – identified on his work history report as Air Transport, Plant 7115, Commercial Aviation Systems-Phx, Location 0650 – participated in the "Honeywell Salaried Plan," not the Bendix Plan. (Tab 19; Tab 16 at D0007400.)[9]

In sum, Frazier provides no support for his contention that Deer Valley was a participating location in the Bendix Plan.

### B. There Are No Material Facts In Dispute That Should Defeat Summary Judgment.

Frazier desperately attempts to manufacture disputed issues of material fact to survive summary judgment, but none exist. Disputes over the company policy, for example, are not material since, as Frazier himself contends, his benefit claim should be adjudicated based exclusively on the Plan terms (Doc. 242 at 12:22-24) and the Plan Administrator's reasonable interpretation of those terms. (*See* Def. Ex. 59 at 174:14-175:18, 125:23-128:10; Def. Ex. 63 at 100:12-101:2 (admitting reasonableness).) The company's policy (before 1999) of moving

---

[7] As previously discussed, the HREP is the culmination of multiple plan mergers, including the Bendix Plan. However, the HREP did not alter employees' benefit entitlements under each of these merged plans, the provisions of which continued in existence after the mergers. (Def. Ex. 1 at iii.)

[8] An "Employer" includes affiliates, divisions or locations of Honeywell International Inc. that participate in the Bendix Plan and are identified as participating "Employers" on the Appendix. (Def. Ex. 2 at § 1.10.)

[9] The other locations where Frazier subsequently worked – Plant 4104 (Marketing & Product Management), SBE: Marketing & Product Management, and Plant 4107 (Engineering & Technology), SBE: Engineering Test Services – are not even identified on Appendix A as Participating Employers. (Tab 19; Tab 16 at Appx. A.)

- 8 -

employees to the pension plan sponsored by the location to which they transferred simply helps to explain why the Bendix Plan is properly construed so as to deny Frazier's claim for additional Bendix Plan benefits after he transferred out of the Prescott location. (Doc. 214 at ¶ 8.) In any event, Frazier provides no evidence to refute that this was, in fact, the policy.

Frazier's contention that Brian Marcotte, the Plan Administrator, could not identify the document housing the "uniform procedures" referenced in the Bendix Plan is immaterial. His failure to recall this particular document (Tab 49 at 111:22-25) was due merely to the fact that the document "sits within the HR Services Organization because they deal with the transfers." (Def. Ex. 72 at 152:25-153:6; *see also* Def. Ex. 31 at 49:24-50:10, 50:17-19, 53:4-8.) Marcotte testified that the "uniform procedures" were "well-established" and "well-known" and that he was "very familiar with the transfer rules." (Def. Ex. 56 at 151:16-152:10.) He further testified that these procedures were vetted in detail prior to Pension Choice in 2000, and again with legal counsel and the plans' actuary during Pension Choice. (*Id.*) Accordingly, the Court should reject Frazier's assertion that the uniform procedures that codified the company's policy "did not follow the Plan and were not approved by the Plan Administrator."

Finally, Frazier's reliance on unauthorized representations that were mistakenly or wrongfully made in 1991 or earlier to a limited group of employees is misplaced because these representations cannot serve to amend the written terms of the Bendix Plan. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 939 (9th Cir. 2003) ("A mere decision to extend benefits . . . does not establish a plan within the meaning of ERISA." (internal quotations and citation omitted)). As Frazier acknowledges, the Plan terms control, not *ultra vires* promises that are not embodied in the Bendix Plan document.[10] *See Amara*, 131 S. Ct. at 1877-78.[11]

### C. The Court Should Defer To The Plan Administrator's Interpretation Of The Plan.

For the reasons stated in Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment, Frazier's contention that no deference should be afforded to the Plan

---

[10] Additionally, any benefits that were mistakenly paid by the Bendix Plan have been or are being corrected. (Doc. 213 at 10-11 & n.9.)
[11] Frazier's attempt to manufacture disputed facts based on arguments set forth in his motion for summary judgment also fails. (*See* Doc. 237 at 17-18.)

Administrator's determination is misplaced. (Doc. 237 at 5-6.) No record evidence supports Frazier's assertions that the Plan Administrator acted with "incompetence" or "bad faith." Rather, the record confirms that the Plan Administrator engaged in a thorough review of Frazier's administrative claim and retained outside legal counsel to assist with the review. *See Davis v. Unum Life Ins. Co.*, 444 F.3d 569, 575 (7th Cir. 2006) ("[A]n administrator's decision to seek independent expert advice is evidence of a thorough investigation." (internal quotations and citation omitted)). Even if no deference were afforded to the May 2011 denial of Frazier's appeal, Supreme Court precedent mandates that deference be afforded to the subsequent interpretation of the Plan set forth in the Plan Administrator's Declaration. *See, e.g.*, *Conkright v. Frommert*, 130 S. Ct. 1640, 1646-47, 1651 (2010). *See also Tibble v. Edison Int'l*, 2013 WL 3947717, at *2 (9th Cir. Aug. 1, 2013) (holding that *Firestone* deference governs "issues of plan interpretation even when they arise outside the benefits context"). (*See also* Def. Ex. 4 at § 12.02.) Accordingly, while the Administrator's determination is reasonable and should be upheld under any standard of review, it should be accorded deference.

**D.   Frazier Has Asserted No Basis For Sustaining The SPD Claim.**

In support of his claim challenging the Plan's procedures for distributing SPDs, Frazier offers nothing other than self-serving testimony that he did not receive the SPDs. (Doc. 242 at 18:20-21.) Even if true, this allegation would not sustain a class claim where the evidence confirms that Defendants followed procedures for proper distribution and where the evidence confirms that other participants, in fact, received the SPDs. (Doc. 214 at ¶¶ 62-63; Def. Ex. 22 at 212:9-19, 224:3-19 (Frazier acknowledging receipt of copies of SPDs from colleagues); *see also* Doc. 165 at 7.)

