**SCHLEIER LAW OFFICES, P.C.**
**TOD F. SCHLEIER, ESQ.  #004612**
**BRADLEY H. SCHLEIER, ESQ.  #011696**
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250
Email: tod@schleierlaw.com
Email: brad@schleierlaw.com

**SUSAN MARTIN #014226**
**JENNIFER KROLL #019859**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas G. Frazier, a married man, | Case No.: CV 10-01618-PHX-SRB |
| Plaintiff, | |
| v. | **PLAINTIFF'S REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Honeywell Pension and Savings Plan; Honeywell, Inc., a Delaware corporation; Honeywell Retirement Earnings Plan; Honeywell Secured Benefit Plan;  Bendix Salaried Plan; King Radio Plan; Plan Administrator for the Honeywell Pension and Savings Plan; Plan Administrator for the Honeywell Retirement Earnings Plan; Plan Administrator for the Honeywell Secured Benefit Plan; Plan Administrator for the Bendix Salaried Plan; Plan Administrator for the King Radio Plan, | **(Oral Argument Scheduled for November 18, 2013 at 10:00 am)** |
| Defendants. | |

## I. PLAINTIFF IS ENTITLED TO BENEFITS ON HIS PLAN CLAIMS

Defendants have failed to create any genuine issue of fact regarding Mr. Frazier's claims for violation of the terms of the Bendix Plan. Defendants' constantly shifting grounds for denial of Plaintiff's claims are based on tortured, unsupported arguments and in numerous instances are directly contradicted by the record. They have proffered nothing to defeat the fact that King Radio was part of the Company under the 87 Plan and a participating location thereafter. A finding that Plaintiff was covered by the 87 Plan from the outset of his employment and prior to the June 94 retroactive amendment of the 87 Plan is also warranted given the substantial evidence Plaintiff has submitted and the complete absence of anything to support Defendants' *post hoc* argument that Sundstrand was not added until the 94 Plan amendment. While findings on these first two issues are dispositive under Count I, Plaintiff has also shown that he is entitled to all Bendix benefits under the clear terms of the 2000 Plan. Under any standard of review, summary judgment under Count 1 is warranted.[1]

**King Radio and Sundstrand Were Part of the Company.** The Court should reject Defendants' assertion that when they responded to the requests for admission they "had not yet investigated" the 87 Plan, Doc. 237 pp. 22-25, as it directly contradicts their prior representation that with respect to the 87 Plan, "after making a reasonable inquiry," they were unable to admit or deny the that King Radio was part of the Company. Plaintiff's Statement of Facts ("S") Tab 71, p. 6 & Resp. to RFA 25. *See Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).

Plaintiff has shown that Defendants' overly narrow construction of the entities covered by the 87 Plan conflicts with the Plan language and practice of adding new locations as companies such as Sundstrand were acquired.[2] Nevertheless, Plaintiff met

---

[1] Defendants erroneously assert that Plaintiff must establish "beyond dispute" that he was in the Plan in 1993. *Salomaa v. Honda LTD Plan*, 642 F.3d 666, 680 (9th Cir. 2011). *See also Tapley v. Locals 302 & 612 of Int'l Union of Operating Engineers-Employers Const. Indus. Ret. Plan*, 728 F.3d 1134 (9th Cir. 2013).
[2] Defendants' challenge to the fact that Sundstrand employees became participants under the 87 Bendix Plan in 1993 upon the purchase of Sundstrand relies exclusively on a 1997