Frazier's alternative assertion that summary judgment is not warranted because Defendants "do not address the substantive deficiencies of the SPDs" or the purported failure to distribute SMMs must be rejected as neither of these claims are asserted in any of the multiple complaints filed in this case. *See Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). (*See also* Doc. 237 at 18-19.) Moreover, as the Supreme Court has recognized, an SPD is a summary of the plan and is not required to include every detail set forth in the plan

document. *See Amara*, 131 S. Ct. at 1877-78. Finally, for the reasons stated in Defendants' Opposition Brief, Frazier can have no claim for an SPD violation absent a showing of causation and harm. (Doc. 237 at 18-20.)

### E. Frazier Cannot Satisfy The Elements Of A Fiduciary Breach Claim.

Frazier's various contentions in support of his fiduciary breach claim are unavailing. First, his contention that his supervisor, LittleJohn, was a Bendix Plan fiduciary because he signed Frazier's January 1996 transfer letter is baseless. Signing a letter that generally references benefits is a ministerial function that does not involve the exercise of discretion in the administration or management of a plan; it does not transform the signatory into a fiduciary. *See, e.g.*, 29 C.F.R. § 2509.75-8, Q&A D-2 (a person who performs purely ministerial functions and has no discretionary authority or control over plan management or assets is not a fiduciary); *see also Livick v. The Gillette Co.*, 524 F.3d 24, 29-30 (1st Cir. 2008) (human resources representative who provided benefit estimate was performing ministerial task and was not a fiduciary); *Noble v. Cumberland River Coal Co.*, 26 F. Supp. 2d 958, 962-63 (E.D. Ky. 1998) (person who sent letter notifying employees of benefit coverage information was not a fiduciary).

Even if LittleJohn were acting as a fiduciary by signing Frazier's transfer letter, this would not mean he was a fiduciary with respect to any other information he provided to Frazier.[12] *Pegram v. Herdich*, 530 U.S. 211, 225-26 (2000). In any event, there is no basis for contending that Littlejohn made erroneous representations about Frazier's Bendix Plan benefits. LittleJohn flatly denied making *any* representations to Frazier concerning his entitlement to continue to accrue Bendix Plan benefits. (Doc. 214 at ¶ 59.) And as previously noted, Frazier could not reasonably have relied on LittleJohn's advice. (*See* Doc. 213 at 18-20.)

Accordingly, Frazier cannot satisfy the requisite elements of a fiduciary misrepresentation claim, mandating dismissal of Count Three.

---

[12] Moreover, the transfer letter advises Frazier that he would be participating in the King Radio Plan upon his transfer, *not* the Bendix Plan, and thus cannot serve as the basis for his misrepresentation claim. (Def. Ex. 35.)

- 11 -

### F. The Court Should Deny Frazier's Motion To Strike.

Having failed to refute the evidence presented that demonstrates, beyond dispute, the insufficiency of his claims, Frazier reverts to a last ditch effort to strike certain of this evidence, by contending the testimony of Messrs. Marcotte and Covert lacks foundation. It is well settled that personal knowledge can be inferred from the affiant's position, s*ee Barthelemy v. Air Lines Pilots Ass'n.*, 897 F.2d 999, 1018 (9th Cir. 1990), and that "personal knowledge can be based on a review of documents." *See In re Real Estate Assoc. Ltd. P'ship Litig.*, No. 98-7035, 2002 WL 31027557, at *1 (C.D. Cal. Aug. 29, 2002) (citing *United States v. Matsumaru*, 244 F.3d 1092, 1102 (9th Cir. 2001)). Applying these principles here, the challenged portions of Covert's deposition testimony are well-founded because they were based on his personal knowledge and/or his review of documents. (Def. Ex. 61 at 12:14-14:2.)

Marcotte's testimony is similarly well-founded because it was based on his review of the "exhibits referenced" in his Declaration, which was conducted in his capacity as Plan Administrator. (*See* Doc. 215-1 at ¶¶ 1 n.1, 6.) Moreover, it is not the accuracy of Marcotte's testimony regarding the meaning of the Plan terms, but rather the reasonableness of his interpretation of the Plan terms based on his investigation, that is relevant to this dispute. Thus, there is no basis to challenge his testimony as lacking foundation.[13]

Frazier's motion to strike should be denied.

### III. CONCLUSION

Summary judgment should be granted in Defendants' favor. (*See also* Docs. 213; 214.)

DATED this 30th day of October, 2013.

> David B. Rosenbaum
> Dawn L. Dauphine
> OSBORN MALEDON, P.A.
> 2929 North Central Avenue, 21st Floor
> Phoenix, AZ  85012-2793

---

[13] Though Frazier refers to "hearsay" in a heading, his motion to strike identifies no evidence that should be stricken on hearsay grounds.

Myron D. Rumeld (*Pro Hac Vice*)
Amy Covert (*Pro Hac Vice*)
Russell L. Hirschhorn (*Pro Hac Vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299

Howard Shapiro (*Pro Hac Vice*)
Robert Rachal (*Pro Hac Vice*)
PROSKAUER ROSE LLP
Poydras Center
650 Poydras Street, Suite 1800
New Orleans, LA 70130-6146

**Attorneys for Honeywell Defendants**

By    s/Dawn L. Dauphine
        Dawn L. Dauphine

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2013, the attached document was electronically transmitted to the Clerk of the Court using the CM/ECF System which will send notification of such filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

Upon receipt of the Notice of Electronic Filing, a copy of the attached document and Notice of Electronic Filing will be mailed to The Honorable Susan R. Bolton.

s/ Jessica A. Lopez
5155546