- 1 -

Defendants' assertion by proving that King Radio was part of a former Division of Bendix Aerospace and therefore part of the "Company" under the 87 Plan as of 1/31/85, well before the 1/1/87 date Defendants' witness stated was the measuring date and also in advance of the April 1985 Merger date stated in every Plan document and by Defendants throughout this litigation. Faced with the evidence that King Radio was purchased by Bendix and became a part of Bendix Aerospace in January 1985, Defendants now argue that in order to be part of the Plan, an entity must have been part of Bendix in 1983 (Doc. 237 p. 7:12-15) - even though Bendix businesses continued to operate separately prior to the merger with Allied in April 1985. S¶79-83. This argument, clearly contrived just to defeat Plaintiff's rights, should be summarily rejected. Even accepting *arguendo* Defendants' unreasonably narrow limitation of "Company," there are no triable issues that King Radio was part of the Company under the 87 Plan. Defendants' latest assertion that neither 1987 nor 1985 are sufficient for inclusion in the Plan is contrary to the following: **1)** the Plan document which covers, *inter alia*, divisions of such divisions "which… *shall be* acquired by the Corporation." S¶2; **2)** Schedule A listing Companies "as of January 1, 1987" S¶14; **3)** the 87 Plan and subsequent Plan documents that state that: "Effective April 1, 1985, The Bendix Corporation was merged into Allied Corporation, and Allied Corporation became the successor sponsor of the Plan."[3] S Tab 1, at Art. 1. *See also* Defs' Resp. to Plaintiff's Statement of Facts, Doc. 238, ("DR S") ¶78; DSOF ¶11; **4)** Defendants' MSJ, p. 7:22-27 (arguing Schedule A is limited to "former divisions of Bendix as of January 1, 1987…"); **5)** Rule 30(b)(6) testimony, Defs. Ex. 18 at 54:7-17 ("the only way" a location would be covered under the 87 Plan "is to be one of those four divisions. The divisions are as of January 1, 1987"); **6)** evidence establishing that following the 1983 acquisition and before the completion of the

---

SPD. The SPD has nothing to do with when Sundstrand was added to the Plan. Numerous documents before the June 94 Plan amendment date indicate that the Sundstrand employees were added to the Plan in 1993. *See* Plaintiff's MSJ pp. 12-13.

[3] Mr. Marcotte actually agreed that the merger date is the operative date for Schedule A but then asserted in conflict with the Plan itself that the merger date was 1983. Doc. 215-1 ¶ 16. *See also* Plaintiff' Motion to Strike Defs' Ex. 60.

1  Allied/Bendix merger in 1985, the companies continued to operate separately. S¶79-83.
2  *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 821 (7th Cir. 2007).
3  **King Radio Was Also a Participating Location and Plaintiff Was an Eligible**
4  **Employee under the 93 and Later Plans**. Defendants' 24-year practice of paying
5  Bendix benefits to sizeable groups of Bendix transferees is dispositive that King Radio
6  and other transferee locations were participating locations with respect to Bendix Plan
7  transferees. *See* Tab 76, ¶198-202. *See also* Doc. 237 p.8 ("some employees of
8  AlliedSignal General Aviation Avionics may not have participated in the King Radio
9  Plan because they continued to participate in the Bendix Plan."); DR S¶44; 128, 224; S
10 Tab 71 (admitting that "entire benefit" for some Bendix Plan transferees was "paid from
11 the Bendix Plan"), 76. Defendants acted with full knowledge that King Radio was a
12 participating location.[4]

13 The unambiguous Plan terms control. The Plan does not say that only ***some***
14 employees at a participating location are entitled to benefits. It unambiguously provides
15 that "***any***" salaried employee at a "***participating location***" is eligible.[5] Defendants never
16 refute Plaintiff's argument that he is also entitled to benefits because he is "an Employee
17 belonging to a classification of Employees to which the Plan has been extended."

18 Defendants admit that Plaintiff was working at a designated Bendix location
19 following return to Phoenix in March 2000, DR S¶62, 128, 225, but incorrectly argue that
20 the designation doesn't apply to him. Section 3.12 of the 2000 Plan provides that
21 Employees like Mr. Frazier who transferred prior to April 1, 2000 to a designated Bendix

---

[4] The assertion that participants were supposed to be paid from a nonqualified plan is a *post-hoc* rationalization with no relation to the facts. *See* Pltf's Objections to DR S ¶158,164, 167, 194-199, 209 (pp. 21-23). *See* Defs. Ex.57 (Ford Tr.) at 73:17-24, 74:12-18; S Tab 131 (McDonald Tr.), at p. 94:7-95:1. *See also* Defs. Ex. 18, at 162:15-165:13 (Rule 30(b)(6) testimony admitting participants were paid benefits from Bendix Plan); S Tab 117, Marcotte Dep p.158:3-20 (Oct. 2012 testimony that plan administrator just learned of the so-called error and knew of no steps taken to correct it).

[5] In light of Defendants' 24-year practice, a finding that King Radio is a participating location for all Bendix Plan transferees is the only way to interpret the Plan in a manner consistent with ERISA. *See e.g.,* 26 C.F. R. §1.411(d)-4 Q & A 4. *See also* 29 C.F.R.§2560.503-1(b)(5) (mandating consistent application of plan provisions to similarly situated participants).

1  location, participate under the Bendix Plan Supplement A. Tab 16 at §3.12. Defendants'
2  argument that Plaintiff is only relying on the 1999 merger amendment to obtain benefits
3  under the 2000 Plan is incorrect. Plaintiff is relying on the express terms of the 2000 Plan
4  itself. The 1999 merger amendment preserved Mr. Frazier's rights to continue to be
5  eligible for "the benefits, options, rights and features" of the Bendix Plan as noted in the
6  preamble to the 2000 Plan. S Tab 16 at iii.[6] See Plaintiff's MSJ pp. 9-10.
7  **Defendants Are Required to Make Up the Difference.** Contrary to Defendants'
8  assertion that Plaintiff's reading of Art. XIII(4) of the 87 Plan is "implausible,"
9  Defendants' reading would render the entire provision superfluous. The Plan already
10 provides a non-duplication of benefits provision in Art. X(8). Plaintiff's reading is
11 consistent with the reading of the section as a whole and with other provisions designed
12 to ensure that employees will agree to transfer to different locations. S¶10. The SPD also
13 contains the same language that advised employees that they would receive benefits
14 based on all of their Service at the Company. S¶16-18. If Art. XIII(4) is ambiguous, any
15 ambiguity should be interpreted against the drafter. Further, the meaning can be clarified
16 by extrinsic evidence including the SPDs that were approved by the Board. *Koehler v.*
17 *Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012).

18       Defendants' assertion that the King Radio Plan does not recognize Service as
19 service for benefit computation purposes has no merit. Defendants misrepresent the
20 definition of Service under the King Radio Plan when they address that plan's
21 recognition of Service for benefit computation purposes under the top-heavy and
22 suspension of benefits provisions. The King Radio Plan's definition of Service is all
23 "service for the Company [Allied] and its Affiliates,…from an Employee's Employment
24 Commencement Date to his subsequent Severance from Service Date..." S¶41, 42. *See* S

---

[6] Defendants repeatedly misrepresent what the 2000 Plan actually provides with respect to "Pension Choice," asserting incorrectly that participants were entitled to elect "the pension formula pursuant to which they were then accruing benefits." Rather, §3.07 provides that Participants may elect "the Supplement which covers them on September 30, 2000." S Tab 16 at §3.07. For Mr. Frazier, this was the Bendix Plan (Supplement A).

- 4 -

1  Tab 10, §2.9, 2.14. Thus, although the Plan's top heavy formula applies when the King
2  Radio Plan is top heavy, the computation of benefits includes all Service for the
3  Company regardless of whether the participant was in the King Radio Plan during the top
4  heavy years. The Bendix Plan does not state that the other Plan must recognize Service
5  for *every* benefit computation purpose nor does it exclude the recognition of service for
6  benefit computation provisions mandated or authorized by ERISA.

7  **II**. **DEFENDANTS VIOLATED ERISA §204(h)**

8  Despite amending the Plan four times to reduce or eliminate the right of
9  transferred employees to benefits under the Bendix Plan, it is undisputed that Defendants
10 never provided a single §204(h) notice -- to anyone. S¶77, 232, 235. Defendants'
11 response relies on inapplicable cases addressing plan amendments governed by the post-
12 2001 amendment of §204(h) (and the regulations thereunder) when all Plan amendments
13 here preceded 2001. Their argument with respect to the 94 amendments relies on an
14 inapplicable 1998 regulation (which, despite its inapplicability would have required
15 notice). Unlike the later iteration of 204(h) which requires notice to "applicable
16 individuals," the statute here unambiguously mandates that notice must be given "to each
17 participant in the Plan." 29 U.S.C. §1054(h) (1986). "Section 204(h)'s language is ... clear
18 and imperative: a plan 'may not be amended' absent proper notice." *Hurlic v. S. Cal. Gas*
19 *Co.*, 539 F.3d 1024, 1039 (9th Cir. 2008) (quotations omitted).

20 Defendants' suggestion that because the amendments reduced the benefit rights of
21 transferees they merely affected "transfer" rights and not future benefit accrual rights is
22 meritless. The provisions that were amended provided, *inter alia*, that future service
23 credit earned after transfer would be counted as Bendix Plan credited service upon return
24 to a Bendix location, that full accrued benefits without any pro-ration would be provided
25 for all such service where the transferee plan did not pro-rate and that immediately upon
26 return to a Bendix location, future accrual of benefits would commence. They also
27 provided that if benefits under the other Plan were less they would have been under
28 Bendix, the Bendix Plan would make up the difference and that the Plan in effect on

- 5 -

transfer date would control. There is no dispute that Bendix Plan benefits for transferees after the amendments are less than they were before.[7] The applicable regulations make clear that if an amendment "affects the annual benefit commencing at normal retirement age" and is reasonably expected to do so, notice must be provided. 63 Fed.Reg. 68678 (1998). The regulations emphasize that a wide variety of provisions can affect the rate of future benefit accrual and that "all Plan provisions that may affect the rate of future benefit accrual...must be taken into account." 26 C.F.R §1.411(d)-6(A-6(a)). By way of example, the regulations state that several of the provisions amended here affect the rate of future benefit accruals including "the definition of service or compensation taken into account in determining an employee's benefit accrual" "the exclusion of current participants from future participation" and "benefit offset provisions." *Id.*

Defendants' argument that following his transfer Plaintiff was no longer protected by 204(h) because he was no longer *actively* accruing benefits under the Bendix Plan ignores the unqualified statutory mandate that a 204(h) notice must be provided "to *each* participant in the plan." Further, and assuming *arguendo* the 1998 regulation lawfully could dilute the statutory mandate for the later amendments, *see Chevron, USA v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), Defendants' argument also ignores the regulatory mandate, (A-5: (a)), that notice must be provided whenever a change in the amount of the retirement benefit is reasonably expected. The amendments purported to reduce or eliminate the provisions establishing the rights of transferees to benefits going forward both upon return to the company and upon retirement from an affiliate. The suggestion that changes affecting the amount of service credited to transferees and transferees' rights to continue to accrue benefits under the plan were not "*reasonably expected*" to affect the amount of transferee benefits at retirement is absurd. If the very group of employees not just *reasonably*- but indisputably -- affected by the amendments are not entitled to notice, the statute would be meaningless.

---

[7] *See* Doc.232 pp.15:21-16:17 and specific citations to the facts (summarizing challenged amendments).

*Bopp v. Idaho Nat'Lab.Emp Ret. Plan*, 709 F.Supp.2d 1024 (D. Idaho 2010) and *Ensley v. Ford Motor Company*, 647 F.Supp.2d 791 (E.D. Mich. 2007) are inapposite because the plaintiffs had completely terminated employment with the *plan sponsor* and had accepted jobs with an entirely unrelated entity. Those courts held notice was not required to terminated participants. In contrast, it is undisputed that following their transfer Plaintiff and class members continued at all times as Employees under the Bendix Plan, did not incur a termination or severance from service under the Bendix Plan, continued to earn Bendix Plan vesting credit and continued to have the amount of compensation earned at the transferee location used to calculate Bendix Plan benefits.[8]

Defendants do not even attempt to argue that the 96, 99 or 2000 amendments were not reasonably expected to reduce the rate of future benefit accruals for Mr. Frazier or class members. With respect to the 94 amendment, Defendants do an about -face and, despite asserting that no one was entitled to notice *after* they transferred, claim that neither was any notice required to employees *before* they transferred, claiming with respect to employees like Mr. Frazier, that a reduction in benefits "was not reasonably expected" because transfers from Prescott (and presumably all other locations) were not anticipated. In other words, under Defendants' view, heads they win, tails the participants lose. Fortunately for the participants, the record makes clear that Defendants reasonably expected there would be future transfers of Bendix Plan employees. This is not surprising as were it not the case, the amendments would have been mere idle gestures. Defendants themselves boast on this motion that "Honeywell is the product of scores of mergers and acquisitions." Doc. 213 5:17-18. As Defendants well know and the record makes clear, that with mergers and acquisitions come reorganizations and consolidations- in short- *large scale transfers of employment.*[9] Given that at each juncture when an amendment

---

[8] *Bopp* was decided under the 2001 amendment of §204(h). which relaxed the requirement that notice be given to *all plan participants. Id*. at n. 5.

[9] Defendants' unsupported assertion (Doc. 237 pp.14: 27–15:1) that Mr. Frazier, (who had already been transferred from California to Prescott by Sundstrand and transferred 3 more times before he retired and whose supervisor had already been transferred by Bendix Aerospace to Olathe and transferred again before he retired), had no reasonable

1  was adopted, AlliedSignal continued in the merger/acquisition/consolidation mode-first
2  with Bendix, then Signal, then Honeywell- it was clearly expected that many Bendix Plan
3  participants would be (and in fact were) asked to or forced to transfer.

4  Defendants attempt to bolster their argument that transfers were not reasonably
5  expected at the time of the 94 amendment by relying on an inapplicable example from the
6  inapplicable 1998 regulations and disregard far more appropriate examples that clearly
7  would have required notice if the regulations had any relevance to the 1994 inquiry-
8  which they do not.[10] Given that the amendments reduce the rate of future benefit accruals
9  for any Bendix Plan employees who transfer, it is simply not *reasonable* to argue that
10 impact on current Bendix employees was not *reasonably expected* in 1994.

## III THE AMENDMENTS REDUCED ACCRUED BENEFITS

It has been abundantly clear, at least since adoption of the Retirement Equity Act in 1984, ("REA"), Pub.L. No. 98-397, 98 Stat. 1426 (1984), that in addition to protecting accrued normal retirement benefits from reduction, if an amendment reduces early retirement benefits or retirement subsidies attributable to service before the amendment and a participant satisfies the conditions for the benefits either before or after the amendment, the amendment is treated as impermissibly reducing accrued benefits.[11] In

---

expectation of being transferred at the time of the June 94 amendment -- aside from improperly shifting the burden of the inquiry -- is directly contrary to any objective assessment of the relevant facts and circumstances, including, *inter alia*, the fact that the Bendix Aerospace Commercial Avionics Division was already being consolidated in Olathe and a significant number of employees had already been transferred there and hundreds more were later transferred (S¶159-160, Defs Ex. 34 (Wolf Tr.) p. 86:3-16 (Prescott and Ft Lauderdale restructuring began before Wolf started employment in 1994); Doc. 125-6 (referencing a presentation allegedly presented to "hundreds" of Ft. Lauderdale Bendix Plan employees). *See also* S Tab 36, Doc. 221 at p. 88 of 117.

[10] *See* 26 C.F.R. §1.411(d)-6, Q&A 9, Example 5 and Q&A 15 Example 3 (in case of mergers and consolidations, all participants who are or may be impacted by amendments should be notified). *Charles v. Pepco Holdings Inc.*, 314 F.App'x 450, 461 (3d Cir. 2008) merely found no intrinsic reduction under cash balance conversion amendment and no showing that benefits would be less under new formulas. *Cf. Hurlic*, 539 F.3d at 1039.

[11] Defendants' arguments that the benefits are not protected should be ignored because, *inter alia*, they rely on pre-REA and fully discredited or inapposite authority. *See e.g.*, Doc. 237 p. 12 (citing *Sutton v. Weirton Steel Div. Of Nat'l Steel Corp.*, 567 F. Supp. 1184, 1196 (N.D.W.Va. 1983)) *Sutton* does not even mention §204(g). Both the district court decision and the appellate court affirmance (which Defendants also neglected to cite - 724 F.2d 406 (4th Cir. 1983)) were both decided before REA. *See Ahng v. Allsteel,*

- 8 -

this case, the Bendix Plan provided that all service at a transferee location would be treated as credited service. The only required condition was a return to a Bendix location. Neither Mr. Frazier nor any other class member who transferred back to Bendix locations could be deprived of Bendix benefits they had accrued through service at the transferee locations prior to the amendments without violating black letter §204(g) law. Because the challenged amendments purport to and have the effect of eliminating from the calculation of credited service, service at other locations earned before adoption of the amendments, the amendments violate §204(g) and could not become effective.

The provisions relied on that were altered by amendment are set forth in the credited service and benefit formula provisions of the plans as well as in the provisions setting forth when an employee becomes an "Eligible Employee" entitled to accrue benefits. For purposes of determining whether a plan amendment reduces an accrued benefit "all the provisions of a plan affecting directly or indirectly the computation of the accrued benefit" must be taken into account. 26 C.F.R. §1.411(d)–3(b) (1977) 42 Fed. Reg. 42,318, 42,319 (Aug. 23, 1977). The regulation specifies that "Plan provisions indirectly affecting accrued benefits include, for example, provisions relating to years of service …for determining benefit accrual." *Id*. The Bendix Plan defines the benefits under the Plan as the monthly benefit equal to the product of a specified percentage of a member's final average compensation multiplied by his years of credited service. S¶13,28. Thus, credited service is one the two primary components of an accrued benefit. Accordingly, the amendments purporting to affect the right to have credited service attributable to employment at a transferee location treated for all purposes as credited service under the

---

*Inc.*, 96 F.3d 1033, 1036 (7th Cir. 1996) (overruling *Meredith v. Allsteel, Inc.,* 11 F.3d 1354 (7th Cir.1993) and noting that *Meredith* and *Sutton* were decided before §204(g) was amended in 1984, further noting that seven other circuits ( including the 9th Circuit) had likewise held that such benefits are protected)). *Ahng* also confirmed that under REA amendment of §204(g) an employee has a right to "grow into" a benefit.

Bendix Plan reduced the accrued benefits under the Plan for any participant who transferred to a Bendix location either before or after the amendments.[12]

## IV. DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES

It is Defendants' burden to show they conveyed material information. *Harris v. Amgen, Inc.*, 10-56014, 2013 WL 5737307, at *15 (9th Cir. Oct. 23, 2013); *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823 (9th Cir. 2007). Defendants' response to Plaintiff's MSJ that there may be disputes about oral communications about how long Bendix benefits would continue (*e.g.*, whether Mr. LittleJohn said "forever") and Mr. LittleJohn's status as a fiduciary are red herrings. Defendants' allegation that Plaintiff was advised about changes to his benefits is not supported by the record. S¶187, 228, 231-235. Defendants admit that no §204(h) notices or notices of material modifications were ever provided. *Id.* Nor are there any material facts regarding the failure to provide SPDs. DR S¶235.[13]

Other than the offer letter, (Defs. Ex. 22), the only communications Defendants rely on are King Radio Plan benefits statements (Defs Ex.36) and Pension Choice materials (Defs. Ex.15). *See* DR S ¶153,189. These documents merely tell Mr. Frazier that he is accruing benefits in another plan. They say nothing about the changes to the Bendix Plan. The Pension Choice brochure explicitly states it is not intended to be a summary plan description nor a plan document and that "Plan documents will govern in all cases." Defs. Ex. 15, at TGF0377. Given Defendants' repeated refusal to provide relevant Plan documents and failure to provide statutorily mandated notices of changes, Defendants can hardly rely on the brochure to tell Mr. Frazier something had changed.

---

[12] Similarly, Art. XIII(4) of the 87 Plan was protected from reduction by Plan amendment with respect to any benefits earned under a transferee plan before the amendment. Likewise, the amendment eliminating the right to benefits and substituting a provision stating that benefits for transferees from cash balance plans would be determined under "uniform procedures" not set forth in the Plan, also violated §204(g). *See* 26 C.F.R. § 1.411(d)–4 at Q & A -6,7(plan violates §204(g) if it is subject to conditions not specified in the plan; plan cannot be amended to add employer discretion or conditions such as the "uniform procedures").

[13] The inadmissible purported "undated mailing and distribution list for SPDs" referred to in DR S¶235 (Defs Ex.49) does not even list any location where Plaintiff was employed.

S¶253,265. No participants in multiple plans were given the option to elect more than one plan. S¶222. The inconsistent nomenclature also supports Mr. Frazier's reasonable belief that he was electing to keep the Bendix Plan with an offset for the cash balance plan. Compare Defs Ex. 36 ("Bendix/King Avionics Retirement Growth Plan"), DR S¶220 ( "Avionics Cash Balance Plan.") and *id.* ("King Radio Salaried"). The projection calculation was also incorrect. S ¶121. These communications do not provide information a reasonable participant would need to know regarding events that Defendants contend resulted in a change to Mr. Frazier's benefits. *Washington*, 504 F.3d at 823-824; *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 452 (3d Cir. 2000).[14]

## V.  DEFENDANTS VIOLATED ERISA DISCLOSURE REQUIREMENTS

Defendants' frivolous argument that Plaintiff has not asserted claims regarding timeliness of distributions of the SPDs and notices of changes required under ERISA §104's summary of material modification requirements (Doc. 237 p. 18) misrepresents the record and should be summarily rejected. *See e.g.* SAC Doc. 141 ¶¶29-30,52,70-71,73,75,117,126-128 (referencing Defendants failure to timely provide SPDs and notices of material modifications and ERISA §§ 102-104 including the requirements to furnish annual summaries of material modifications and updated SPDs at least once every five years); Doc. 111 p. 2, 111-1 (seeking certification of Class 5 under Count V for class alleging, *inter alia*, failure "to give required ERISA disclosures."). *See also* Tab 71, Resp. to RFA 7, 24; S Tab 59 p. 43:19-22 (discovery requests regarding SMMs and dates for distribution of SPDs).

Defendants make no real arguments on the substance of Count V other than ones Plaintiff already addressed in response to Defendants' motion. Doc. 242 pp.18-19. Their arguments regarding Plaintiff's entitlement to relief are premature and not properly

---

[14] Contrary to Defendants' assertion at n.8, in ruling on class certification the Court ruled only that class certification was not appropriate for the misrepresentation claim encompassed in Mr. Frazier's breach of fiduciary duty claim and certified the breach of fiduciary duty claims except for Plaintiff's individual misrepresentation claims. Doc. 165 pp.8, 13. The class breach of fiduciary duty claims have been deferred to future proceedings following disposition of this motion. Docs. 175, 196.

before the Court.[15] Doc. 175 p. 2.

## VI. DEFENDANTS VIOLATED ERISA'S CLAIMS PROCEDURES

Defendants offer no admissible evidence to explain their inexcusable delay or even why such an explanation could defeat summary judgment. Defendants' wholesale disregard of the Plan and ERISA's claims and persistent refusal to display any modicum of fair and impartial decisionmaking is inconsistent with their arguments that deference could apply. For example, while claiming that the Court should defer to their claim determination, (something a Court is required to do only with an unambiguous grant of discretion under the Plan and a fair and impartial claims process), Defendants make the bizarre assertion that they were not required to provide relevant documents on the grounds that litigation had commenced. DR S¶253,265. 29 C.F.R. §2560.503-1(h)(2)(iii), (m)(8). If pendency of litigation were sufficient to absolve Defendants of their obligations for a full and fair review under the claims process then a decision rendered in derogation of that process is not the decision of an unconflicted and unbiased decision-maker to which the Court could defer.[16] See *Boyd v. Aetna Life Ins. Co.*, 438 F.Supp.2d 1134, 1156 (C.D. Cal. 2006) ("the dialogue between the parties in this case became a game of hide the ball with the administrator hiding…the type of documentation it claims it needed to be able to analyze his claim.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Plaintiff's motion for summary judgment on liability be granted and the Court grant such other and further relief as is equitable and just.

---

[15] Plaintiff requested a declaration that Defendants violated ERISA's disclosure requirements and further proceedings to determine the appropriate relief due to Plaintiff and class members. Doc. 232 p. 20. The Court ordered an abbreviated schedule that permitted discovery only on the Declaratory Relief portion of Count V that a summary plan description was not properly distributed. Doc. 175. Defendants' own motion makes no mention of harm. *See* Doc. 213 pp.18-20.

[16] Contrary to Defendants' assertion, Mr. Marcotte, Honeywell's Vice President responsible for the design and strategy development of Honeywell's benefits programs, Defs Ex.59 at 11:23-12, need not be an "officer" in order to establish a conflict exists. *See, e.g., Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1306 (5th Cir. 1994).

RESPECTFULLY SUBMITTED this 30th day of October, 2013.

**MARTIN & BONNETT, PLLC**
By: s/Susan Martin
Susan Martin
Jennifer L. Kroll
1850 N. Central Ave. Suite 2010
Phoenix, AZ 85004

**SCHLEIER LAW OFFICES, P.C**
Tod F. Schleier, Esq.
Bradley H. Schleier, Esq.
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2013, I electronically filed the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David B. Rosenbaum
Dawn L. Dauphine
Osborn Maledon, P.A.
2929 North Central Ave., Suite 2100
Phoenix, AZ 85012-2794

Howard Shapiro
Nicole A. Eichberger
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130

Myron D. Rumeld
Amy Covert
Russell Hirschhorn
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036


<u>s/J. Kroll</u>